**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **LUCENT TECHNOLOGIES INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 04-1511C** |
| | ) | **(Judge Braden)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S ANSWER AND COUNTERCLAIM**

For its answer to the complaint, defendant, the United States, admits, denies, and alleges as follows:

**PARTIES**

1. Denies the allegations contained in paragraph 1 for lack of knowledge or information sufficient to form a belief as to their truth.

2. Admits.

**JURISDICTION**

3. The allegations contained in paragraph 3 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

4. Admits the allegations contained in paragraph 4 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 4.

5. The allegations contained in paragraph 5 are conclusions of law and plaintiff's characterization of its cause of action, to which no response is required; to the extent that they

may be deemed allegations of fact, they are denied.

6. The allegations contained in paragraph 6 are conclusions of law and plaintiff's characterization of its cause of action, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

7. Admits the allegations contained in paragraph 7 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 7.

8. Admits the allegations contained in paragraph 8 to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies the remaining allegations contained in paragraph 8.

9. Admits the allegations contained in paragraph 9 to the extent supported by the documents referred to, which are the best evidence of their contents, and otherwise denies the remaining allegations contained in paragraph 9.

10. Admits that the Government's contracting officer has not issued a final decision upon plaintiff Lucent Technologies Inc.'s ("Lucent's) September 30, 1993 claim submission. The remaining allegations contained in paragraph 10 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

11. The allegations contained in paragraph 11 are conclusions of law and plaintiff's characterization of its cause of action, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

## PLAINTIFF'S STATEMENT OF THE CASE

### A. Plaintiffs Allegations Regarding Lucent And AT&T Before AT&T's Spin-Off Of Lucent

12. Admits.

13. Denies the allegations contained in paragraph 13 for lack of knowledge or information sufficient to form a belief as to their truth.

14. Admits the allegations contained in paragraph 14 to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies the remaining allegations contained in paragraph 14.

15. Admits the allegations contained in paragraph 15 to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies the remaining allegations contained in paragraph 15.

16. The allegations contained in paragraph 16 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

17. The allegations contained in paragraph 17 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

18. The allegations contained in paragraph 18 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

19. Admits that AT&T Corporation maintained two qualified defined-benefit pension plans, the AT&T Management Pension Plan ("ATTMPP") and the AT&T Pension Plan ("ATTPP"); otherwise denies the remaining allegations contained in paragraph 19 for lack of knowledge or information sufficient to form a belief as to their truth.

20. The allegations contained in paragraph 20 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

21. Denies the allegations contained in paragraph 21 for lack of knowledge or information sufficient to form a belief as to their truth.

22. Admits.

23. Admits the allegations contained in the first sentence of paragraph 23 to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies the remaining allegations contained in the first sentence of paragraph 23. Denies the allegations contained in the second sentence of paragraph 23 for lack of knowledge or information sufficient to form a belief as to their truth.

24. Admits the allegations contained in paragraph 24 to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies the remaining allegations contained in paragraph 24.

25. Admits the allegations contained in paragraph 25 to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies the remaining allegations contained in paragraph 25.

26. Admits the allegations contained in paragraph 26 to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies the remaining allegations contained in paragraph 26.

27. Admits the allegations contained in paragraph 27 to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies the remaining allegations contained in paragraph 27.

28. Admits that on or about September 30, 1996, AT&T distributed to its shareholders of record as of that date all of the shares of Lucent stock that AT&T owned, and otherwise denies the remaining allegations contained in paragraph 28 for lack of knowledge or information sufficient to form a belief as to their truth.

29. Admits the allegations contained in paragraph 29 to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies the remaining allegations contained in paragraph 29.

30. Admits.

31. Admits.

32. Admits the allegations contained in paragraph 32 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 32.

33. Denies the allegations contained in paragraph 33 for lack of knowledge or information sufficient to form a belief as to their truth.

34. The allegations contained in paragraph 34 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

35. Admits the allegations contained in paragraph 35 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 35.

36. Admits the allegations contained in paragraph 36 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 36.

37. Admits.

**B. Plaintiff's Allegations Regarding Lucent After The Spin-Off**

38. Admits.

39. Denies the allegations contained in paragraph 39 for lack of knowledge or information sufficient to form a belief as to their truth.

40. Denies the allegations contained in paragraph 40 for lack of knowledge or information sufficient to form a belief as to their truth.

41. Admits that Lucent submitted a CAS Disclosure Statement for Advanced Technology Systems ("ATS"), dated April 19, 1996, and that Lucent and the Government executed a Negotiated Overhead Rate Agreement for ATS, dated September 17, 1998, documents that are the best evidence of their contents; otherwise denies the remaining allegations contained in paragraph 41 for lack of knowledge or information sufficient to form a belief as to their truth.

**C. Plaintiff's Allegations Regarding Asset Sale To General Dynamics ("GD")**

42. Denies the allegations contained in paragraph 42 for lack of knowledge or information sufficient to form a belief as to their truth.

43. Admits that Lucent submitted separate CAS Disclosure Statements for ATS and for Integrated Solutions ("IS") on July 15, 1997, documents that are the best evidence of their contents; otherwise denies the remaining allegations contained in paragraph 43 for lack of knowledge or information sufficient to form a belief as to their truth.

44. Admits the allegations contained in paragraph 44 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining

allegations contained in paragraph 44.

45. Admits the allegations contained in paragraph 45 to the extent supported by the documents referred to, which are the best evidence of their contents; otherwise denies the remaining allegations contained in paragraph 45.

46. Admits the allegations contained in paragraph 46 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 46.

47. Denies the allegations contained in paragraph 47 for lack of knowledge or information sufficient to form a belief as to their truth.

48. Denies the allegations contained in paragraph 47 for lack of knowledge or information sufficient to form a belief as to their truth.

49. Admits.

**D. Plaintiff's Allegations Regarding The "Transfer of Pension And Other PRB Assets And Obligations"**

50. Admits the allegations contained in paragraph 50 to the extent supported by the Agreement for the Purchase and Sale of Assets between Lucent and General Dynamics Corporation ("GD"), dated as of August 20, 1997 ("the Purchase and Sale Agreement"), a document that is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 50.

51. Admits the allegations contained in paragraph 51 to the extent supported by the Purchase and Sale Agreement referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations contained in paragraph 51.

52. The allegations contained in paragraph 52 are conclusions of law and plaintiff's characterization of its cause of action, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

53. Admits the allegations contained in paragraph 53 to the extent supported by the Purchase and Sale Agreement referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 53.

54. Admits that certain asserts were transferred from the LTMPP and the LPP to GD pension trusts, and otherwise denies the remaining allegations contained in paragraph 54 for lack or knowledge or information sufficient to form a belief as to their truth.

55. Admits.

56. Admits the allegations contained in paragraph 56 to the extent supported by the Purchase and Sale Agreement referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations contained in paragraph 56.

57. Denies the allegations contained in paragraph 57 for lack or knowledge or information sufficient to form a belief as to their truth.

58. Denies the allegations contained in paragraph 58 for lack of knowledge or information sufficient to form a belief as to their truth.

**E. Plaintiff's Allegations Regarding The Government's Claim**

59. Admits the allegations contained in paragraph 59 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 59.

60. Admits the allegations contained in paragraph 60 to the extent supported by the

document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 60.

61. Admits the allegations contained in paragraph 61 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 61.

62. Admits the allegations contained in paragraph 62 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 62.

63. Admits the allegations contained in paragraph 63 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 63.

64. Denies the allegations contained in paragraph 64 for lack of knowledge or information sufficient to form a belief as to their truth.

**F. Plaintiff's Allegations Regarding Lucent's Claim For PRBs**

65. Admits the allegations contained in paragraph 65 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 65.

66. Admits the allegations contained in paragraph 66 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 66.

67. Denies the allegations contained in paragraph 67 for lack of knowledge or information sufficient to form a belief as to their truth.

68. Denies the allegations contained in paragraph 68 for lack of knowledge or information sufficient to form a belief as to their truth.

69. Admits the allegations contained in paragraph 69 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 69.

70. Admits the allegations contained in paragraph 70 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 70.

71. Admits the allegations contained in paragraph 71 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 71.

72. Admits the allegations contained in paragraph 72 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 72.

**COUNT I**
**(Plaintiff's Claim That Lucent Did Not Close**
**A Segment Under 48 C.F.R. § 9904.413-50(c)(12))**

73. Defendant's responses to paragraphs 1 through 72 of the complaint are incorporated by reference.

74. Admits the allegations contained in paragraph 74 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 74.

75. Admits the allegations contained in paragraph 75 to the extent supported by the

document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 75.

76. Denies the allegation that no Lucent segment was transferred to GD, and denies the remaining allegations contained in the first sentence of paragraph 76 for lack or knowledge or information sufficient to form a belief as to their truth. Admits the allegations contained in the second sentence of paragraph 76 to the extent supported by the document referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations contained in the second sentence of paragraph 76.

77. Denies the allegation that no Lucent segment was transferred to GD, and denies the remaining allegations contained in paragraph 77 for lack or knowledge or information sufficient to form a belief as to their truth.

78. Denies the allegation that no Lucent segment was transferred to GD, and denies the remaining allegations contained in paragraph 78 for lack or knowledge or information sufficient to form a belief as to their truth.

79. Denies the allegation that no Lucent segment was transferred to GD, and denies the remaining allegations contained in paragraph 79 for lack or knowledge or information sufficient to form a belief as to their truth.

80. Denies the allegations contained in paragraph 80 for lack of knowledge or information sufficient to form a belief as to their truth.

81. The allegations contained in paragraph 81 are conclusions of law and plaintiff's characterization of its cause of action, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

82. Denies.

83. Denies.

84. The allegations contained in paragraph 84 are plaintiff's description of the declaratory judgment that it requests in this count, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

**COUNT II**
**(Plaintiff's Claim That The Government Claim Is Overstated As 48 C.F.R. § 9904.413-50(c)(12) Allows Recovery Of Surplus Only In Which The Government Has Participated And Only Which Is Attributable To Certain Contracts)**

85. Defendant's responses to paragraphs 1 through 84 of the complaint are incorporated by reference.

86. Admits the allegations contained in paragraph 86 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 86.

87. The allegations contained in paragraph 87 are conclusions of law, to which no response is required; to the extent that they are deemed allegations of fact, they are denied.

88. Admits the allegations contained in paragraph 88 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 88.

89. The allegations contained in paragraph 89 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

90. Denies the allegations contained in paragraph 90 for lack of knowledge or information sufficient to form a belief as to their truth.

91. The allegations contained in paragraph 91 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

92. The allegations contained in paragraph 92 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

93. The allegations contained in paragraph 93 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

94. The allegations contained in paragraph 94 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

95. The allegations contained in paragraph 95 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

96. The allegations contained in paragraph 96 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

97. The allegations contained in paragraph 97 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

98. The allegations contained in paragraph 98 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

99. The allegations contained in paragraph 99 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

100. The allegations contained in paragraph 100 are plaintiff's description of the declaratory judgment that it requests in this count, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

**COUNT III**

**(Plaintiff's Claim That The Government Has Utilized Incorrect Figures In Calculating The Asserted Segment Closing Adjustment Amount)**

101. Defendant's responses to paragraphs 1 through 100 of the complaint are incorporated by reference.

102. The allegations contained in paragraph 102 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

103. Admits the allegations contained in paragraph 103 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 103.

104. The allegations contained in paragraph 104 constitute plaintiff's characterization of its cause of action, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

105. The allegations contained in paragraph 105 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

106. The allegations contained in paragraph 106 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

107. The allegations contained in paragraph 107 are plaintiff's description of the declaratory judgment that it requests in this count, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

**COUNT IV**
**(Plaintiff's Claim That The Government Is Not Entitled To Recover Under 48 C.F.R. § 9904.413-50(c)(12) Surplus Attributable To Inactive Personnel)**

108. Defendant's responses to paragraphs 1 through 107 of the complaint are

incorporated by reference.

109. Admits the allegations contained in paragraph 109 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 109.

110. Denies the allegations contained in the first sentence of paragraph 110 for lack or knowledge or information sufficient to form a belief as to their truth. The allegations contained in the second sentence of paragraph 110 are plaintiff's characterization of its cause of action, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

111. The allegations contained in paragraph 111 are conclusions of law and plaintiff's characterization of its cause of action, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

112. Denies the allegation that no Lucent segment was transferred to GD, and denies the remaining allegations contained in paragraph 112 for lack or knowledge or information sufficient to form a belief as to their truth.

113. The allegations contained in paragraph 113 are plaintiff's description of the declaratory judgment that it requests in this count, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

## COUNT V
**(Plaintiff's Claim That The Government Utilized An Inflated And Incorrect Interest Factor In The Claim Asserted <u>In Its Final Decision)</u>**

114. Defendant's responses to paragraphs 1 through 113 of the complaint are

incorporated by reference.

115. Admits the allegations contained in paragraph 115 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 115.

116. Denies.

117. The allegations contained in paragraph 117 are plaintiff's description of the declaratory judgment that it requests in this count, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

**COUNT VI**
**(Plaintiff's Claim That The Government Is Liable**
**For Breach Of Contract For Failure To Pay**
**Its Fair Share Of Lucent's PRB Liabilities)**

118. Defendant's responses to paragraphs 1 through 117 of the complaint are incorporated by reference.

119. Admits the allegations contained in paragraph 119 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 119.

120. The allegations contained in paragraph 120 constitute plaintiff's characterization of its cause of action, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

121. Admits the allegations contained in the first sentence of paragraph 121 to the extent supported by the document referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations of the first sentence of paragraph 121. Denies the

allegations contained in the second sentence of paragraph 121.

122. Admits the allegations contained in paragraph 122 to the extent supported by the document referred to, which is the best evidence of its contents; otherwise denies the remaining allegations contained in paragraph 122.

123. Denies.

124. Denies.

125. Denies.

126. Denies.

127. The allegations contained in paragraph 127 are plaintiff's description of the declaratory judgment that it requests in this count, to which no response is required; to the extent that they are deemed allegations of fact, they are denied.

128. Denies that plaintiff is entitled to the relief set forth in the prayer for relief immediately following paragraph 127, or to any relief whatsoever.

129. Denies each and every allegation not previously admitted or otherwise qualified.

**FIRST DEFENSE**

Plaintiff's complaint fails to state a claim upon which relief can be granted.

**SECOND DEFENSE**

This Court lacks jurisdiction of the subject matter of any of plaintiff's claims relating to PRBs, because none of such claims was ever the subject of a contracting officer's final decision, by deemed denial or otherwise.

**DEFENDANT'S COUNTERCLAIM**

**JURISDICTION**

130. This Court possesses jurisdiction to entertain defendant's counterclaim under 28 U.S.C. §§ 1503 and 2508 and 41 U.S.C. §§ 601 *et seq.* (the Contract Disputes Act).

## **BACKGROUND**

131. On March 30, 1995, the Cost Accounting Standards Board ("CAS Board") promulgated revisions to Cost Accounting Standard ("CAS") 412 and 413, including revisions to CAS 413.50(c)(12). 60 Fed. Reg. 16534 (Mar. 30, 1995). CAS 413.63, codified at 48 C.F.R. § 9904.413-63 (1996), provided that the revised CAS 413 was to take effect on March 30, 1995, the date of its issuance, and was to be applicable to particular contractors on or after the start of each contractor's next cost accounting period beginning after the receipt of a contract or subcontract to which the revised Standard was applicable. CAS 413.63, 48 C.F.R. § 9904.413-63 (1996)

132. Revised CAS 413 became applicable to AT&T as of January 1, 1996.

## **AT&T's Spin-Off Of Lucent**

133. Beginning in November 1995, AT&T Corporation ("AT&T") embarked upon a series of related transactions, which involved (a) the creation of Lucent Technologies Inc. ("Lucent") as a wholly-owned operating subsidiary of AT&T, and (b) after an Initial Public Offering ("IPO") of a portion of Lucent's shares, AT&T's later transfer, on or about September 30, 1996, by a spin-off to AT&T's shareholders of all of the Lucent shares that it then owned. This series of transactions will be referred to hereinafter as the "Spin-Off Transaction."

134. In November 1995, as part of the Spin-off Transaction, AT&T caused the incorporation of a new corporation, the name of which was later changed to Lucent Technologies Inc. Upon Lucent's incorporation, and until the transactions described below, AT&T owned all of

the issued and outstanding shares of Lucent common stock, and Lucent was a wholly-owned subsidiary of AT&T. AT&T was itself owned by its shareholders.

135. Under the terms of a "Separation and Distribution Agreement by and among AT&T Corporation, Lucent Technologies Inc. and NCR Corporation, dated as of February 1, 1996 and Amended and Restated as of March 29, 1996" ("The Separation Agreement"), beginning on or about February 1, 1996, as part of the Spin-off Transaction, AT&T began transferring to Lucent the assets and liabilities relating to certain businesses that AT&T had previously conducted in its own name, including the performance of various Government and commercial contracts. Among the assets and liabilities transferred from AT&T to Lucent as part of the Spin-Off Transaction were the assets and liabilities of AT&T's Advanced Technology Systems ("ATS") business unit, which was then a segment of AT&T that performed Government contracts, as well as the assets and liabilities of other business units performing Government contracts. As a result of these transfers, and before the remaining related transactions described below, Lucent was a segment of AT&T's business that performed work under both Government and commercial contracts.

136. As a further part of the Spin-off Transaction, in April 1996, as the result of an IPO, approximately 17.6 percent of Lucent's issued and outstanding shares of common stock was purchased by various purchasers ("IPO Purchasers"). Upon completion of the IPO, AT&T owned approximately 82.4 percent of the issued and outstanding shares of Lucent common stock, and the IPO Purchasers owned the remaining approximately 17.6 percent of the issued and outstanding shares of Lucent common stock.

137. As the final part of the Spin-off Transaction, on or about September 30, 1996 ,

AT&T distributed to its shareholders as of that date all of the shares of Lucent common stock that it owned (approximately 82.4 percent of Lucent's total issued and outstanding shares). This transaction completed the Spin-off Transaction.

138. Upon the completion of the Spin-off Transaction, AT&T no longer owned any shares of Lucent common stock.

139. Upon the completion of the Spin-off Transaction, the AT&T shareholders as of the date of the Spin-off Transaction (September 30, 1996) owned approximately 82.4 percent of the issued and outstanding shares of Lucent common stock, and the IPO Purchasers (or their subsequent transferees, if any) owned the remaining 17.6 percent of the issued and outstanding shares of Lucent common stock.

**AT&T Pension Plan Transfers To Lucent**

140. Prior to 1996, AT&T sponsored two defined-benefit pension plans, the AT&T Management Pension Plan ("ATTMPP") and the AT&T Pension Plan ("ATTPP"). AT&T computed the total pension cost for the plans as a whole and then allocated the total pension cost, using an allocation base, to the various segments of its business, including those segments that became part of Lucent in 1996.

141. At all times during the year 1996, the market value of the pension assets of the ATTMPP was greater than its actuarial accrued liability, *i.e.*, the ATTMPP was overfunded.

142. At all times during the year 1996, the market value of the pension assets of the ATTPP was greater than its actuarial accrued liability, *i.e.*, the ATTPP was overfunded.

143. In early 1996, AT&T and Lucent entered into an agreement entitled "Employee Benefits Agreement between AT&T Corporation and Lucent Technologies, Inc., dated as of

February 1, 1996 and Amended and Restated as of March 29, 1996" ("the EBA").

144. Pursuant to the terms of the EBA, immediately after the spin-off date (September 30, 1996), Lucent established two defined-benefit pension plans (the "Lucent Management Pension Plan" ("LMPP") and the "Lucent Pension Plan" ("LPP")). These plans were required by the EBA to be substantially identical in all material features to the corresponding AT&T plans (the ATTMPP and the ATTPP).

145. Under the terms of the EBA, immediately after the spin-off date (September 30, 1996), participants (both active and inactive) in the two AT&T pension plans (the ATTMPP and the ATTPP) that were associated with Lucent were transferred to the counterpart Lucent pension plans (the LMPP and LPP, respectively). At about the same time, the pension liabilities of the two AT&T pension plans (the ATTMPP and the ATTPP) that were associated with the transferred pension plan participants were also transferred to these counterpart Lucent pension plans (to the LMPP and LPP, respectively).

146. Under the terms of the EBA, after the spin-off date (September 30, 1996), a portion of the pension assets that were associated with the transferred pension plan participants were transferred from the two AT&T pension plans (the ATTMPP and the ATTPP) to the counterpart Lucent pension plans (the LMPP and the LPP, respectively). In each case, the amount of pension assets transferred was equal to the present value of the accrued benefits (the liability for which was transferred from the particular AT&T pension plan to the counterpart Lucent pension plan) plus 50 percent of the surplus pension assets (the market value of the pension assets minus the present value of the accrued benefits).

147. As a result of, and immediately after, the transfers of pension assets and liabilities

from the two AT&T pension plans to the counterpart Lucent pension plans described above, the overfunding percentage (the market value of pension assets divided by actuarial accrued liabilities, with the fraction expressed as a percentage) of the LMPP and of the LPP was lower than the overfunding percentage of the ATTMPP and of the ATTPP.

148. On September 30, 2002, the Government's contracting officer issued a final decision asserting that AT&T's spin-off of Lucent common stock constituted a segment closing under CAS 413.50(c)(12), 48 C.F.R § 9904.413-50(c)(12) (1996), and that the Government was entitled to a segment-closing adjustment in the amount of approximately $7.2 million.

149. On September 29, 2003, AT&T challenged the Government contracting officer's final decision by filing an action in this court, styled *AT&T Corp. v. United States*, No. 03-2258.

**<u>The Novation Agreement Among AT&T, Lucent, And The United States</u>**

150. On May 5, 1997, AT&T, Lucent, and the Government executed a Novation Agreement. In ¶ B.8 of the Novation Agreement, AT&T "guarantee[d] payment of all liabilities and the performance of all obligations that [Lucent] (i) assume[d] under [the Novation Agreement] or (ii) may undertake in the future should these contracts [the novated contracts] be modified under their terms and conditions."

**<u>The Memorandum Of Agreement Among AT&T, Lucent, And The United States</u>**

151. On September 24, 1999, AT&T, Lucent, and the Government executed a "Memorandum of Agreement Among Lucent Technologies Inc., AT&T Corp. and the United States of America Regarding Pension Costs (CAS 413)" ("MOA"). In the MOA, the parties agreed, inter alia, that "the parties' rights to an adjustment under the CAS 413 due to the transactions described in the Novation Agreement dated May 5, 1997, between AT&T Corp.,

Lucent Technologies Inc., and the United States of America, survive the closure of any and all of the novated contracts" and that the "contractor parties, Lucent Technologies Inc. and AT&T Corp., shall be jointly and severally liable to (1) issue a check to the United States Treasury in settlement of any CAS 413 adjustment due the United States Government, . . ." or, under certain specified circumstances, "to actually transfer additional pension assets to comply with CAS 413, . . .”

**Lucent Was Required To Comply With Revised CAS 413**

152. Lucent's first reporting period for financial and cost accounting purposes was the nine-month period from January 1, 1996, to September 30, 1996.

153. Revised CAS 413 became applicable to Lucent not later than October 1, 1996.

**Lucent's Sale Of Its Advanced Technology Systems Division**
**To General Dynamics Corporation**

154. Lucent owned and operated an Advanced Technology Systems ("ATS"") Division before and after AT&T's spin-off of Lucent, which was completed September 30, 1996.

155. ATS was a segment of Lucent beginning on or before October 1, 1996, and continuing through September 30, 1997.

156. Lucent's ATS segment was engaged principally in producing underwater detection and communications equipment for the Government under CAS-covered contracts.

**The Lucent Pension Plans**

157. Prior to October 1, 1997, Lucent maintained two defined-benefit pension plans, the LMPP and the LPP.

158. As of September 30, 1997, the market value of the pension assets of the LMPP

was greater than its actuarial accrued liability, *i.e.*, the LMPP was overfunded.

159. As of September 30, 1997, the market value of the pension assets of the LPP was greater than its actuarial accrued liability, *i.e.*, the LPP was overfunded.

**<u>Lucent's Sale Of Its ATS Segment To General Dynamics Corporation</u>**

160. Lucent and General Dynamics Corporation ("GD") entered into an "Agreement for the Purchase and Sale of Assets by and between Lucent Technologies Inc. as Seller and General Dynamics Corporation as Buyer" (the "Purchase and Sale Agreement"), dated as of August 20, 1997. Under the terms of the Purchase and Sale Agreement, Lucent agreed to sell its ATS Division to GD, effective October 1, 1997.

161. Under the terms of the Purchase and Sale Agreement, Lucent agreed to sell to GD the vast majority of the active Government contracts being performed by Lucent's ATS segment. The Purchase and Sale Agreement expressly excluded from the transaction "Completed Contracts," which it defined as "contracts under which performance by [Lucent's ATS] Division has been completed and for which there is no remaining warranty, maintenance or support obligations." (Purchase and Sale Agreement, Section 1.1.)

162. Under the terms of the Purchase and Sale Agreement, employees of Lucent who transferred to GD (active participants) ceased to participate in Lucent's pension plans, and were transferred to GD's pension plans, on September 30, 1997, or the first day of their employment with GD, whichever was later. (Purchase and Sale Agreement, Section 5.5(g).) As of the Closing Date of the transaction (September 30, 1997), the pension liabilities of the LMPP and LPP that were associated with the transferred active pension plan participants were also transferred to the GD pension plans. *Id.*

163. As required under Section 5.5(i) of the Purchase and Sale Agreement, after September 30, 1997, Lucent transferred from the LMPP and LPP to GD pension trusts a portion of the pension assets that were associated with the transferred active pension plan participants. Sections 5.5(i) and 5.5(j) of the Purchase and Sale Agreement required Lucent to transfer from the LMPP and the LPP to the GD pension trusts "the minimum required transfer amount determined in accordance with the terms of [Lucent's] pension plans . . . and the requirements of Section 414(l) of the Code, utilizing the 'safe harbor' rates and assumptions set forth in the regulations promulgated under Section 4044 of ERISA as of the Closing Date, except that the termination and retirement rate assumptions utilized for purposes of this Section 5.5(j) shall be the assumptions used by Seller as reported on the Attachments to Schedule B to Form 5500 for the plan year ending December 31, 1996."

164. Lucent did not transfer to the GD pension trusts all of the surplus pension assets associated with the transferred active LMPP and LPP plan participants. Lucent retained surplus pension assets associated with the active LMPP and LPP plan participants transferred to GD.

165. Lucent did not transfer to the GD pension trusts any pension assets associated with inactive LMPP and LPP plan participants.

166. On September 30, 2003, the Government's contracting officer issued final decisions to AT&T and to Lucent asserting that Lucent's sale of its ATS Division segment to GD constituted a segment closing under CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1996), and that the Government was entitled to a segment-closing adjustment in the principal amount of $28,260,630, plus $16,181,845 in interest.

**COUNT I**
**(GOVERNMENT CLAIM FOR A**
**SEGMENT-CLOSING ADJUSTMENT**
**UNDER CAS 413.50(c)(12))**

167. Defendant repeats and incorporates herein by reference the allegations contained in paragraphs 130 through 166 above as if set forth in full at this point.

168. On and prior to September 30, 1997, Lucent's ATS Division was a "segment" of Lucent's business as defined in CAS 413.30(a)(19), 48 C.F.R. § 9904.413-30(a)(19) (1996).

169. Lucent's sale of its ATS Division to GD constituted a segment closing of the ATS segment within the definition of "segment closing" contained in CAS 413.30(a)(20), 48 C.F.R. § 9904.413-30(a)(20) (1996).

170. Under CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12), Lucent was required to determine the difference between the actuarial accrued liability for the ATS segment and the market value of the assets allocated to that segment (the "adjustment amount"), and pay to the Government the Government's share of the adjustment amount. Under CAS 413.50(c)(12)(vi), 48 C.F.R. § 9904.413-50(c)(12)(vi), the Government's share of the adjustment is equal to the following fraction: the sum of all pension plan costs allocated to all of the ATS segment's CAS-covered contracts and subcontracts (including Foreign Military Sales) for a period of years representative of the Government's participation in the segment's pension plans divided by the total pension costs assigned to the segment's cost accounting periods during those same years.

171. The Government's share of the segment-closing adjustment amount under CAS 413.50(c)(12)(vi), 48 C.F.R. § 9904.413-50(c)(12)(vi) (1996), is an amount that will be established at the trial of this action.

172. Pursuant to CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1996), Lucent is liable to the Government for the Government's share of the segment-closing adjustment amount, plus interest for Lucent's non-compliance with CAS 413 in an amount that will be established at the trial of this action.

173. Lucent has not paid to the Government any part of the amount that it owes under CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1996).

WHEREFORE, defendant respectfully requests that plaintiff's complaint be dismissed with prejudice, that judgment be entered in defendant's favor against plaintiff on defendant's counterclaim in an amount to be determined at the trial of this action, plus applicable interest and costs, and that defendant be granted such other and further relief as the Court may deem just and proper.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Deputy Director

OF COUNSEL:

KATHLEEN MALONE
Trial Attorney
Defense Contract Management Agency
495 Summer Street
Boston, MA 02210

Dated: January 28, 2005

s/ C. Coleman Bird
C. COLEMAN BIRD
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: 202.307.0453
Facsimile: 202.514.7965

Attorney for Defendant United States of America

**CERTIFICATE OF FILING**

I hereby certify that on the 28th day of January, 2005, a copy of the foregoing Defendant's Answer and Counterclaim was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ C. Coleman Bird