**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| LUCENT TECHNOLOGIES INC.<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES,<br><br>Defendant. | Case No. 04-1511C<br>(Judge Braden) |

**PLAINTIFF'S REPLY TO DEFENDANT'S COUNTERCLAIM**

Pursuant to Rule 7(a) of the Rules of the Court of Federal Claims, for its reply to Defendant's Answer and Counterclaim dated January 28, 2005 (the "Counterclaim"), Plaintiff, Lucent Technologies Inc. ("Lucent"), admits, denies and alleges as follows.

1-129. The allegations in paragraphs 1-129, statements concerning Lucent's requested relief and assertions contained in the Defendant, United States' (the "government"), affirmative defenses constitute the government's answers, conclusions of law or characterizations of its defenses to Lucent's Complaint, to which no response is required.

130. The allegations in paragraph 130 constitute conclusions of law, to which no response is required.

**BACKGROUND**

131. Lucent admits the allegations contained in the first sentence of paragraph 131. The allegations in the second sentence of paragraph 131 constitute

conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

132. The allegation in paragraph 132 constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied.

**AT&T's Spin-Off Of Lucent**

133. Lucent admits, with respect to item (a) in the first sentence of paragraph 133, that in November 1995, the corporate entity known as Lucent Technologies Inc. came into existence through the filing and approval of articles of incorporation with the State of Delaware. Whether Lucent was a "wholly-owned operating subsidiary of AT&T" constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied. Lucent admits, with respect to item (b) in the first sentence of paragraph 133, that after an IPO of a portion of Lucent's shares, AT&T then distributed, on or about September 30, 1996, to AT&T shareholders of record as of that same date all the shares of Lucent stock that AT&T owned. Whether AT&T's later transfer of Lucent stock to AT&T's shareholders was a "spin-off" constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied. The second sentence of paragraph 133 constitutes the government's characterization of the transaction, to which no response is required.

134. Lucent admits, with respect to the allegations in the first sentence of paragraph 134, that AT&T caused the incorporation of a new corporation, the name of

which was later changed to Lucent Technologies Inc. The remaining allegations in paragraph 134 constitute conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

135. With respect to the allegations in the first and second sentences of paragraph 135, Lucent admits that beginning on or about February 1, 1996, AT&T transferred to Lucent some of the assets and liabilities relating to certain businesses that AT&T had previously conducted in its own name, including the performance of various government and commercial contracts, to the extent supported by The Separation Agreement, which is the best evidence of its contents. The remaining allegations in the first and second sentences of paragraph 135 represent conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied. Lucent admits, with respect to the allegations in the third sentence of paragraph 135, that Lucent performed work under both government and commercial contracts prior to September 30, 1996. With respect to the remaining allegations in the third sentence of paragraph 135, the allegations represent conclusions of law to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

136. The allegation in the first sentence of paragraph 136 relating to whether this transaction is a “spin-off” constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied. Lucent admits the remaining allegations in paragraph 136.

137. The allegation in the first sentence of paragraph 137 relating to whether the distribution is part of a "spin-off" constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied. Lucent admits the remaining allegations in the first sentence of paragraph 137. The allegation in the second sentence of paragraph 137 constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied.

138. Lucent admits that after September 30, 1996, AT&T no longer owned any shares of Lucent common stock. Whether this transaction is a "spin-off" constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied.

139. Whether this transaction is a "spin-off" constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied. Lucent admits the remaining allegations in paragraph 139.

**AT&T Pension Plan Transfers To Lucent**

140. Lucent admits the allegations contained in the first sentence of paragraph 140. Lucent admits, with respect to the allegations in the second sentence of paragraph 140, that, upon information and belief, AT&T computed the total pension cost for the plans as a whole and then allocated the total pension cost across its business, using an allocation base. Lucent denies the remaining allegations contained in the second sentence of paragraph 140.

141. Lucent admits that as of September 30, 1996, the market value of the pension assets of ATTMPP exceeded the liabilities and, upon information and belief, Lucent admits that the assets exceeded the liabilities at all times during the year 1996. Whether the ATTMPP was overfunded constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied.

142. Lucent admits that as of September 30, 1996, the market value of the pension assets of ATTPP exceeded the liabilities and, upon information and belief, Lucent admits that the assets exceeded the liabilities at all times during the year 1996. Whether the ATTPP was overfunded constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied.

143. Lucent admits the allegations in paragraph 143.

144. Lucent admits, with respect to the allegations in the first sentence of paragraph 144, that it established the LMPP and the LPP. Whether this transaction is a "spin-off" constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied. Whether Lucent established the LMPP and the LPP pursuant to the terms of the EBA constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied. Lucent admits, with respect to the allegations in the second sentence of paragraph 144, that the LMPP and the LPP were to

have certain features, to the extent supported by Articles II and III of the EBA, which is the best evidence of its contents.

145. Lucent admits, with respect to the allegations in the first sentence of paragraph 145, that, under the terms of the EBA, certain participants in the ATMPP and the ATTP were transferred to the LMPP and LPP, respectively, to the extent supported by Articles II and III of the EBA, which is the best evidence of its contents. Whether this transaction is a "spin-off" constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied. Lucent admits, with respect to the allegations in the second sentence of paragraph 145, that certain pension liabilities of the ATTMPP and the ATTPP were transferred to the LMPP and LPP, respectively, to the extent supported by Articles II and III of the EBA, which is the best evidence of its contents. Lucent otherwise denies the allegations of paragraph 145.

146. Lucent admits, with respect to the allegations in paragraph 146, that certain assets were transferred from the ATTMPP and the ATTPP to the LMPP and LPP, respectively, to the extent supported by Articles II and III of the EBA, which is the best evidence of its contents. Whether this transaction is a "spin-off" constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied. Lucent otherwise denies the allegations of paragraph 146.

147. Lucent denies the allegations of paragraph 147.

148. Upon information and belief, Lucent admits the allegations in paragraph 148.

149. Upon information and belief, Lucent admits that AT&T challenged the contracting officer's final decision, dated September 30, 2002, by filing an action in this court, styled *AT&T v. United States*, No. 03-2258C.

**The Novation Agreement Among AT&T, Lucent, And The United States**

150. Lucent admits the allegations of paragraph 150 to the extent supported by the Novation Agreement, which is the best evidence of its contents.

**The Memorandum Of Agreement Among AT&T, Lucent, And The United States**

151. Lucent admits, with respect to the allegations in the first sentence of paragraph 151, that Lucent, AT&T and the government entered into the MOA. Lucent admits the allegations in the second sentence of paragraph 151 to the extent supported by the MOA, which is the best evidence of its contents. Lucent otherwise denies the allegations of paragraph 151.

**Lucent Was Required To Comply With Revised CAS 413**

152. Lucent admits the allegations in paragraph 152.

153. The allegation in paragraph 153 constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied.

**Lucent's Sale Of Its Advanced Technology Systems Division To General Dynamics Corporation**

154. The allegations in paragraph 154 constitute conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

155. The allegations in paragraph 155 constitute conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

156. Lucent admits that, among other things, it produced underwater detection and communications equipment for the government under CAS-covered contracts. The government's use of the term "principally" in paragraph 156 constitutes the government's characterization, to which no response is required. The remaining allegations in paragraph 156 are conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

**The Lucent Pension Plans**

157. Lucent admits the allegations in paragraph 157.

158. Lucent admits as of September 30, 1997, the market value of the pension assets of the LMPP was greater than its actuarial accrued liability. Whether the LMPP was overfunded constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied.

159. Lucent admits as of September 30, 1997, the market value of the pension assets of the LMPP was greater than its actuarial accrued liability. Whether the LPP was

overfunded constitutes a conclusion of law, to which no response is required; to the extent the allegation may be deemed to include an allegation of fact, it is denied.

**Lucent's Sale Of Its ATS Segment To General Dynamics Corporation**

160. Lucent admits the allegations in the first sentence of paragraph 160. Lucent admits, with respect to the allegations in the second sentence of paragraph 160, that Lucent agreed to sell to GD certain assets as of September 30, 1997, to the extent supported by the Purchase and Sale Agreement, which is the best evidence of its contents. Lucent otherwise denies the allegations of paragraph 160.

161. Lucent admits, with respect to the allegations in the first sentence of paragraph 161, that Lucent agreed to sell to GD certain assets, to the extent supported by the Purchase and Sale Agreement, which is the best evidence of its contents and states that the government's characterization that "the vast majority of the active Government contracts being preformed by" ATS requires no response. Lucent admits, with respect to the allegations in the second sentence of paragraph 161, that GD did not assume, among other excluded assets from the transaction, certain contracts, to the extent supported by the Purchase and Sale Agreement, which is the best evidence of its contents.

162. Lucent admits, with respect to the allegations in the first sentence of paragraph 162, that certain employees ceased to participate in the LMPP or LPP and were transferred to GD's pension plans, as of October 1, 1997, or the first date of their employment with GD, whichever was later, to the extent supported by the Purchase and Sale Agreement, which is the best evidence of its contents. Lucent admits, with respect to the allegations in the second sentence of paragraph 162, that as of October 1, 1997,

Lucent transferred to GD certain liabilities, to the extent supported by the Purchase and Sale Agreement, which is the best evidence of its contents. The remaining allegations in paragraph 162 constitute conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

163. Lucent admits, with respect to the allegations in the first sentence of paragraph 163, that after September 30, 1997, Lucent transferred to the GD pension trust certain assets, to the extent supported by the Purchase and Sale Agreement, which is the best evidence of its contents. Lucent admits, with respect to the second sentence of paragraph 163, that the Purchase and Sale Agreement states the quoted phrase, but asserts that the Purchase and Sale Agreement is the best evidence of its contents. The remaining allegations in paragraph 163 constitute conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

164. Lucent admits, with respect to the allegations in the first sentence of paragraph 164, that Lucent did not transfer to the GD pension trust all of the pension assets of the LMPP and LPP plans. Lucent admits, with respect to the allegations in the second sentence of paragraph 164, that Lucent retained certain assets of the LMPP and the LPP plans. The remaining allegations in paragraph 164 constitute conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

165. Lucent admits that Lucent did not transfer to the GD pension trust all of the pension assets of the LMPP and LPP plans. The remaining allegations in paragraph 165

constitute conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

166. Lucent admits that the contracting officer's final decision, dated September 30, 2003, found that "Lucent sold its ATS business unit to General Dynamics," that the sale constituted a segment closing under CAS § 413.30(a)(20) and that the government was entitled to a segment closing adjustment in the principal amount of $28,260,630, plus $16,181,845 in interest, to the extent supported the contracting officer's decision, which is the best evidence of its contents. Lucent otherwise denies the allegations of paragraph 166.

**COUNT I**
**(GOVERNMENT CLAIM FOR A SEGMENT-CLOSING ADJUSTMENT UNDER CAS §413.50(c)(12))**

167. For its reply to the allegations of paragraph 167, Lucent incorporates by reference its responses to paragraphs 1-167 set forth above.

168. The allegations in paragraph 168 constitute conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

169. The allegations in paragraph 169 constitute conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

170. The allegations in paragraph 170 constitute conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

171. The allegations in paragraph 171 constitute conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

172. The allegations in paragraph 172 constitute conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

173. The allegations in paragraph 173 constitute conclusions of law, to which no response is required; to the extent the allegations may be deemed to include allegations of fact, they are denied.

Lucent denies that the government is entitled to the relief requested in the prayer or any other relief.

Respectfully submitted this 10th day of March, 2005.

s/Thomas A. Lemmer
Thomas A. Lemmer
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202
(303) 634-4000
FAX: (303) 634-4400

ATTORNEY FOR PLAINTIFF
LUCENT TECHNOLOGIES INC.

OF COUNSEL:

Michael Garson
Corporate Counsel
Lucent Technologies Inc.
450 Spring Park Place
Herndon, VA 20170-5243
(703) 394-1450

DN:32064389.3