# Exhibit 2

# Part 1 of 12

EXECUTION COPY

# AGREEMENT FOR THE PURCHASE AND SALE OF ASSETS

by and between

LUCENT TECHNOLOGIES INC.

as Seller

and

GENERAL DYNAMICS CORPORATION

as Buyer

dated as of August 20, 1997

# INDEX TO DEFINED TERMS


| Term | Page |
|---|---|
| Accounts Payable | 1 |
| Accounts Receivable | 1 |
| Affiliate | 1 |
| Agreement | 34 |
| Asset Acquisition Statement | 2 |
| Assumed Environmental Liabilities | 2 |
| Assumed Leases | 2 |
| Assumed Liabilities | 2 |
| Auditor | 37 |
| Available Employees | 48 |
| Basic Order Agreement | 2 |
| Benefit Plan | 2 |
| Best Efforts | 3 |
| Business | 3 |
| Business Day | 3 |
| Business Financial Statements | 3 |
| Business Product | 1 |
| Buyer | 42 |
| Buyer's Consultant | 42 |
| Buyer's Environmental Records | 42 |
| Buyer's Inspection | 4 |
| CERCLA | 4 |
| Closing | 44 |
| Closing Balance Sheet | 53 |
| Closing Date | 4 |
| Code | 4 |
| Collateral Agreements | 4 |
| Completed Contracts | 4 |
| Contracts | 4 |
| Counsel for Buyer | 4 |
| Counsel for Seller | 4 |
| Dedicated Business Employees | 1 |
| Division | 8 |
| Eagle Premises | 5 |
| Encumbrance | 60 |
| Environmental Claim | 5 |
| Environmental Law | 42 |
| Environmental Records | 5 |
| ERISA | 5 |
| Excluded Assets | 5 |
| Excluded Liabilities | 5 |
| Excluded Programs | 38 |
| First Transfer Date | 5 |
| Fixtures and Supplies | 5 |
| GAAP | 5 |
| General Purchase Agreements | 5 |

# TABLE OF CONTENTS


1. Definitions .......... 1
   1.1 Defined Terms .......... 1
   1.2 Other Definitional and Interpretive Matters .......... 9

2. Purchase and Sale of Assets .......... 10
   2.1 Purchased Assets .......... 10
   2.2 Excluded Assets .......... 11
   2.3 Purchase Price .......... 13
   2.4 Assumed Liabilities .......... 13
   2.5 Excluded Liabilities .......... 14
   2.6 Consent of Third Parties; Further Assurances .......... 14
   2.7 No Licenses .......... 16
   2.8 Bulk Sales Law .......... 16
   2.9 Taxes .......... 16

3. Representations and Warranties of Seller .......... 16
   3.1 Organization and Authority .......... 16
   3.2 Authorization; Binding Obligations .......... 16
   3.3 No Violations .......... 17
   3.4 Financial Statements .......... 18
   3.5 Absence of Changes .......... 18
   3.6 Assets .......... 19
   3.7 Personal Property .......... 19
   3.8 Permits, Licenses .......... 19
   3.9 Leases .......... 19
   3.10 Compliance With Laws and Litigation .......... 19
   3.11 Business Employees .......... 20
   3.12 Contracts .......... 23
   3.13 Environmental Matters .......... 24
   3.14 Brokers .......... 25
   3.15 Real Property .......... 25
   3.16 Tax Matters
   3.17 Proprietary Information
   3.18 No Other Representations or Warranties .......... 27

4. Representations and Warranties of Buyer .......... 28
   4.1 Organization and Authority .......... 28
   4.2 Authorization; Binding Obligations .......... 28
   4.3 No Violations .......... 28
   4.4 Brokers .......... 29
   4.5 Sufficiency of Funds .......... 29

5. Certain Covenants .......... 29
   5.1 Information .......... 29
   5.2 Conduct of Business .......... 31
   5.3 Tax Reporting and Allocation of Consideration .......... 32
   5.4 Use of Seller's Name .......... 33

5.5 Business Employees; Collective Bargaining Agreements .............................. 34
5.6 Collateral Agreements .............................. 38
5.7 Regulation Compliance .............................. 38
5.8 Environmental .............................. 38
5.9 Settlement of Overhead Rates .............................. 40
5.10 Post Closing Price Adjustment .............................. 40
5.11 Contacts with Suppliers, Employees and Customers .............................. 42
5.12 Post-Closing Refunds
5.13 Contingent Performance of Certain Completed Contracts
5.14 Noncompetition Agreement
5.15 Nonsolicitation Agreement
5.16 Subcontracts; Basic Order Agreement
5.17 Assistance Regarding Real Estate
5.18 Third Party Software

6. Confidential Nature of Information .............................. 45
6.1 Confidentiality Agreement .............................. 45
6.2 Confidentiality of Proprietary Information .............................. 46

7. Closing .............................. 48
7.1 Documents to be Delivered by Seller .............................. 48
7.2 Documents to be Delivered by Buyer .............................. 49
7.3 Closing Date .............................. 49
7.4 Contemporaneous Effectiveness .............................. 50

8. Conditions Precedent to Closing .............................. 50
8.1 General Conditions .............................. 50
8.2 Conditions Precedent to Buyer's Obligations .............................. 50
8.3 Conditions Precedent to Seller's Obligations .............................. 51

9. Status of Agreements .............................. 51
9.1 Effect of Breach .............................. 52
9.2 Survival of Representations and Warranties .............................. 52
9.3 General Agreement to Indemnify .............................. 52
9.4 General Procedures for Indemnification .............................. 55
9.5 Procedures for Environmental Indemnification .............................. 57
9.6 Dispute Resolution .............................. 58

10. Miscellaneous Provisions .............................. 58
10.1 Notices .............................. 58
10.2 Expenses .............................. 59
10.3 Entire Agreement; Modification .............................. 59
10.4 Assignment; Binding Effect; Severability .............................. 59
10.5 Governing Law .............................. 60
10.6 Execution in Counterparts .............................. 60
10.7 Public Announcement .............................. 60
10.8 No Third-Party Beneficiaries, Etc. .............................. 60

11. Termination and Waiver .......... 61
11.1 Termination .......... 61
11.2 Effect of Termination .......... 62
11.3 Waiver of Agreement .......... 62
11.4 Amendment of Agreement .......... 62

INDEX TO EXHIBITS


| | |
|---|---|
| Exhibit A | Form of Intellectual Property Agreement |
| Exhibit B | Form of Lease |
| Exhibit C | Form of Transition Agreement |
| Exhibit D | Form of Basic Order Agreement |

## INDEX TO SCHEDULES


| | |
|---|---|
| Schedule 1.2 | Knowledge |
| Schedule 2.1(b) | Capital Items |
| Schedule 2.1(d) | Inventory |
| Schedule 2.1(i) | Governmental Permits |
| Schedule 2.5(d) | Description of Certain Matters |
| Schedule 3.4 | Business Financial Statements |
| Schedule 3.6 | Encumbrances & Exceptions |
| Schedule 3.9 | Assumed Leases |
| Schedule 3.11(a) | List of Dedicated Business Employees |
| Schedule 3.11(b) | Identification of Benefit Plans |
| Schedule 3.11(d) | Promised Changes to Plans |
| Schedule 3.11(g) | Advance Agreements |
| Schedule 3.12(a) | Contracts |
| Schedule 3.12(b) | Contract Performance |
| Schedule 3.13 | Exceptions to Environmental Representations |
| Schedule 3.15 | Principal Premises; Shared Premises; Third-Party Leases |
| Schedule 3.17(d) | Listed Companies |
| Schedule 5.2 | Changes in Conduct of Business |
| Schedule 5.9 | Overhead Rates |
| Schedule 5.10(c) | Selected Net Assets |
| Schedule 5.13 | Subject Contracts |
| Schedule 8.2(c)(i) | Senior Management Employees |
| Schedule 8.2(c)(ii) | Key Employees |

# AGREEMENT FOR THE PURCHASE AND SALE OF ASSETS

THIS AGREEMENT FOR THE PURCHASE AND SALE OF ASSETS ("Agreement") is made as of August 20, 1997 by and between Lucent Technologies Inc., a Delaware corporation, having a principal office at 600-700 Mountain Avenue, Murray Hill, N.J. 07974-0636 ("Seller"), and General Dynamics Corporation, a Delaware corporation, having a principal office at 3190 Fairview Park Drive, Falls Church, Virginia 22024-4523 ("Buyer").

WHEREAS, Seller is, among other things, engaged through its Advanced Technology Systems division (the "Division") in the development, manufacture, production, provision and sale of Business Products (as hereinafter defined); and

WHEREAS, Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, certain assets and operations of the Division relating to the development, manufacture and sale of Business Products as more fully described herein, upon the terms and subject to the conditions set forth herein;

NOW THEREFORE, in consideration of the mutual agreements and covenants herein contained and intending to be legally bound hereby, the parties hereto hereby agree as follows:

**1. Definitions**

**1.1 Defined Terms**

For the purposes of this Agreement, the following words and phrases shall have the following meanings:

"Accounts Payable" means all the accounts payable and accrued payment obligations of the Business.

"Accounts Receivable" means all the accounts, notes and finance receivables generated by the Business including all funds, refunds, receivables, credits, offsets, or reimbursements, claims, debts, obligations and such other rights, together with all accrued interest thereon in each case existing as of the close of business on the Closing Date.

"Affiliate" of any Person means any Person, directly or indirectly controlled by, controlling or under

common control with, such Person. For purposes of this Agreement, "control" means the power to direct the management and policies of a Person, whether through the ownership of voting securities, by agreement or otherwise.

"Assumed Environmental Liabilities" means all liabilities and obligations of Seller arising prior to the Closing Date under any Environmental Law with respect to conditions, events, occurrences, practices, Releases of Hazardous Substances or other acts or omissions prior to the Closing Date relating directly to the operations conducted by Seller at the Principal Premises. Notwithstanding the foregoing, the Assumed Environmental Liabilities shall not include any liability or obligation arising in connection with (i) any criminal violation of the Environmental Laws, (ii) any current or former facility of Seller, any of its Affiliates or any of their respective predecessors other than the Principal Premises or (iii) the generation, treatment, shipment, storage or disposal of Hazardous Substances or other materials to or at any facility or location other than the Principal Premises.

"Assumed Leases" means the Leases to be assumed by the Buyer pursuant to the Lease Assignment and identified on Schedule 3.9.

"Assumed Liabilities" means the liabilities and obligations of Seller assumed by Buyer pursuant to the Assumption Agreement and Section 2.4.

"Auditor" means, for purposes of Section 5.10, Coopers & Lybrand.

"Benefit Plan" means, in respect of any Business Employee, each "employee benefit plan," as defined in Section 3(3) of ERISA (including any "multiemployer plan" as defined in Section 3(37) of ERISA) and each profit-sharing, bonus, stock option, stock purchase, stock ownership, pension, retirement, severance, deferred compensation, excess benefit, supplemental unemployment, post-retirement medical or life insurance, welfare or incentive plan, or sick leave, long-term disability, medical, hospitalization, life insurance, other insurance plan, or other employee benefit plan, program, agreement or arrangement, whether written or unwritten, qualified or non-qualified, funded or unfunded, maintained or contributed to by Seller.

"Best Efforts" means that the obligated party is required to make a diligent, reasonable and good faith effort to accomplish the applicable objective. Such obligation, however, does not require an expenditure of funds or the incurrence of a liability on the part of the obligated party,

nor does it require that the obligated party act in a manner that would be contrary to normal commercial practices in order to accomplish the objective. The fact that the objective is not actually accomplished is no indication that the obligated party did not in fact utilize its Best Efforts in attempting to accomplish the objective.

"Business" means the development, manufacture, production, provision and sale of Business Products as carried on by the Navy Programs, Advanced Projects and Secure Communications organizations of the Division immediately prior to the date of this Agreement. For purposes of this Agreement, the Business shall not include the Excluded Programs. The Business is described more fully in the Confidential Offering Memorandum dated April 1997 delivered by Seller to Buyer.

"Business Day" means a day that is not a Saturday, a Sunday or a statutory or civic holiday in the state of New York or any other day on which the principal offices of either Seller or Buyer are closed or become closed prior to 2:00 p.m. local time whether in accordance with established company policy or as a result of unanticipated events, including adverse weather conditions.

"Business Financial Statements" means the financial statements attached hereto as Schedule 3.4.

"Business Product" means any products and services for: remote signal detection; transmission; processing; analysis and display; command, control and communication and intelligence ($C^3I$); ship systems automation; decision support systems; networking; structural vibration control; secure communication; and any other similar products or services produced or provided by the Business as of the date of this Agreement. The Business Products are more fully described in the Confidential Offering Memorandum dated April 1997 delivered by Seller to Buyer.

"CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 et seq. as amended.

"Closing" means the closing of the transactions described in Article 7.

"Code" means the Internal Revenue Code of 1986, as amended.

"Collateral Agreements" means the agreements to be