# Exhibit 2

# Part 4 of 12

Reportable Event (except in connection with the separation of Seller from AT&T Corp.) as to which notice would be required to be filed with the Pension Benefit Guaranty Corporation (the "PBGC") and no proceeding by the PBGC to terminate such Employee Pension Benefit Plan (other than any multiemployer plan) has been instituted or, to Seller's knowledge, threatened;

(ix) to Seller's knowledge, no fiduciary has any liability for breach of fiduciary duty or any other failure to act or comply in connection with the administration or investment of the assets of any Benefit Plan;

(x) neither Seller or any of its Affiliates has incurred, nor does Seller have any reason to expect that it or any of its Affiliates will incur, any liability to the PBGC (other than PBGC premium payments) or otherwise under the Title IV of ERISA (including any withdrawal liability) or under the Code with respect to any Benefits Plan by reason of the actions contemplated hereunder;

(xi) all employees census data and other information relating to participants in the Benefit Plan provided by Seller to Buyer is accurate and complete in all materials respects; and

(xii) none of the Benefit Plans has been amended in any manner which would require the posting of security under Section 401(a)(29) of the Code or Section 307 of ERISA.

(d) Except as described on Schedule 3.11(d), Seller has not communicated to any Dedicated Business Employee (excluding internal memoranda to management), any plan or commitment, whether or not legally binding, to create any additional material plan or materially modify or change any Dedicated Business Benefit Plan that would affect any Dedicated Business Employee.

(e) No Benefit Plan contains any provision that would prohibit the transactions contemplated by this Agreement or that would give rise to any severance, bonus, termination or other payments as a result of the transaction contemplated by this Agreement.

(f) No Dedicated Business Employees who are classified by Seller as contractors or leased employees are eligible to participate in any Benefit Plan.

(g) Except as set forth in Schedule 3.11(g), Seller in connection with the Business is not a party to or otherwise bound by any advance agreement or similar agreement with any Governmental Body relating to the allocation, allowably or reimbursement of benefit costs or other matters in connection with any Benefit Plan.

**3.12 Contracts**

(a) Schedule 3.12(a) contains a complete and accurate list of all unclassified (i) Contracts that would require over the full term thereof payments by or to Seller of more than $500,000, (ii) Contracts relating to the license of any material item of Proprietary Information by or to Seller exclusively related to the Business (excluding general cross licenses agreements to which Seller is a party), (iii) Contracts which are material teaming, joint venture or similar agreements to which Seller is a party in connection with the Business, (iv) Contracts which are employment agreements, severance agreements, consulting agreements, collective bargaining agreements or similar agreements with Dedicated Business Employees or with consultants or other persons providing services to Seller in connection with the Business and (v) Contracts imposing non-competition or exclusive dealing obligations on Seller in connection with the Business. Each of the Contracts listed on Schedule 3.12(a) is valid, binding and enforceable against Seller and, to Seller's knowledge, the other parties thereto in accordance with its terms and is in full force and effect. Except as set forth on Schedule 3.12(a), Seller is not in material default or breach of or is otherwise materially delinquent in performance under any Contract listed on Schedule 3.12(a), Seller and, to Seller's knowledge, each of the other parties thereto has performed in all material respects all obligations required to be performed by it under, and is not in default in any material respect under, any such Contract, and no event has occurred that, with notice or lapse of time, or both, would constitute such a default.

(b) Except as set forth on Schedule 3.12(b), with respect to each Contract listed on Schedule 3.12(a) which is government contract or subcontract (or bid with respect to such a contract and subcontract) to which Seller is a party in connection with the Business (a "<u>Government Contract</u>") (i) Seller has complied in all material respects with all material terms and conditions of such Government Contract, including all clauses, provisions and requirements incorporated therein

expressly, by reference or by operation of law, (ii) Seller has complied in all material respects with all requirements of all laws or agreements pertaining to such Government Contract, including where applicable the Division's Cost Accounting Standards disclosure statement, (iii) no termination for convenience, termination for default, cure notice or show cause notice is currently in effect pertaining to any such Government Contract and (iv) no money due to Seller pertaining to any such Government Contract has been withheld or set off nor has any claim been made to withhold or set off money with respect thereto. Except as set forth on Schedule 3.12(b), with respect to the Business (i) neither Seller nor, to Seller's knowledge, any of its directors, officers, employees, consultants or agents is or has since January 1, 1992 been under administrative, civil or criminal investigation, indictment or information and (ii) since January 1, 1992, Seller has not conducted or initiated any internal investigation or made a voluntary disclosure to any Governmental Body with respect to any alleged illegal or improper act or omission relating to any Government Contract. Seller has provided Buyer with a correct and complete list of each draft and final audit report received by Seller with respect to the Business since January 1, 1992 with respect to the audit of any Government Contract, overhead cost or other cost accounting practice of Seller in connection with the Business (excluding proposals and routine contract close-outs). Seller has made available to Buyer correct and complete copies of each such report in the form received by Seller.

### 3.13 Environmental Matters

Except as set forth on Schedule 3.13, in connection with the Business and the Principal Premises:

(a) Seller is in material compliance with all Environmental Laws;

(b) Seller has no material liabilities, whether contingent or otherwise, arising under any Environmental Laws;

(c) Seller has received no written or, to Seller's knowledge, oral notices of any material violation or alleged material violation, or material non-compliance or alleged material non-compliance with, or material liability under, any Environmental Law, nor, to Seller's knowledge, have any such notices been threatened;

(d) There are no administrative, civil or criminal actions, suits, claims, orders, decrees, proceedings or investigations pending or, to Seller's knowledge, threatened

relating to environmental, health or safety matters in connection with the Business or any of the Principal Premises.

**3.14 Brokers**

No broker, investment banker, financial advisor or other Person, other than Deutsche Morgan Grenfell Inc., the fees and expenses of which will be paid by Seller, is entitled to any broker's, finder's, financial advisor's or other similar fee or commission, in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Seller.

**3.15 Real Property**

Schedule 3.15 sets forth (a) the legal description of all real property constituting the Principal Premises owned by Seller, (b) a description of the Shared Premises and (c) a description of all real property constituting Principal Premises leased or subleased by Seller from Third Parties. Seller has not received any written or, to Seller's knowledge, oral notice that the continued use or operation of the Principal Premises (as presently used) violates in any material respect any applicable building, zoning, safety and other laws, ordinances, regulations, codes, permits, licenses and certificates or any restrictions and conditions affecting title. Other than as disclosed in this Agreement and except with respect to Permitted Encumbrances, there are no leases, subleases, options or other agreements, written or oral, granting to any Person the right to purchase, use or occupy the Eagle Premises or any portion thereof that cannot be terminated without payment or penalty by Buyer. Seller has not received any written or, to Seller's knowledge, any oral notice or order by any Governmental Body that (a) relates to violations in any material respect of building, safety, fire or other ordinances or regulations with respect to the physical condition of the Principal Premises or (b) requests the performance of any material repairs, alterations or other work to or in the Principal Premises, which material violations, repairs, alterations or other work have not been cured or performed, as applicable. There is no pending condemnation, expropriation, eminent domain, special assessment or similar proceeding affecting all or any portion of the Principal Premises and, to Seller's knowledge, no such proceeding is threatened. Notwithstanding anything contained in this Section 3.15 to the contrary, no representation or warranty made by Seller in this Section 3.15 shall apply to any environmental matters.

### 3.16 Tax Matters

(a) All Tax returns, declarations, reports, claims for refunds, information returns or statements relating to Taxes, including any schedule or attachment thereto, and including any amendments thereof ("Tax Returns"), required to be filed on or prior to the Closing Date by Seller with respect to the Business or the Purchased Assets with any domestic or foreign taxing authority have been or shall be filed in accordance with all applicable laws and are true correct and complete in all material respects. All Taxes (whether or not shown on any Tax Return) with respect to the Purchased Assets or the Business have been or shall be paid (either directly by Seller or indirectly through applicable Tax sharing arrangements) prior to the due dates.

(b) Seller in connection with the Business and Purchased Assets has withheld and paid all Taxes in connection with amounts paid or owning to any employee, independent contractor, creditor, stockholder or other Person.

(c) With respect to the Business, Seller is not a party to any Tax allocation or sharing agreement, other than the agreements entered into among AT&T, Seller and NCR in connection with the spin off of the Seller and NCR from AT&T, none of which has any effect on the transactions contemplated by this Agreement or the ownership or operation of the Business by Buyer after the Closing Date.

(d) None of the Purchased Assets is subject to any Encumbrance (other than a Permitted Encumbrance) arising in connection with any failure or alleged failure to pay any tax. The transactions contemplated by this Agreement are not subject to tax withholding provisions of Code Section 3406 or to Subchapter A of Chapter 3 of the Code or any other provision of law. Seller is not a person other than a United States person within the meaning of the Code.

(e) None of the Purchased Assets (i) is property which the Business is required to treat as being owned by any other Person pursuant to the so-called "safe harbor lease" provisions of Section 168(f)(8) of the Code, (ii) directly or indirectly secures any debt the interest on which is Tax exempt under Section 103(a) of the Code, (iii) is "tax-exempt use property" within the meaning of Section 168(h) of the Code, (iv) is "tax-exempt bond financed property" within the meaning of Section 168(g)(5) of the Code or (v) is "limited use property" within the meaning of Revenue Procedure 76-30.

### 3.17 Proprietary Information

(a) Seller in connection with the Business has not to its knowledge interfered with, infringed upon, misappropriated or otherwise come into conflict with any Proprietary Information or other intellectual property rights of Third Parties. Seller has not received any charge, complaint, claim, demand or notice alleging any such interference, infringement, misappropriation or violation (including any claim that Seller must license or refrain from using any Proprietary Information or other intellectual property rights of any Third Party) which has not been settled or otherwise fully resolved. To Seller's knowledge, no Third Party has interfered with, infringed upon, misappropriated or otherwise come into conflict with any Proprietary Information or other intellectual property rights of Seller in connection with the Business.

(b) To Seller's knowledge, Buyer will not interfere with, infringe upon, misappropriate or otherwise come into conflict with any Proprietary Information or other intellectual property rights of Third Parties as a result of Buyer's continued operation of the Business as presently conducted and as presently proposed to be conducted by Seller.

(c) To Seller's knowledge, Seller has not restricted Seller's ability to grant licenses under Lucent's Patents (as that term is defined in the Intellectual Property Agreement) which will materially interfere with Buyer's exercise of the licenses granted pursuant to the Intellectual Property Agreement in Buyer's operation of the Business as presently conducted and as presently proposed to be conducted by Seller.

(d) Except as listed in Schedule 3.17(d), to Seller's knowledge based on a review of the patent licensing records of Seller's Intellectual Property Division, Seller has not licensed the companies listed in Schedule 3.17(d) under (i) the patents and patent applications listed in Exhibit A of the Intellectual Property Agreement, or (ii) under Lucent's Patents (as that term is defined in the Intellectual Property Agreement) for the manufacture or sale of military systems for the following fields of use: undersea surveillance systems, undersea military communication networks where information flow is predominately in one direction, signal and information processing for anti-submarine warfare, active structural control, secure (military) analog communications terminal products, or tactical networking/decision support systems on military platforms.

### 3.18 No Other Representations or Warranties

(a) With respect to the Purchased Assets, the Business, or any other rights or obligations to be transferred hereunder or pursuant hereto, Buyer has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee, attorney or other representative of Seller or by any Person representing or purporting to represent Seller that are not expressly set forth in this Agreement (including the Schedules hereto), whether or not any such representations, warranties or statements were made in writing or orally. It is hereby agreed by Buyer that, except as otherwise expressly provided herein, Seller makes no representations or warranties with respect to the Purchased Assets or the Business. Buyer assumes the responsibility and risks of all defects and conditions relating to the Principal Premises including, without limitation, such conditions as are disclosed herein and including defects and conditions that cannot be observed by casual inspection, and Buyer has inspected the Principal Premises and is relying entirely on its own investigation and on any consultants that Buyer may retain.

(b) Buyer acknowledges that it has made its own assessment of the future of the Business and is sufficiently experienced to make an informed judgment with respect thereto. Buyer further acknowledges that Seller has not made any warranty, express or implied, as to the future of the Business and/or its profitability for Buyer, or with respect to any forecasts, projections or business plans prepared by Seller and delivered to Buyer in connection with the offering of the Business by Seller and the negotiation and the execution of this Agreement.

(c) Disclosure by Seller on any one Schedule delivered pursuant to this Agreement to Buyer shall be disclosure as to all such Schedules and, to the extent such disclosure conflicts with any representation, warranty or covenant of Seller, Seller shall have no liability relating to such conflicts. Notwithstanding the foregoing, the parties agree that the mere listing on a Schedule of a contract or agreement shall not in itself be sufficient to disclose any breach, violation, dispute, claim or similar matter relating to such contract or agreement.

## 4. Representations and Warranties of Buyer

Buyer represents and warrants to Seller that:

## 4.1 Organization and Authority

Buyer is a corporation duly organized, validly existing and in good standing under the laws of the state of Delaware, and Buyer has all full corporate power and authority to carry on its business as now being conducted and to own or lease and operate its properties as, and in the places where, such business is now conducted and such properties are now owned, leased or operated.

## 4.2 Authorization; Binding Obligations

Buyer has all necessary corporate power and authority to execute and deliver this Agreement and the Collateral Agreements and to effect the transactions contemplated hereby and thereby and has duly authorized the execution, delivery and performance of this Agreement and the Collateral Agreements by all necessary corporate action. This Agreement has been duly executed and delivered by Buyer and this Agreement is, and the Collateral Agreements when duly executed and delivered by Buyer will be, valid and legally binding obligations of Buyer, enforceable against it in accordance with their terms, except to the extent that enforcement of the rights and remedies created hereby and thereby may be affected by bankruptcy, reorganization, insolvency and similar laws of general application affecting the rights and remedies of creditors and by general equity principles.

## 4.3 No Violations

(a) The execution, delivery and performance of this Agreement and the Collateral Agreements by Buyer and the consummation of the transactions contemplated hereby and thereby do not and will not (i) result in a breach or violation of any provision of Buyer's charter or by-laws or in a material violation of any statute, rule, regulation or ordinance applicable to Buyer or (ii) violate or result in a breach of or constitute an occurrence of default (or an event that might, upon the passage of time or the giving of notice, or both, constitute an occurrence of default) under any provision of, result in the acceleration or cancellation of any obligation under, or give rise to a right by any party to terminate or amend its obligations under, any material mortgage, deed of trust, conveyance to secure debt, note, loan, indenture, lien, lease, agreement, instrument, order, judgment, decree or other material arrangement or commitment to which Buyer is a party or by which it or its assets or properties are bound, or (iii) violate any order, judgment, decree, rule or regulation of any court or any Governmental Body having jurisdiction over Buyer or any of its properties.

(b) No consent, approval, order or authorization of, or registration, declaration or filing with, any Person is required by Buyer in connection with the execution and delivery of this Agreement and the Collateral Agreements or the consummation of the transactions contemplated hereby or thereby, except for (i) any filings required to be made under the HSR Act and (ii) such consents, approvals, orders, authorizations, registrations, declarations or filings where the failure of compliance would not, individually or in the aggregate, have a material adverse effect on Buyer's ability to consummate the transactions contemplated hereby and thereby.

### 4.4 Brokers

No broker, investment banker, financial advisor or other Person, other than Goldman, Sachs & Co., the fees and expenses of which will be paid by Buyer, is entitled to any broker's, finder's, financial advisor's or other similar fee or commission in connection with the transactions contemplated by this Agreement based on arrangements made by or on behalf of Buyer.

### 4.5 Sufficiency of Funds

Buyer has funds available to pay the Purchase Price and any adjustments, operate the Business and pay any amounts due under the Collateral Agreements.

## 5. Certain Covenants

### 5.1 Information

(a) Seller will give to Buyer and to its officers, employees, accountants, counsel and other representatives reasonable access during Seller's normal business hours throughout the period prior to the Closing to all of Seller's properties, books, contracts, commitments, reports of examination and records (excluding personnel records) directly relating to the Business (but excluding the Excluded Assets and Excluded Liabilities and subject to any limitations that are reasonably required to preserve any applicable attorney-client privilege or third-party confidentiality obligation). Buyer will hold, and will cause such representatives to hold, such information in confidence as provided in Article 6.

(b) After the Closing Date, Seller and Buyer will provide to each other and to their respective officers, employees, counsel and other representatives, upon request (subject to any limitations that are reasonably required to

preserve any applicable attorney-client privilege or third-party confidentiality obligation), reasonable access for inspection and copying of all Business Records, Governmental Permits, Contracts and any other information relating to the Business, and will make their respective personnel reasonably available for interviews, depositions and testimony in any legal matter concerning transactions, operations or activities, including treatment, storage, transportation, disposal, recycling and handling of Hazardous Substances or compliance with Environmental Laws, relating to the Business or the Purchased Assets, and as otherwise may be necessary or desirable to enable the party requesting such assistance to: (i) comply with reporting, filing or other requirements imposed by any foreign, local, state or federal court, agency or regulatory body; (ii) assert or defend any claims or allegations in any litigation or arbitration or in any administrative or legal proceeding (including any investigations, actions, claims, suits or proceedings relating to matters involving criminal conduct or civil fraud covered in Section 2.4(b) of this Agreement), or audit, other than claims or allegations that one party to this Agreement has asserted against the other; or (iii) (subject to clause (ii) above), perform its obligations under this Agreement. The party requesting such information or assistance shall reimburse the other party for all out-of-pocket costs and expenses incurred by such party in providing such information and in rendering such assistance. The access to files, books and records contemplated by this Section 5.1(b) shall be during normal business hours and upon not less than two Business Days' prior written request and shall be subject to such reasonable limitations as the party having custody or control thereof may impose to preserve the confidentiality of information contained therein.

(c) Buyer agrees to preserve all Business Records and Governmental Permits for at least ten (10) years after the Closing Date. After this ten-year period and at least 90 days prior to the planned destruction of any Business Records or Governmental Permits, Buyer shall notify Seller in writing and shall make available to Seller, upon its request, such Business Records and Governmental Permits. Buyer further agrees that, to the extent Business Records or Governmental Permits are placed in storage, they will be indexed in such a manner as to make individual document retrieval possible in an expeditious manner.

(d) Seller agrees to make available to Buyer, for inspection and copying by Buyer, all employment and personnel records (including medical records) and information relating to any Business Employee hired by Buyer who has consented in writing to the release of such records and information to