# Exhibit 2

# Part 7 of 12

"Subcontracts") containing fixed price or cost reimbursement price terms and other terms and conditions in each case the same in all material respects as the price terms and other terms and conditions upon which such products and services were provided to or by the Business immediately prior to the Closing Date.

(b) As of the Closing Date, Seller and Buyer shall enter into a Basic Order Agreement in the form attached as Exhibit D to this Agreement (the "Basic Order Agreement") pursuant to which Seller and it Affiliates shall agree to provide certain research and development, testing and similar services to Buyer on the terms and conditions provided therein.

**5.17 Assistance Regarding Real Property**

Seller agrees to cooperate with Buyer and to provide Buyer's employees and agents with access to the Principal Premises for purposes of performing such title investigations and surveys of the Principal Premises as Buyer reasonably determines are necessary in connection with its acquisition of the Business. All costs of such title examinations and surveys shall be borne by Buyer.

**5.18 Third Party Software**

Buyer and Seller agree that each party shall bear 50% of any costs associated with obtaining any required consents or approvals necessary for Seller to assign or otherwise make available to Buyer (including through relicensure) the computer software licensed by Seller from Third Parties and used in connection with the Business as of the Closing Date. The computer software to be assigned or otherwise made available to Buyer pursuant to this Agreement shall not include any business, financial or similar software to be used by Seller to provide transition support services to Buyer pursuant to the Transition Agreement or any commercially available office software.

**6. Confidential Nature of Information**

**6.1 Confidentiality Agreement**

Buyer agrees that the Confidentiality Agreement between Buyer and Seller dated May 23, 1997 shall apply to (a) all documents, materials and other information that it shall have obtained regarding Seller or its Affiliates during the course of the negotiations leading to the consummation of the transactions contemplated hereby (whether obtained before or after the date of this Agreement), any investigations made

in connection therewith and the preparation of this Agreement and related documents and (b) all analyses, reports, compilations, evaluations and other materials prepared by Buyer or its counsel, accountants or financial advisors that contain or otherwise reflect or are based upon, in whole or in part, any of the provided information; provided, however, that subject to Section 6.2(a), the Confidentiality Agreement shall terminate as of the Closing and shall be of no further force and effect thereafter with respect to information of Seller the ownership of which is transferred to Buyer or which otherwise relates exclusively to the Business.

### 6.2 Confidentiality of Proprietary Information

(a) Except as provided in Section 6.2(c), after the Closing and for a period of five (5) years following the Closing Date, Buyer agrees that it will keep confidential all of Seller's and its Affiliates' Proprietary Information that is received from, or made available by, Seller in the course of the transactions contemplated hereby, including, for purposes of this Section 6.2, information about Seller's and its Affiliates' business plans and strategies, marketing ideas and concepts, especially with respect to unannounced products and services, present and future product plans, pricing, volume estimates, financial data, product enhancement information, business plans, marketing plans, sales strategies, customer information (including customers' applications and environments), market testing information, development plans, specifications, customer requirements, configurations, designs, plans, drawings, apparatus, sketches, software, hardware, data, prototypes, connecting requirements or other technical and business information, except for such Transferred Proprietary Information as is conveyed to Buyer as part of the Purchased Assets.

(b) Except as provided in Section 6.2(c), after the Closing and for a period of five (5) years following the Closing Date, Seller agrees that it will keep confidential all of the Transferred Proprietary Information and all Know-How (as defined in the Intellectual Property Agreement) owned by Seller which originated within the Business and which is used by the Business as of the Closing Date, including, for purposes of this Section 6.2, information about the Business' business plans and strategies, marketing ideas and concepts, especially with respect to unannounced products and services, present and future product plans, pricing, volume estimates, financial data, product enhancement information, business plans, marketing plans, sales strategies, customer information (including customers' applications and environments), market testing information, development plans, specifications, customer requirements, configurations, designs, plans,

drawings, apparatus, sketches, software, hardware, data, prototypes, connecting requirements or other technical and business information.

(c) Notwithstanding the foregoing, Proprietary Information shall not be deemed confidential and neither Buyer nor Seller shall have any obligation with respect to any Proprietary Information that:

(i) was already known to party otherwise obligated to maintain the confidentiality of such Proprietary Information other than through this transaction;

(ii) is or becomes publicly known through publication, inspection of a product, or otherwise, and through no negligence or other wrongful act of such party;

(iii)is received by such party from a Third Party without similar restriction and without breach of any agreement;

(iv) to the extent it is independently developed by such party; or

(v) is, subject to Section 6.2(d), required to be disclosed under applicable law or judicial process.

(d) If Buyer, Seller or any of their respective Affiliates is requested or required (by oral question, interrogatory, request for information or documents, subpoena, civil investigative demand or similar process) to disclose any Proprietary Information, the party requested or required to disclose such Proprietary Information will promptly notify the other party of such request or requirement and will cooperate with the other party such that the other party may seek an appropriate protective order or other appropriate remedy. If, in the absence of a protective order or the receipt of a waiver hereunder, the party requested or required to disclose such Proprietary Information is in the written opinion of its counsel compelled to disclose the Proprietary Information or else stand liable for contempt or suffer other censure or significant penalty, such party may disclose only so much of the Proprietary Information to the party compelling disclosure as is required by law. The party requested or required to disclose such Proprietary Information will exercise its (and will cause its Affiliates to exercise their) Best Efforts to obtain a protective order or other reliable assurance that confidential treatment will be accorded to such Proprietary Information.

(e) The terms and conditions of this Agreement,

and all attachments and amendments hereto and thereto shall be considered Proprietary Information protected under this Article 6. Notwithstanding anything in this Article 6 to the contrary, in the event that any such Proprietary Information is also subject to a limitation on disclosure or use contained in another written agreement between Buyer and Seller that is more restrictive than the limitation contained in this Article 6, then the limitation in such agreement shall supersede this Article 6.

## 7. Closing

At the Closing, the following transactions shall take place:

### 7.1 Documents to be Delivered by Seller

On the Closing Date, Seller shall deliver, or execute and deliver, the following documents and agreements to Buyer:

(a) the Collateral Agreements;

(b) an Assignment and Bill of Sale with respect to the Purchased Assets in a form reasonably satisfactory to Buyer;

(c) a special warranty deed in the customary and proper form for recording duly executed and acknowledged so as to convey to Buyer good title to the Eagle Premises; provided that Buyer shall assume all risks of examining title;

(d) the lease assignments in a form reasonably satisfactory to Buyer with respect to each of the Principal Premises leased by Seller from Third Parties;

(e) all consents, waivers or approvals theretofore obtained by Seller with respect to the Purchased Assets or the consummation of the transactions contemplated by this Agreement;

(f) an opinion or opinions of Counsel for Seller dated the Closing Date with respect to the matters described in Sections 3.1, 3.2 and 3.3 in a form and subject to such exceptions as are customary for transactions similar to those contemplated hereby, which form shall be reasonably acceptable to Buyer;

(g) a certificate of an appropriate officer of Seller, dated the Closing Date, certifying to the best of his or her knowledge the fulfillment of the conditions set forth

in Sections 8.2(a) and (b);

(h) to the extent required, updated Schedules revised to reflect changes in the operations or condition of the Business between the date hereof and the Closing Date;

(i) an affidavit pursuant to Section 1445(b)(2) of the Code stating under penalty of perjury Seller's federal employer identification number and that Seller is not a foreign person and such other certificates and affidavits relating to Tax matters as may reasonably be requested by Buyer; and

(j) all such other bills of sale, assignments and other instruments of assignment, transfer or conveyance as Buyer may reasonably request or as may be otherwise necessary to evidence and effect the sale, transfer, assignment, conveyance and delivery of the Purchased Assets to Buyer and to put Buyer in actual possession or control of the Purchased Assets.

**7.2 Documents to be Delivered by Buyer**

On the Closing Date, Buyer shall deliver, or execute and deliver, the following funds, documents and agreements to Seller:

(a) the Purchase Price as provided in Section 2.3;

(b) the Collateral Agreements;

(c) an assumption agreement with respect to the Assumed Liabilities in a form reasonably satisfactory to Seller;

(d) an opinion or opinions of Counsel for Buyer dated the Closing Date with respect to the matters described in Sections 4.1, 4.2 and 4.3 in a form and subject to such exceptions as are customary for transactions similar to those contemplated hereby, which form shall be reasonably satisfactory to Seller;

(e) a certificate of an appropriate officer of Buyer, dated the Closing Date, certifying to the best of his or her knowledge the fulfillment of the conditions set forth in Sections 8.3(a) and (b); and

(f) all such other documents and instruments as Seller may reasonably request or as may be otherwise necessary or desirable to evidence and effect the assumption by Buyer of the Assumed Liabilities.

7.3 **Closing Date**

The Closing shall take place at the office of Seller at 10:00 a.m. on September 30, 1997 or within three Business Days after all the conditions specified in Article 8 have been satisfied or waived, or at such other place or time or on such other date as Seller and Buyer may agree upon in writing (such date and time being referred to herein as the "Closing Date"), but in no event later than March 31, 1998.

7.4 **Contemporaneous Effectiveness**

All acts and deliveries prescribed by this Article 7, regardless of chronological sequence, will be deemed to occur contemporaneously and simultaneously on the occurrence of the last act or delivery, and none of such acts or deliveries will be effective until the last of the same has occurred.

8. **Conditions Precedent to Closing**

8.1 **General Conditions**

The respective obligations of Buyer and Seller to effect the Closing of the transactions contemplated hereby are subject to the fulfillment, prior to or at the Closing, of each of the following conditions:

(a) No order of any court or administrative agency shall be in effect that enjoins, restrains, conditions or prohibits consummation of this Agreement, and no litigation, investigation or administrative proceeding that has a substantial chance of success on its merits initiated by any bona fide Third Party shall be pending or threatened that would enjoin, restrain, condition or prohibit consummation of this Agreement.

(b) Any applicable waiting period under the HSR Act relating to the transactions contemplated by this Agreement shall have expired or been terminated.

8.2 **Conditions Precedent to Buyer's Obligations**

The obligations of Buyer to effect the Closing of the transactions contemplated hereby are subject to the fulfillment, prior to or at the Closing, of each of the following conditions, any of which may be waived in writing by Buyer:

(a) The representations and warranties of Seller

contained in this Agreement or in any schedule, certificate or document delivered pursuant to the provisions hereof or in connection with the transactions contemplated hereby shall be true and correct in all material respects at and as of the Closing Date, as though such representations and warranties were made at and as of the Closing Date, except (i) as affected by the transactions contemplated hereby and (ii) to the extent that such representations and warranties are made as of a specified date other than the date of this Agreement, in which case such representations and warranties shall be true in all material respects as of the specified date. Notwithstanding the foregoing, to the extent any event, occurrence or condition listed on the updated schedules delivered pursuant to Section 7.1(h) would, or could be reasonably expected to, result in a Material Adverse Effect on the Business, the representations and warranties of Seller shall not be deemed to have been qualified by the disclosure of such event, occurrence or condition and the condition set forth in this Section 8.2(a) shall not be deemed to have been satisfied.

(b) Seller shall have performed in all material respects all obligations and agreements and complied in all material respects with all covenants and conditions required by this Agreement to be performed or complied with by it prior to or at the Closing.

(c) At least seven of the Dedicated Business Employees listed on Schedule 8.2(c)(i) and at least 34% of the Dedicated Business Employees listed on Schedule 8.2(c)(ii) shall have accepted Buyer's offer of employment after the Closing Date.

(d) Seller shall have obtained and delivered to Buyer written consents to the assignment of each of the Contracts indicated on Schedule 3.12(a) as a material Contract consent to the assignment of which is required as a condition to Buyer's obligations at Closing.

**8.3 Conditions Precedent to Seller's Obligations**

The obligations of Seller to effect the Closing of the transactions contemplated hereby are subject to the fulfillment, prior to or at the Closing, of each of the following conditions, any of which may be waived in writing by Seller:

(a) The representations and warranties of Buyer contained in this Agreement or in any certificate or document delivered pursuant to the provisions hereof or in connection with the transactions contemplated hereby shall be true in all

material respects at and as of the Closing Date as though such representations and warranties were made at and as of the Closing Date, except to the extent that such representations and warranties are made as of a specified date other than the date of this Agreement, in which case such representations and warranties shall be true in all material respects as of the specified date.

(b) Buyer shall have performed in all material respects all obligations and agreements and complied in all material respects with all covenants and conditions required by this Agreement to be performed or complied with by it prior to or at the Closing.

(c) Buyer shall have produced fully executed resale exemption certificates to support any claimed exemption from sales or use Taxes reasonably requested by Seller.

## 9. Status of Agreements

The rights and obligations of Buyer and Seller under this Agreement shall be subject to the following terms and conditions:

### 9.1 Effect of Breach

In the event of a material breach of any representation, certification or warranty, or agreement or covenant of the Seller under this Agreement that is discovered by the Buyer prior to Closing and that cannot be or is not cured by the Seller upon prior notice and the passage of a reasonable period of time, the Buyer may elect not to proceed with the Closing hereunder, which shall be the Buyer's sole remedy for such breach.

### 9.2 Survival of Representations and Warranties

The representations and warranties of Buyer and Seller contained in this Agreement shall survive the Closing for 18 months, except for (a) the representations and warranties contained in Sections 3.1, 3.2 , 3.3 (only with respect to Seller's charter and by-laws), 3.6(a), 3.11, 3.12(b), 3.14 and 3.16 which shall survive for two years, and (c) the representations and warranties contained in Sections 4.1, 4.2, 4.3 (only with respect to Buyer's charter and by-laws) and 4.4, which shall survive for two years. Neither Seller nor Buyer shall have any liability whatsoever with respect to any such representations or warranties after the survival period for such representation or warranty expires, except for claims then pending or theretofore asserted in writing by any party in accordance with the terms

and conditions of this Agreement.

9.3 **General Agreement to Indemnify**

(a) Each party shall indemnify, defend and hold harmless the other party hereto and any director, officer or Affiliate of the other party (each an "Indemnified Party") from and against any and all claims, actions, suits, proceedings, liabilities, obligations, losses, and damages, amounts paid in settlement, interest, costs and expenses (including reasonable attorney's fees, court costs and other out-of-pocket expenses incurred in investigating, preparing or defending the foregoing) (collectively, "Losses") incurred or suffered by any Indemnified Party to the extent that the Losses arise by reason of, or result from (i) the failure of any representation or warranty of such party contained in this Agreement to have been true in all respects when made and as of the Closing Date or (ii) the breach by such party of any covenant or agreement of such party contained in this Agreement to the extent not waived by the other party.

(b) Buyer further agrees to indemnify and hold harmless Seller with respect to: (i) any failure of Buyer to discharge any of the Assumed Liabilities whether known or unknown, accrued or contingent, or now or subsequently incurred; (ii) any liability arising out of the operation of the Business after the Closing Date; (iii) Buyer's share of any claim, demand or liability for the Taxes referred to in Section 2.9, including interest and penalties thereon; and (iv) any medical, health or disability claims of any Transferred Employee, except for claims for expenses incurred on or before the close of business on the Closing Date and presented timely to Seller by such Business Employee for payment or reimbursement in accordance with the terms of the applicable Benefit Plan.

(c) Seller further agrees to indemnify and hold harmless Buyer from and against any Losses incurred by Buyer arising out of, resulting from, or relating to: (i) the Excluded Liabilities, (ii) Seller's share of any claim, demand, or liability for Taxes referred to in Section 2.09, including interest and penalties thereon and (iii) any termination, salary continuation or severance pay or benefits payable by Seller to any Business Employee by reason of such Employee's termination of employment by Seller on or before the Closing Date, except for Involuntary Separation Benefits, the cost of which shall be borne by Buyer as provided in Section 5.5(h).

(d) Seller further agrees to indemnify and hold Buyer harmless from and against, and to defend or settle any

action brought against the Buyer, to the extent that the action is based on a claim than the use by the Buyer of any technology disclosed in any Lucent Patent, any Know-How or any Lucent Software (as these terms are defined in the Intellectual Property Agreement) as furnished by Seller infringes or misappropriates any patent or intellectual property right of any Third Party or violates the terms of any license or agreement to which Seller or any of its Affiliates is or becomes a party, and Seller will bear the cost of such defense or settlement and will pay those costs, damages and attorney's fees finally awarded against Buyer in any such action attributable to any such claim; provided, however, that such defense, settlements and payments are conditioned on the following: (i) that the claim arises solely because the Buyer uses the technology disclosed in any Lucent Patent, Know-How or Lucent Software in an equivalent manner as Seller used such technology, Know-How or Lucent Software in the Business prior to the Closing Date; (ii) that Seller shall be notified promptly in writing by the Buyer of any such claim and of any notice of infringement or possible infringement received by the Buyer in advance of such action; (iii) that Seller shall have sole control of the defense of any action on such claim and of all negotiations for its settlement or compromise; (iv) that the Buyer shall cooperate in a reasonable way to facilitate the settlement or defense of such claim, and that the Buyer have made no statement or taken any action which might reasonably be expected to materially hamper or undermine Seller's defense or settlement; and (v) that such claim does not arise from use or combination of such technology, Know-How or Lucent Software with other intellectual property not supplied or used by Seller. Seller's indemnification obligations under this Section 9.3(d) shall terminate (i) on the fourth anniversary of the Closing Date with respect to any claim for infringement or misappropriation of any patent or other intellectual property right of a Third Party where such infringement or misappropriation would have been a licensed use by Seller or its Affiliates had the Business not been sold to Buyer pursuant to this Agreement and (ii) on the second anniversary of the Closing Date with respect to any other claim; provided that Seller's indemnification obligations under this Section 9.3(d) shall continue in effect until the settlement or other resolution of any claim written notice of which is delivered to Seller prior to the foregoing dates.

(e) Amounts payable in respect of the parties' indemnification obligations shall be treated as an adjustment to the Purchase Price. Buyer and Seller agree to cooperate in the preparation of a supplemental Asset Acquisition Statement as required by Section 5.3 and Treasury Reg. § 1.1060-1T(f) and (h)(2)(ii), and in the manner provided in Section 5.3, as