# Exhibit 2

# Part 8 of 12

a result of any adjustment to the Purchase Price pursuant to the preceding sentence. Whether or not the Indemnifying Party (as defined below) chooses to defend or prosecute any Third-Party Claim, Infringement Claim or Environmental Claim, as defined in Section 9.5, both parties hereto shall cooperate in the defense or prosecution thereof and shall furnish such records, information and testimony, and attend such conferences, discovery proceedings, hearings, trials and appeals, as may be reasonably requested in connection therewith or as provided in Section 5.1.

(f) The amount of the Indemnifying Party's liability under this Agreement shall be determined taking into account any applicable insurance proceeds actually received by the Indemnified Party. The indemnification obligations of each party hereto under this Article 9 shall inure to the benefit of the directors, officers and Affiliates of the other party hereto on the same terms as are applicable to such other party.

(g) Seller's liability for all claims under Section 9.3(a) shall be subject to the following limitations: (i) Seller shall have no liability for such claims until the aggregate amount of the Losses incurred shall exceed $1,500,000, in which case Seller shall be liable only for the portion of the Losses exceeding $1,500,000, and (ii) Seller's aggregate liability for all such claims shall not exceed $15,000,000. Buyer may not make a claim for indemnification under Section 9.3(a) for breach by Seller of a particular representation or warranty after the expiration of the survival period specified in Section 9.2 applicable to such representation or warranty. To the extent any Losses with respect to which Buyer is entitled to indemnification under this Article 9 result from, arise out of or relate to any Excluded Liability, Buyer shall be entitled to be indemnified from and against the entirety of such Losses pursuant to Section 9.1(c)(i) notwithstanding the fact the matter giving rise to such Losses may also constitute a breach of Seller's representations and warranties contained in this Agreement.

(h) The indemnification provided in this Article 9 shall be the sole and exclusive remedy after the Closing Date for damages available to the parties to this Agreement for breach of any of the terms, conditions, representations or warranties contained herein or any right, claim or action arising from the transactions contemplated by this Agreement. Without limiting the generality of the foregoing, Buyer and Seller expressly waive, release and agree not to make any claim against the other or their Affiliates, except for indemnification claims made pursuant to this Article 9, for the recovery of any cost or damages, whether directly or by

way of contribution, or for any other relief whatsoever for environmental matters under Environmental Laws, whether known or unknown, foreseen or unforeseen, now existing or applicable or hereinafter enacted or applicable, providing for any right of recovery relating to or arising out of the Principal Premises, the operation or conduct of the Business, or the Release, threat of Release or presence of Hazardous Substances.

(i) Notwithstanding anything contained in this Agreement to the contrary, no party shall be liable to the other party for indirect, special, punitive or consequential loss or damage (including any loss of revenue or profit) arising out of this Agreement; provided that the foregoing shall not limit any right to indemnification to which a party may otherwise be entitled hereunder in connection with any claim, action or proceeding asserted against such party by any Third Party which seeks to recover such indirect, special, punitive or consequential losses or damages. Both parties shall mitigate their damages.

**9.4 General Procedures for Indemnification**

(a) The procedures set forth in this Section 9.4 shall apply generally to indemnification sought pursuant to this Article 9; provided, however, that claims for indemnification for alleged breaches of Section 3.13 (Environmental Matters) shall be governed by Section 9.5 (Procedure for Environmental Indemnification).

(b) The Indemnified Party seeking indemnification under this Agreement shall promptly notify the party against whom indemnification is sought (the "Indemnifying Party") of the assertion of any claim, or the commencement of any action, suit or proceeding by any Third Party, in respect of which indemnity may be sought hereunder and will give the Indemnifying Party such information with respect thereto as the Indemnifying Party may reasonably request, but failure to give such notice shall not relieve the Indemnifying Party of any liability hereunder (unless the Indemnifying Party has suffered material prejudice by such failure). The Indemnifying Party shall have the right, but not the obligation, exercisable by written notice to the Indemnified Party within 30 days of receipt of notice from the Indemnified Party of the commencement of or assertion of any claim, action, suit or proceeding by a Third Party in respect of which indemnity may be sought hereunder (a "Third-Party Claim"), to assume the defense and control the settlement of such Third-Party Claim that (i) involves (and continues to involve) solely money damages or (ii) involves (and continues to involve) claims for both money damages and equitable relief

against the Indemnified Party that cannot be severed, where the claims for money damages are the primary claims asserted by the Third Party and the claims for equitable relief are incidental to the claims for money damages, and where the Indemnified Party reasonably determines (and continues to reasonably determine) that defense of the claim by the Indemnifying Party will not have a Material Adverse Effect on the Indemnified Party.

(c) The Indemnifying Party or the Indemnified Party, as the case may be, shall have the right to participate in (but not control), at its own expense, the defense of any Third-Party Claim that the other is defending, as provided in this Agreement; provided that if the Indemnified Party reasonably determines that the counsel selected by Indemnifying Party has a material conflict of interest in connection with its representation of the Indemnified Party, the Indemnified Party may at the expense of the Indemnifying Party select its own counsel to participate on its behalf together with the counsel selected by the Indemnifying Party in connection with the defense of such matter.

(d) The Indemnifying Party, if it has assumed the defense of any Third-Party Claim as provided in this Agreement, shall not consent to a settlement of, or the entry of any judgment arising from, any such Third-Party Claim without the Indemnified Party's prior written consent (which consent shall not be unreasonably withheld) unless such settlement or judgment relates solely to monetary damages to be paid in their entirety by the Indemnifying Party. The Indemnifying Party shall not, without the Indemnified Party's prior written consent, enter into any compromise or settlement that (i) commits the Indemnified Party to take, or to forbear to take, any action or (ii) does not provide for a complete release by such Third Party of the Indemnified Party. The Indemnified Party shall have the sole and exclusive right to settle any Third-Party Claim, on such terms and conditions as it deems reasonably appropriate, to the extent such Third-Party Claim involves equitable or other non-monetary relief against the Indemnified Party, and shall have the right to settle any Third-Party Claim involving money damages for which Seller has not assumed the defense pursuant to this Section 9.4 with the written consent of the Indemnifying Party, which consent shall not be unreasonably withheld or delayed.

**9.5 Procedures for Environmental Indemnification**

Buyer and Seller agree that in the event a claim for indemnification is made by Buyer based on a breach by Seller of the representation contained in Section 3.13

(Environmental Matters) relating to any Assumed Environmental Liability, in lieu of the procedures set forth in Section 9.4, the following procedures shall apply:

(a) Buyer, when seeking indemnification for a claim (an "Environmental Claim") subject to this Section 9.5, shall promptly notify Seller of the discovery or assertion of any Environmental Claim in respect of which indemnity may be sought hereunder and will give Seller such non-privileged information with respect thereto as Seller may reasonably request, but failure to give such notice shall not relieve Seller of any liability hereunder (except to the extent that Seller has suffered actual prejudice by such failure);

(b) Buyer shall have full control over any actions, including, without limitation, any Remedial Action, negotiation or litigation and settlement thereof, in connection with any such Environmental Claim, provided that:

(i) Buyer shall use its Best Efforts, in light of any potential injury to persons or property or disruptions in the normal operations of the Business that may result in connection with such Environmental Claim, to conduct all Remedial Actions or other actions proposed to be taken by Buyer in connection with investigation, remediation, defense or settlement of such Environmental Claim in an efficient and cost-effective manner consistent with sound environmental risk management practices;

(ii) Seller may participate in (but not control) the settlement or defense of an Environmental Claim through counsel chosen by Seller, provided that the fees and expenses of such counsel shall be borne by Seller; and

(iii) Seller and Buyer shall cooperate in connection with defending, remedying, compromising or settling an Environmental Claim, which cooperation shall include, but not be limited to (A) furnishing such non-privileged records, information and testimony, and attending such conferences, discovery proceedings, hearings, trials and appeals, as may be reasonably requested by Buyer and (B) providing such decisions, comments or information as may reasonably be requested by Buyer to avoid delay in the performance of the Remedial Action and in otherwise managing, settling or defending any Environmental Claim.

### 9.6 Dispute Resolution

(a) Prior to commencing any action, suit or proceeding in connection with the transactions contemplated by this Agreement, the parties shall first in good faith consult among appropriate officers of Buyer and Seller, which shall begin promptly after one party has delivered to the other a written request for consultation. At any time thereafter, either party may request in writing that the dispute be referred to appropriate Senior Executives of Buyer and Seller. Within 10 Business Days after such request, the Senior Executives (and not their designees) shall meet and attempt in good faith to resolve the dispute.

(b) Neither party shall file any action, suit or proceeding in connection with this Agreement until 20 Business Days after a request is made for Senior Executive meetings as provided for in Section 9.6(a).

(c) The provisions of this Section 9.6 shall not apply in the case of any such action, suit or proceeding commenced prior to the Closing Date seeking specific enforcement of this Agreement.

## 10. Miscellaneous Provisions

### 10.1 Notices

All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given upon receipt if (i) mailed by certified or registered mail, return receipt requested, (ii) sent by Federal Express or other express carrier, fee prepaid, (iii) sent via facsimile with receipt confirmed, or (iv) delivered personally, addressed as follows or to such other address or addresses of which the respective party shall have notified the other.

(a) If to Seller, to: Lucent Technologies Inc.
600-700 Mountain Avenue
Murray Hill, N.J. 07974-0636
Attn: Senior V.P. Corp. Development

With a copy (which shall not constitute notice) to:

Lucent Technologies Inc.
600-700 Mountain Avenue
Murray Hill, N.J. 07974-0636
Attn: V.P. Corporate and Securities Law

(b) If to Buyer, to:

General Dynamics Corporation
3190 Fairview Park Drive
Falls Church, Virginia 22042-4523
Attention: General Counsel

With a copy (which shall not constitute notice) to:

Jenner & Block
One IBM Plaza
Chicago, Illinois 60611
Attention: David A. Savner, Esq.

**10.2 Expenses**

Except as otherwise provided in this Agreement, each party to this Agreement will bear all the fees, costs and expenses that are incurred by it in connection with the transactions contemplated hereby, whether or not such transactions are consummated; provided, however, that each party shall bear such portion of the cost of any appraisal(s) performed pursuant to Section 5.3(c) as is specified therein.

**10.3 Entire Agreement; Modification**

The agreement of the parties, which is comprised of this Agreement, the Schedules and Exhibits hereto and the documents referred to herein, sets forth the entire agreement and understanding between the parties and supersedes any prior agreement or understanding, written or oral, relating to the subject matter of this Agreement. No amendment, supplement, modification or waiver of this Agreement shall be binding unless executed in writing by the party to be bound thereby, and in accordance with Section 11.4.

**10.4 Assignment; Binding Effect; Severability**

This Agreement may not be assigned by either party hereto without the other party's written consent; provided that this Agreement may be assigned by Buyer to any of its wholly-owned subsidiaries upon giving written notice of such

assignment to Seller. No assignment by Buyer pursuant to the preceding sentence shall reduce, limit or discharge in any respect any of Buyer's obligations or liabilities to Seller under this Agreement. This Agreement shall be binding upon and inure to the benefit of and be enforceable by the successors, legal representatives and permitted assigns of each party hereto. The provisions of this Agreement are severable, and in the event that any one or more provisions are deemed illegal or unenforceable the remaining provisions shall remain in full force and effect unless the deletion of such provision shall cause this Agreement to become materially adverse to either party, in which event the parties shall use Best Efforts to arrive at an accommodation that best preserves for the parties the benefits and obligations of the offending provision.

**10.5 Governing Law**

This Agreement shall be governed by and construed and enforced in accordance with the laws of the state of New York without regard to its principles of conflicts of law.

**10.6 Execution in Counterparts**

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**10.7 Public Announcement**

Neither Seller nor Buyer shall prior to the Closing Date, without the approval of the other party, make any press release or other announcement concerning the existence of this Agreement or the terms of the transactions contemplated by this Agreement, except as and to the extent that any such party shall be so obligated by law or by the rules of any securities exchange upon which such party's securities may be listed or otherwise reasonably necessary to consummate the transactions contemplated by this Agreement, in which case the other party shall be advised and the parties shall use their Best Efforts to cause a mutually agreeable release or announcement to be issued; provided, however, that the foregoing shall not preclude communications or disclosures necessary to comply with accounting, Securities and Exchange Commission and securities exchange disclosure obligations.

**10.8 No Third-Party Beneficiaries, Etc.**

(a) Nothing in this Agreement, express or implied, is intended to or shall (i) confer on any Person other than

the parties hereto and their respective successors or assigns any rights (including Third-Party beneficiary rights), remedies, obligations or liabilities under or by reason of this Agreement or (ii) constitute the parties hereto as partners or as participants in a joint venture. This Agreement shall not provide Third Parties with any remedy, claim, liability, reimbursement, cause of action or other right in excess of those existing without reference to the terms of this Agreement. Nothing in this Agreement shall be construed as giving to any Business Employee, or any other individual, any right or entitlement under any Benefit Plan, policy or procedure maintained by Seller, except as expressly provided in such Benefit Plan, policy or procedure. No Third Party shall have any rights under Section 502, 503 or 504 of ERISA or any regulations thereunder because of this Agreement that would not otherwise exist without reference to this Agreement. No Third Party shall have any right, independent of any right that exist irrespective of this Agreement, under or granted by this Agreement, to bring any suit at law or equity for any matter governed by or subject to the provisions of this Agreement.

(b) The Transferred Employees shall be deemed employees at will of Buyer and nothing expressed or implied herein shall obligate Buyer to provide continued employment to any Transferred Employee for a specified period of time following the Closing Date. Buyer shall be the sole judge of the number, identity and qualifications of employees necessary for the conduct of its business operations and, except as otherwise expressly provided in Section 5.5, the employment of the Transferred Employees by Buyer shall be on such terms and conditions as Buyer, in its sole discretion, may from time to time determine. Except as otherwise expressly provided in Section 5.5, nothing in this Agreement, any Benefit Plan or any plan or arrangement relating to any Post-Closing Benefit shall limit or restrict in any way the right of Seller or Buyer to modify, amend, terminate or establish employee benefit plans or arrangements in whole or in part at any time. Nothing in this Agreement shall be construed to require Buyer to provide any benefit to any current or former employee of Seller or any of its Affiliates other than the benefits to be provided to the Transferred Employees as described in this Agreement. Without limiting the generality of the foregoing, Buyer shall have no obligation to provide any pension or welfare benefit to any current retiree of Seller or any of its Affiliates. Buyer shall be obligated to provide hourly Transferred Employees with the benefits described in this Section 5.5 only until the expiration of any collective bargaining agreements that require such benefits to be provided to such Transferred Employees.

## 11. Termination and Waiver

### 11.1 Termination

This Agreement may be terminated at any time prior to the Closing Date by:

(a) The mutual written consent of Buyer and Seller;

(b) Buyer or Seller if there shall be in effect a non-appealable order of a court of competent jurisdiction prohibiting the consummation of the transactions contemplated hereby.

(c) Buyer or Seller if the Closing shall not have occurred within six (6) months following the date hereof, provided that the terminating party is not otherwise in material default or breach of this Agreement.

### 11.2 Effect of Termination

In the event of the termination of this Agreement, this Agreement shall become void and have no effect, without any liability on the part of any party or its directors, officers or stockholders, except as provided in Article 6 and Sections 9.6 and 10.1 and except for any liability of any party whose breach of its obligations under this Agreement gave rise to such termination.

### 11.3 Waiver of Agreement

Any term or condition hereof may be waived at any time prior to the Closing Date by the party hereto which is entitled to the benefits thereof by action taken by its Board of Directors or its duly authorized officer or employee, whether before or after the action of such party; provided, however, that such action shall be evidenced by a written instrument duly executed on behalf of such party by its duly authorized officer or employee. The failure of either party to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision nor shall it in any way affect the validity of this Agreement or the right of such party thereafter to enforce each and every such provision. No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach.

### 11.4 Amendment of Agreement

This Agreement may be amended with respect to any provision contained herein at any time prior to, on or after