# Exhibit 13

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| LUCENT TECHNOLOGIES INC.<br>Plaintiff,<br>vs.<br>UNITED STATES,<br>Defendant. | Case No. 04-1511C<br>(Judge Braden) |

## DECLARATION OF THOMAS R. SUHER

I, Thomas R. Suher, declare as follows:

1. I am currently a consultant to Lucent Technologies Inc ("Lucent") advising and providing assistance in connection with its contracts and activities with the United States government (the "government"). I have held this position since April 2002. I was formerly a General Attorney for Lucent responsible for providing legal support for Lucent's business activities with the government and other activities in the commercial and international fields. I was in that position from the beginning of Lucent's operations in February 1996 to March 2002, during which time I was involved in the transaction described below. As a result of my responsibilities and experiences, I have personal knowledge of Lucent, its government contracts, the terms of the various documents relating to the transaction and the claims made by the government pursuant to Cost Accounting Standard ("CAS") 413, 48 C.F.R. § 9904.413.

2. I graduated from the University of North Carolina at Chapel Hill Law School in 1974 and am licensed to practice law in North Carolina and New York.

3. Lucent is a corporation organized and existing under the laws of the State of Delaware. In 1997, Lucent maintained a business organization known as Advanced Technology Systems ("ATS").

4. In approximately April of 1997, Lucent began distributing a Confidential Offering Memorandum (the "Offering Memorandum") to solicit interest for the purchase of some of the assets relating to Lucent's business with the government. The Offering Memorandum is attached to the Plaintiff's Appendix in Support of Motion for Summary Judgment ("Pl. App.") as Exhibit ("Ex.") 1, pp. P001-53. I am familiar with the Offering Memorandum because I participated in its review and preparation. The Offering Memorandum describes the ATS business offered for sale as of April 1997, including product lines, assets and liabilities. Ultimately, not all of the ATS product lines, assets and liabilities described in the Offering Memorandum were sold.

5. On August 20, 1997, Lucent and General Dynamics Corporation ("GD") entered into an "Agreement for the Purchase and Sale of Assets by and between Lucent Technologies Inc. as Seller and General Dynamics Corporation as Buyer" (the "Asset Purchase Agreement"). Pl. App., Ex. 2, pp. P054-191. I am familiar with the Asset Purchase Agreement because I was involved in its drafting, review and negotiation. Pursuant to the Asset Purchase Agreement, Lucent sold to GD certain assets and government contracts.

6. Based upon my involvement in the sale to GD and the negotiation of the Asset Purchase Agreement, I understood Lucent and GD intended that the Asset Purchase Agreement would provide for the sale of certain assets and operations of the Navy

Programs, Advanced Projects and Secure Communications organizations of ATS. It was not to provide for the sale or conveyance of all assets of ATS. The sale was not to include the programs and product lines of ATS defined as "Excluded Programs," which included Tactical Wireless (Government Wireless Programs), New Business Development and Land and Air Programs (Advanced Projects). The sale also was not to include other activities of ATS such as Utility Solutions and significant elements of the Research & Development group dedicated to ATS, along with the supporting organizations for such business activities. The sale also was not to include certain contracts and pending proposals of ATS, employees of ATS, intellectual property and real property used by ATS. I understand that Lucent did not transfer any of the programs and assets just described.

7. In connection with the sale of the assets to GD, Lucent and GD executed an Intellectual Property Agreement, dated October 1, 1997 (the "IP Agreement"). I am familiar with the IP Agreement because I was involved in most aspects of the asset sale transaction, including review of the terms of this agreement. Pl. App., Ex. 3, pp. P192-204. Based upon my involvement with this agreement, I understood that Lucent and GD intended that pursuant to the terms of the IP Agreement, Lucent would sell and GD would buy "a part of the Advanced Technologies [sic] Systems Division of Lucent." IP Agreement, ¶ 2 (Pl. App., Ex. 3, p. P193). In addition, pursuant to the terms of the IP Agreement, Lucent intended to assign to GD only 13 out of its entire patent portfolio of several thousand patents. Pl. App., Ex. 3, pp. P195-96. Lucent sold none of its "know-how" and software. With regard to the non-assigned patents, and ATS'

"know-how" and software, Lucent intended to grant to GD only a nonexclusive right to use certain of such intellectual property and only for certain purposes. Pl. App., Ex. 3, pp. P197-98. I understand that Lucent did not sell or assign to GD the exclusive rights to any of patents, "know-how" and software in which Lucent intended to retain rights. To my knowledge, Lucent intended to retain, and did, retain these rights in patents, "know-how" and software, in part, because it intended to use these rights in its ongoing and continuing business with customers, including specifically the government.

8. Pursuant to the Asset Purchase Agreement, Lucent and GD intended that Lucent would retain responsibility for, and not assign to GD, over a hundred CAS-covered contracts of the ATS business, including both substantially completed contracts and certain active contracts and proposals. The active contracts that, to my knowledge, Lucent intended to retain, and did retain, are identified in Table 1 below. Also listed in Table 1 below, under the heading "Proposals," is the proposal that ATS was in the process of working on as of September 30, 1997, that Lucent intended to retain and did retain and that resulted in the award of a contract shortly after that date. Table 1 accurately states the contract number, contract type, execution date, the applicability of CAS to each and the incurred costs in 1997 and 1998 for each of these contracts.

**Table 1: ATS Contracts and Proposals**

| Contract No. | Description | Type | Execution Date | CAS Covered | 1997 Incurred Costs | 1998 Incurred Costs |
|---|---|---|---|---|---|---|
| **Contracts** | | | | | | |
| DAAH0392C0054 | TAMP (included CLIN 0007) | CPFF | 4/1/92 | Yes | $1,107,700.87 | $1,017,726.53 |
| N0001992C0064 | Lithography Collimeter Dev. | CPFF | 7/23/92 | Yes | 194,058.77 | 168,484.01 |
| DAAB0797CS616 | Advanced Cellular | CPFF | 1/10/97 | Yes | 599,638.48 | 135,523.74 |
| 4358 | BTS-LL | CPFF | 2/18/97 | Yes | 996,537.57 | 1,209,400.02 |
| F3060297C0274 | Proactive Problem Avoidance | CPFF | 9/15/97 | Yes | 2,004.09 | 462,808.25 |
| CLASS0040 | Sapporo | CPFF | 7/14/97 | Yes | 31,682.41 | 554,371.55 |
| CLASS0310 | Flamingo | CPFF | 8/25/97 | Yes | 7,949.01 | 217,484.68 |
| 4369 | BTS-Reliability Study | CPFF | 9/19/97 | Yes | 9,912.90 | 3,495,962.41 |
| N0001497C2064 | Robust RF Tags | CPFF | 9/30/97 | Yes | * | 988,955.70 |
| **Proposals** | | | | | | |
| 3338 | BTS-DC | CPFF | 5/29/98 | Yes | * | 470,471.54 |
| | | | | Total | **$2,949,484.10** | **$8,721,188.43** |

9. With respect to the contracts that Lucent sold to GD, which are listed in Schedule 3.12(a) of the Asset Purchase Agreement, Lucent, GD and the government did not enter into a novation agreement regarding these contracts. Pl. App., Ex. 2, pp. P167-74.

Pursuant to 28 U.S.C. § 1746, I declare under penalty and perjury the above statements are true and correct. Executed this 28th day of July, 2005.

Thomas R. Suher

DN:32107898.5