# Exhibit 14

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| LUCENT TECHNOLOGIES INC.<br>Plaintiff,<br>vs.<br>UNITED STATES,<br>Defendant. | Case No. 04-1511C<br>(Judge Braden) |

## DECLARATION OF DEBRA B. PFAFF

I, Debra B. Pfaff, declare as follows:

1. I am currently the Government Solutions Chief Financial Officer for Lucent Technologies Inc ("Lucent"). I have held this position since approximately June 1999. In this position, I am responsible for the management of financial matters relating to Lucent's government business, including the government contract cost accounting, the forecasting and finalization of indirect rates, maintaining financial systems, billing and maintaining accounts receivable and accounts payable. I was formerly the Rates/Forecasting Manager & Project Manager for Lucent's Government Solutions business organization and the Controller for Lucent's businesses performing government contracts covered by the Cost Accounting Standards ("CAS"). In these positions, I was responsible for the management of contract cost accounting and audit-related liaison functions concerning Lucent's CAS-covered government business. I held these positions from 1990 until 1999. As a result of my experiences, I have personal knowledge of Lucent, its government contracts, accounting systems, pension plans, government cost

accounting practices (including practices relating to pension costs), the transaction involving the sale of certain assets of Advanced Technology Systems ("ATS") to General Dynamics Corporation ("GD") described below and the claims made by the government pursuant to CAS 413 (48 C.F.R. § 9904.413).

2. I have been employed with Lucent for approximately 25 years and have worked in the area of government accounting, pricing and finance for the last 18 of those years.

3. I have a degree in Business Management from Guilford College.

**Lucent Before the Sale of Assets**

4. Beginning in 1996 and continuing into 1997, Lucent maintained the ATS business organization. Prior to September 30, 1997, ATS was comprised of various assets, including, among others, contracts, employees, intellectual property and fixed assets (real and personal property). Prior to September 30, 1997, ATS was organized into several business and functional area groups, including, among others, Advanced Projects (Air and Land Systems), Government Wireless Programs (Tactical Wireless), Utility Solutions and New Business Development groups.

5. In my positions, it has been necessary that I and my staff have accurate information regarding, among other things, current and former employees and details of costs incurred under government contracts, including the hours and labor dollars employees have charged to these contracts This information includes accurate information regarding which employees are assigned to individual Lucent business operations because this determines, among other things, what labor and indirect costs

rates should be used for charging costs to contracts. Since 1996, Lucent has maintained an electronic record of this information in a database called Management Information Process and Systems ("MIPS"). I believe the information in MIPS is accurate for two reasons. First, Lucent relied upon the data in this system to develop government contract costs. And second, the government routinely audited the data in this system and accepted MIPS as part of Lucent's approved cost accounting system. Lucent used MIPS for government accounting purposes until 1999, at which time Lucent archived the data in that system and began using Cost Point accounting software.

6. John Landis, one of the members of my staff, created the spreadsheet entitled "*ATS Employees On Roll Before and After Sales to General Dynamics*"; *file: TS_LD_97_98.xls; worksheet tab: time_reporting_09_97_Org,* on or about July 22, 2005 (the "Personnel Spreadsheet"), using the electronic record of employee information maintained in MIPS by Lucent. The Personnel Spreadsheet is a printout of certain information captured by the MIPS database based upon the time reporting of ATS employees, as of September 28, 1997. The Personnel Spreadsheet is part of Plaintiff's Appendix in Support of Motion for Summary Judgment ("Pl. App.") as Exhibit ("Ex.") 6, pp. P207-23. The Personnel Spreadsheet accurately shows that, according to MIPS, ATS had 1047 employees, including 759 management personnel and an additional 288 non-managerial employees, charging time as of September 30, 1997. Pl. App., Ex. 6, p. P223.

7. Lucent maintains an electronic accounting record of its fixed assets in a system known as Facilities Management ("FACMAN"), which includes a record of the

fixed assets of ATS. By fixed assets, I mean tangible assets that are capitalized, including real property and equipment (such as computers). Lucent maintains FACMAN to collect information needed for tax, financial reporting and government contract cost accounting purposes. As a result, in my positions, I and my staff have relied upon FACMAN for purposes of preparing tax, financial reporting and government contract cost information. I believe the information in FACMAN is accurate because it is Lucent's only system for recording fixed assets and is relied upon by Lucent's managers in the ordinary course of business. The government also has the right to audit this system and has done so on several occasions. Lucent used the data from FACMAN to create the Fixed Assets Transferable Balance Sheet, dated October 16, 1997 (the "Balance Sheet"). Pl. App., Ex 7, p. P224. Lucent developed the Balance Sheet in October 1997 as part of its ongoing efforts to account properly for the sale to GD, efforts in which I participated. The Balance Sheet is an abstraction of the data from FACMAN because FACMAN is the only system maintained by Lucent that records the value of fixed assets. The Balance Sheet accurately shows that, as of September 30, 1997, the sum of the adjusted net book value of all the fixed assets relating to Lucent's government business, including the assets of the Government Wireless Programs, Utility Solutions and New Business Development, was approximately $18 million. Pl. App., Ex. 7, p. P224.

8. As of September 30, 1997, ATS occupied facilities in several locations, including facilities in Greensboro, North Carolina, Whippany, New Jersey and Columbia, Maryland.

9. On or about July 22, 2005, John Landis created a spreadsheet, entitled *1997 Incurred Cost for all ATS Contracts*, from the MIPS database that shows the number of government contracts of ATS as of September 30, 1997 (the "Contracts Spreadsheet"). Pl. App., Ex. 8, pp. P225-31. I have reviewed the Contracts Spreadsheet and believe that it accurately shows the government contracts that ATS was performing as of September 30, 1997. According to the Contracts Spreadsheet, as of September 30, 1997, ATS was working on approximately 360 government contracts ("active contracts"), of which approximately 140 were CAS-covered. In addition, ATS remained responsible for closing out approximately 250 government contracts that were completed as of September 30, 1997, but close-out had not occurred (the "completed contracts"). The active contracts included, among others, the cost-plus fixed fee ("CPFF") contracts listed in Table 1 below, under the heading "Contracts." Also listed in Table 1 below, under the heading "Proposals" are the proposals ATS was in the process of working on as of September 30, 1997, that resulted in the award of contracts shortly after that date. I am familiar with each of the contracts and proposals listed in Table 1 below because I was responsible for the accounting of the costs, for government contract purposes, for each one. Table 1 accurately states the contract number, contract type, execution date, the applicability of CAS to each of these contracts and proposals and the incurred cost relating to each contract in 1997 and 1998.

**Table 1: ATS Contracts and Proposals**

| Contract No. | Description | Type | Execution Date | CAS Covered | 1997 Incurred Costs | 1998 Incurred Costs |
|---|---|---|---|---|---|---|
| **Contracts** | | | | | | |
| DAAH0392C0054 | TAMP (included CLIN 0007) | CPFF | 4/1/92 | Yes | $1,107,700.87 | $1,017,726.53 |
| N0001992C0064 | Lithography Collimeter Dev. | CPFF | 7/23/92 | Yes | 194,058.77 | 168,484.01 |
| DAAB0797CS616 | Advanced Cellular | CPFF | 1/10/97 | Yes | 599,638.48 | 135,523.74 |
| 4358 | BTS-LL | CPFF | 2/18/97 | Yes | 996,537.57 | 1,209,400.02 |
| F3060297C0274 | Proactive Problem Avoidance | CPFF | 9/15/97 | Yes | 2,004.09 | 462,808.25 |
| CLASS0040 | Sapporo | CPFF | 7/14/97 | Yes | 31,682.41 | 554,371.55 |
| CLASS0310 | Flamingo | CPFF | 8/25/97 | Yes | 7,949.01 | 217,484.68 |
| 4369 | BTS-Reliability Study | CPFF | 9/19/97 | Yes | 9,912.90 | 3,495,962.41 |
| N0001497C2064 | Robust RF Tags | CPFF | 9/30/97 | Yes | * | 988,955.70 |
| **Proposals** | | | | | | |
| 3338 | BTS-DC | CPFF | 5/29/98 | Yes | * | 470,471.54 |
| | | | | Total | **$2,949,484.10** | **$8,721,188.43** |

10. As of September 30, 1997, Lucent allocated costs to its government contracts, including the CAS-covered contracts listed in Table 1, in accordance with its standard government contract cost accounting practices.

11. Beginning in 1996, Lucent created two defined-benefit pension plans for both active and inactive Lucent employees. These pension plans were: (a) the "Lucent Management Pension Plan" ("LMPP"); and (b) the "Lucent Pension Plan" ("LPP")). I am familiar with these plans because I was and remain responsible for the allocation of the costs of these plans to Lucent's government contracts. The employees of ATS participated in these plans beginning in 1996.

12. Since the formation of the LMPP and the LPP in 1996, Lucent has followed government contract cost accounting practices that measure pension costs using "composite" accounting, which measures a single, total cost for each of Lucent's pension plans, and then allocate each composite cost to segments participating in the respective plan based upon total segment payroll dollars. Total payroll dollars include salaries, wages and bonuses. Under these practices, each segment is to allocate any pension costs allocated to it to its contracts, which would include all CAS-covered contracts, such as those in Table 1, based upon segment payroll dollars through what is called the Security Accrual rate. The Security Accrual rate results from a cost pool that includes all fringe benefit costs, including pension costs, if any, and a cost base that includes total segment payroll dollars.

**<u>Lucent After the Sale of Assets</u>**

13. On August 20, 1997, Lucent and GD entered into an agreement for the purchase and sale of assets, pursuant to which Lucent sold certain assets of ATS to GD, including contracts and related employees, fixed assets and intellectual property. As a result of the sale, Lucent retained certain ATS contracts and related employees, fixed assets and intellectual property (the "retained assets"). The retained assets related to certain programs excluded from the sale (the "Excluded Programs)," which included Government Wireless Programs, New Business Development, and other activities of ATS such as Utility Solutions and significant elements of Advanced Projects and the Research & Development groups. Lucent also retained supporting organizations for such business

activities, including resources in the areas of finance, contracting, security and business operations.

14. The retained assets included, among others, the nine active government CAS-covered contracts being performed by ATS that are shown in Table 1 above. In addition, none of the "completed contracts" were sold to GD.

15. The retained assets also included over 230 employees who were working in the ATS business organization as of the sale, including over 160 managers and nearly 70 non-managerial employees, as accurately shown in the Personnel Spreadsheet. Pl. App., Ex. 6, p. P223.

16. I know from personal experience that the individuals listed on the *Advanced Technology Systems Leadership Quality Council* organizational chart, dated May 30, 1997 (the "ATS Organizational Chart"), comprised the ATS leadership team. Pl. App., Ex. 5, p. P206. Also, based on personal experience, several of the members of the ATS leadership team listed on the ATS Organizational Chart remained with Lucent after the sale of assets to GD, including, among others, Mike Geller and Mike Conrad.

17. The retained assets also included various fixed assets, including over $1,370,000 of assets relating to Government Wireless Programs, Utility Solutions, and the New Business Development groups, along with fixed assets from human resources, public relations and other groups, as accurately shown in the Balance Sheet. Pl. App., Ex. 7, p. P224.

18. The retained assets included a portion of the real property occupied by ATS prior to October 1, 1997.

19. Table 2 below shows an accurate representation of some of the additional CAS-covered contracts, including Time and Material ("T&M") contracts, performed using the retained assets after the sale to GD. Table 2 shows the same type of data shown in Table 1. This information was gathered from MIPS database and is accurate.

**Table 2: New CAS-Covered Contracts**

| Contract No. | Description | Type | Execution Date | CAS Covered | 1998 Incurred Costs |
|---|---|---|---|---|---|
| 9810348YXG | ELB Phase 1B | CPFF | 5/13/98 | Yes | 556,528.24 |
| MDA 90498CB266 | Flexible Routing System | T&M | 6/2/98 | Yes | 154,048.39 |
| MDA 90498CB641 | 672-1 | CPFF | 8/1/98 | Yes | 65,546.36 |
| 98A810600000 | Woodland | CPFF | 9/17/98 | Yes | 49,286.78 |
| | | | | Total | **825,409.77** |

20. On or about July 22, 2005, John Landis created a spreadsheet, entitled *1998 Incurred Cost For All Contracts*, from the MIPS database that shows the incurred costs for all of Lucent's active government contracts during 1998 (the "1998 Incurred Cost Spreadsheet"). Pl. App., Ex. 9, pp. P232-45. I have reviewed the 1998 Incurred Cost Spreadsheet and believe that it accurately shows Lucent's incurred costs for all of Lucent's government contracts in 1998. The 1998 Incurred Cost Spreadsheet accurately states the 1998 incurred costs for the contracts in Tables 1 and 2.

**The Continued Allocation of Pension Costs**

21. Since October 1, 1997, Lucent has accounted for costs of the LMPP and the LPP for government contract purposes in accordance with its established government contract accounting practices for pension costs described previously. That is, Lucent's

government contract cost accounting practices after September 30, 1997, continued to compute composite pension costs for each plan to allocate these composite pension costs to segments based upon payroll dollars. These practices also continued to require that any pension costs allocated to a segment be allocated to the segment's contracts, including the CAS-covered contracts in Tables 1 and 2, based upon the Security Accrual rate.

22. The LMPP and the LPP pension plans have been fully-funded since their formation in 1996 which means that the plans have not generated any costs. This has occurred because the assets of each plan have been sufficiently large to absorb the liabilities that have accrued each year under each plan for each plan participant because the participant was an employee of Lucent. Prior to October 1, 1997, plan participants included Lucent employees working on ATS CAS-covered contracts, including those in Table 1. Subsequent to September 30, 1997, plan participants of Lucent included employees within the retained assets, and other Lucent employees, working on the CAS-covered contracts in Tables 1 and 2, among other CAS-covered contracts. Thus, pursuant to the consistent application of the pension cost accounting practices that I have described in this declaration, CAS-covered contracts performed up through September 30, 1997, and those performed after that date, including the contracts in Table 1, have had no pension costs allocated to them, and, thus, have benefited from the consumption of pension plan assets to fund pension plan liabilities.

23. Lucent used the data in MIPS to develop a spreadsheet, entitled *ATS Employees Contract Charging in 1998 After Sale* (the "Time Charging Spreadsheet"), on

or about July 22, 2005. Pl. App., Ex. 10, pp. P246-48. The Time Charging Spreadsheet accurately shows, among other things, the hours of direct labor that each employee of Lucent worked relating to the contracts listed in Table 1 and Table 2 during 1998 and the total direct labor dollars charged by Lucent to these contracts for these direct labor hours. The Time Charging Spreadsheet accurately shows that many of the ATS employees that remained with Lucent continued to charge payroll costs to the contracts in Tables 1 and 2, after the sale of assets to GD. The total amount of direct labor dollars charged by employees to the contracts in Tables 1 and 2 during 1998 was approximately $1 million. Absent the fully-funded condition of Lucent's pension plan, these direct labor dollars charged to contracts would have resulted in the allocation of pension costs to these contracts. Thus, these contracts have benefited from the fully-funded condition of Lucent's pension plans.

Pursuant to 28 U.S.C. § 1746, I declare under penalty and perjury the above statements are true and correct. Executed this 28th day of July, 2005.

Debra B. Pfaff

Debra B. Pfaff

DN:32109015.6