# Exhibit 15

# Part 1 of 3

# DEFENSE CONTRACT AUDIT AGENCY

# AUDIT REPORT NO. 6201-2001K19200001

September 22, 2003

**PREPARED FOR:** Divisional Administrative Contracting Officer
Defense Contract Management Agency
DCMA Virginia - Greensboro Area Office
ATTN: Mr. J. Wesley Gilliam, DACO
2301 West Meadowview Drive, Suite 103
Greensboro, NC 27407-3704

**PREPARED BY:** Northern New Jersey Branch Office
Building 350 South
Picatinny Arsenal
Picatinny, NJ 07806-5000
Telephone No. (973) 724-4932
FAX No. (973) 724-2187
E-mail Address dcaa-fao6201@dcaa.mil

**SUBJECT:** Report on Noncompliance With Cost Accounting Standard 413 Lucent Technologies, Inc Sale of Advanced Technology Systems to General Dynamics Corporation

**CONTRACTOR:** Lucent Technologies, Inc.
600 Mountain Avenue
Murray Hill, NJ 07974

**REPORT RELEASE RESTRICTIONS:** See Page 13

**CONTENTS:**


| | Page |
|---|---|
| Subject of Audit | 1 |
| Executive Summary | 1 |
| Scope of Audit | 1 |
| Results of Audit | 2 |
| Contractor Organization and Systems | 11 |
| DCAA Personnel and Report Authorization | 12 |
| Audit Report Distribution and Restrictions | 13 |
| Appendixes | 14 |

## SUBJECT OF AUDIT

By performing government contracts covered by 48 C.F.R. Chapter 99, Lucent Technologies, Inc. (Lucent) asserts that its cost accounting practices comply with the CAS Board's rules, regulations, and standards. The purpose of the examination was to determine if the contractor has complied with the requirements of paragraph 50(c)(12) of CAS 413 – Adjustment and Allocation of Pension Cost and any applicable FAR Part 31 requirements in the transfer of pension assets, as a result of its sale of Advanced Technology Systems (ATS) to General Dynamics Corporation.

The contractor is responsible for compliance with the CAS and FAR requirements. Our responsibility is to express an opinion on compliance with those requirements based on our examination.

## EXECUTIVE SUMMARY

Our examination found that Lucent is in noncompliance with CAS 413.50(c)(12). Lucent did not allocate pension assets to General Dynamics in accordance with CAS 413.50(c)(5)(ii) as required by CAS 413.50(c)(12)(ii). As a result, only a portion of total assets pertaining to the closed segment were transferred to General Dynamics. Therefore, a CAS 413.50(c)(12) adjustment based on the pension assets remaining with Lucent is required. Lucent has not performed the required adjustment. As a result, Lucent is in noncompliance with CAS 413.50(c)(12) which requires a final accounting of all pension plan assets and liabilities attributable to the closed segment. Based on our estimated government share of the adjustment, the credit due the government is approximately $28,260,630.

Contractor delays in the submission of data have delayed the completion and issuance of this report. Recently provided contractor data has not been incorporated into this report (See Appendix 3, Page 24). There was not adequate time to analyze and verify that data and assure timely issuance of this report. The deadline for issuance of this report to the DACO was driven by the necessity to assert a Government claim for the amount of the CAS 413 adjustment on or before September 30, 2003, per FAR 33.206(b).

Because the contractor contested certain significant issues raised in our recommendations, we recommend that you invite a DCAA representative to attend the negotiation conference.

## SCOPE OF AUDIT

We limited our audit to an examination of the contractor's cost accounting practices related to the transfer of pension assets from Lucent to General Dynamics. We conducted our examination in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance about

whether the contractor has complied with the requirements referred to above. An examination includes:

- evaluating the contractor's internal controls, assessing control risk, and determining the extent of audit testing needed based on the control risk assessment;
- examining, on a test basis, evidence supporting the cost accounting practices; and
- assessing the actual cost accounting practices and compliance of those practices with the disclosed cost accounting practices and applicable requirements.

We evaluated the contractor's cost accounting practices using the applicable requirements contained in the:

- Federal Acquisition Regulation (FAR); and
- CAS Board rules, regulations and standards.

We consider the contractor's overall accounting system and related internal controls to be adequate for the accumulation and reporting of costs on government contracts. The scope of our examination reflects our assessment of control risk and includes audit tests designed to provide a reasonable basis for our opinion. Our examination does not provide a legal determination on Lucent's compliance with the specified requirements.

## RESULTS OF AUDIT

In our opinion, Lucent is in noncompliance with CAS 413.50(c)(12). As of the date of this report, the required adjustment of previously determined pension costs has not been made.

The audit conclusions incorporate the dollar effect of the recommendations contained in the Defense Contract Management Agency, Contractor Insurance / Pension Center, Government Technical Report No. 771103S11111070, dated September 15, 2003. The technical report is enclosed as Appendix 2.

Contractor delays in the submission of data have delayed the completion and issuance of this report. Recently provided contractor data has not been incorporated into this report (See Appendix 3). There was not adequate time to analyze and verify that data and assure timely issuance of this report. The deadline for issuance of this report to the DACO was driven by the necessity to assert a Government claim for the amount of the CAS 413 adjustment on or before September 30, 2003, per FAR 33.206(b).

This report is limited to the cited instance of noncompliance. Accordingly, we express no opinion on whether other practices are proper, approved, or agreed to for pricing proposals, accumulation costs, or reporting contractor performance data.

## STATEMENT OF CONDITIONS AND RECOMMENDATIONS

Our audit disclosed that the contractor's failure to comply with CAS 413.50(c)(12) has resulted or may result in increased costs paid for by the government. The area of noncompliance is stated below.

a. Condition:

On October 1, 1997, Lucent Technologies Inc. sold its Advanced Technology Systems segment to General Dynamics Corporation. It is our position that this sale constitutes a segment closure under Cost Accounting Standards (CAS). As defined in CAS 413.30(a)(20), segment closing means that a segment has (i) been sold or ownership has been otherwise transferred, (ii) discontinued operations, or (iii) discontinued doing or actively seeking Government business under contracts subject to this Standard. As of October 1, 1997, Lucent sold/transferred all of its remaining interest (ownership) in ATS. Under CAS 413.50(c)(12), Lucent is required to adjust previously determined pension costs for the segment being closed on October 1, 1997. CAS allows an exception to the requirement for an adjustment when a segment is closed. This provision, CAS 413.50(c)(12)(v), states that "If a segment is closed due to a sale or other transfer of ownership to a successor in interest in the contracts of the segment and all (emphasis added) of the pension plan assets and actuarial accrued liabilities pertaining to the closed segment are transferred, then no adjustment amount pursuant to this paragraph (c)(12) is required." Lucent did not allocate pension assets to General Dynamics in accordance with CAS 413.50(c)(5)(ii), as required by CAS 413.50(c)(12)(ii). Pension assets were transferred in accordance with the Agreement for the Purchase and Sale of Assets between Lucent Technologies, Inc., as Seller, and General Dynamics Corporation, as Buyer, dated August 26, 1997 (the Purchase/Sale Agreement); not in accordance with CAS 413. (Refer to Background Information section, Note 5, page 15).

Lucent provided the Actuarial Report, prepared by Actuarial Sciences Associates, Inc. (ASA), dated January 30, 1998, detailing the amount of pension plan assets to be transferred from the Lucent Technologies, Inc. Management Pension Plan and the Lucent Technologies Inc. Pension Plan to the corresponding qualified trusts of General Dynamics. The Actuarial Report states: "The transfer amounts determined as of the "Closing Date," October 1, 1997 are as follows in $ thousands:

| | |
|---|---|
| Lucent Technologies Inc. Management Pension Plan (LTMPP): | $ 68,591 |
| Lucent Technologies Inc. Pension Plan (LTPP): | 10,501" |

Further, the January 30, 1998 report stated that the transferred amounts, as of October 1, 1997, were determined for each employee that transferred to General Dynamics. There were no amounts transferred for inactive former ATS employees. The interest rate actuarial assumption utilized for this ATS divestiture was the Pension Benefit Guaranty Corporation (PBGC) annuity

rates for valuing single employee pension plans that terminate as of the closing date, October 1, 1997. The PBGC interest rates used to calculate the transfer amounts were 5.9% for the first 25 years beginning as of October 1, 1997 and 5% thereafter.

Lucent Technologies' October 9, 1998 letter to DCAA, states that "Historically funds were not contributed separately for Lucent but rather were contributed on a company-wide basis for each plan. Data were not readily available to allocate assets to Lucent Technologies Inc. on an historical basis." Since the contractor does not have data readily available, CAS 413.50(c)(12)(ii) requires that the allocation of plan assets to each segment be made in accordance with the requirements of CAS 413.50(c)(5)(ii). CAS 413.50(c)(5)(ii) states: "... Such allocation shall be based on the ratio of the actuarial accrued liability of the segment to the plan as a whole, determined in a manner consistent with the immediate gain actuarial cost method or methods used to compute pension cost...". The contractor is in noncompliance with CAS 413.50(c)(12)(ii), because it failed to follow the requirements of CAS 413.50(c)(5)(ii) in allocating pension assets to its ATS segment.

Since Lucent did not allocate pension plan assets to the closed segment in accordance with CAS 413.50(c)(5)(ii), only a portion of the assets pertaining to the closed segment were transferred to General Dynamics. Therefore, a CAS 413.50(c)(12) adjustment based on the pension assets remaining with Lucent is required. Lucent has not performed the required adjustment. As a result, Lucent is in noncompliance with CAS 413.50(c)(12) which requires a final accounting of all pension plan assets and liabilities attributable to ATS.

b. <u>Significance</u>:

Lucent has provided actuarial data to us to estimate the segment closing adjustment based on pension plan assets and liabilities remaining with Lucent attributable to ATS active employees who transferred to General Dynamics, in accordance with CAS 413.50(c)(12). However, Lucent and its actuary have failed to provide similar actuarial data for the inactive portion of ATS. The Defense Contract Management Agency, CIPR Center, has provided an estimate reflecting the pension plan assets and liabilities attributable to the inactive portion of ATS (See Appendix 2, Exhibit 2). The following is DCAA's Estimated Segment Closing Adjustment under CAS 413.50(c)(12):

STEP A. DCAA COMPUTATION OF EXCESS ASSETS RETAINED BY LUCENT TECHNOLOGIES, INC. PENSION PLAN ASSETS FOR ACTIVE ATS EMPLOYEES TRANSFERRED TO GD

| | Lucent Pension Plan | Lucent Management Pension Plan |
|---|---|---|
| 1. PBO Liability for all Active ATS Employees Transferred to GD as of 10/1/97 | $ 8,500,000 | $ 58,900,000 |
| 2. Total PBO Liability of all (Active & Inactive) Lucent Participants as of 10/1/97 | $ 10,555,800,000 | $ 12,310,400,000 |
| 3. Pro-Rata share of Liability for Active ATS Employees = (1÷2) | .08052445% | .47845724% |
| 4. Market Value of Assets of Lucent Technologies Inc. Pension Plans as of 10/1/97 | $ 18,266,900,000 | $ 17,576,100,000 |
| 5. Asset Allocation of Sold Segment (Lucent ATS to GD) for Active ATS Employees as of 10/1/1997 = (3 x 4) | $ 14,709,321 | $ 84,094,123 |
| 6. Assets Transferred to GD for Active ATS Employees | $ 10,501,000 | $ 68,591,000 |
| 7. ATS Active Employee Assets Remaining with Lucent (5 – 6) | $ 4,208,321 | $ 15,503,123 |

STEP B. DCMA ESTIMATE OF EXCESS ASSETS RETAINED BY LUCENT TECHNOLOGIES, INC. PENSION PLAN ASSETS FOR INACTIVE ATS EMPLOYEES NOT TRANSFERRED TO GD

| | Lucent Pension Plan | Lucent Management Pension Plan |
|---|---|---|
| 1. Estimated Market Value of Assets Remaining in Lucent Technologies, Inc. Pension Plans for Inactive ATS Employees as of 10/1/1997 | $ 4,200,000 | $ 15,500,000 |
| 2. Estimated Actuarial Accrued Liability Remaining in Lucent Technologies, Inc Pension Plans for Inactive ATS Employees as of 10/1/1997 | $ 1,500,000 | $ 6,300,000 |
| 3. Excess Assets Remaining in Lucent Technologies, Inc. Pension Plans for Inactive ATS Employees as of 10/1/1997 = (1-2) | $ 2,700,000 | $ 9,200,000 |

STEP C. DCAA ESTIMATED COMPUTATION OF SEGMENT CLOSING ADJUSTMENT BASED ON PENSION PLAN ASSETS REMAINING WITH LUCENT TECHNOLOGIES, INC. PENSION PLANS AS OF 10/1/97

| | Lucent Pension Plan | Lucent Management Pension Plan | Total Lucent Pension Plans |
|---|---|---|---|
| 1. Excess Pension Plan Assets Remaining in Lucent Technologies Inc. for ATS Employees That Transferred to General Dynamics (See STEP A, above | $ 4,208,321 | $ 15,503,123 | $ 19,711,444 |
| 2. Excess Assets Remaining in Lucent Technologies, Inc. Pension Plans for Inactive ATS Employees (See STEP B, above) | $ 2,700,000 | $ 9,200,000 | $ 11,900,000 |
| 3. Total ATS Excess Assets Remaining in Lucent Technologies, Inc. Pension Plans = (1 + 2) | $ 6,908,321 | $ 24,703,123 | $ 31,611,444 |
| 4. Estimated Government Participation ① | 89.4% | 89.4% | 89.4% |
| 5. Estimated Cost Impact To The Government | $ 6,176,039 | $ 22,084,591 | $ 28,260,630 |

① Data/information identifying pension cost allocated to all CAS contracts and subcontracts for years representative of government participation in the pension plans was not available. We utilized the Lucent's FY 1997 government activity percentage of 89.4% as representative of the government's historical participation in contributions to the pension plans.

c. Recommendation:

We recommend that the cognizant Federal agency official (the Divisional Administrative Contracting Officer within DoD) find Lucent Technologies, Inc. in noncompliance with CAS 413. The contractor is responsible, as required by the CAS administration clause in FAR 52.230-6, to submit to the cognizant Federal agency official a general dollar magnitude submission for any noncompliance with CAS. Due to the fact that Lucent Technologies, Inc. has limited remaining CAS covered contacts, we recommend that the contractor issue a check to the United States Treasury in settlement of any CAS 413 adjustment due the Government, within thirty (30) days of settlement by negotiation or final adjudication through exhaustion of appellate review.

d. Contractor Reaction:

We discussed the results of our examination with contractor representative Ms. Debbie Pfaff, Controller, in an exit conference held on July 31, 2003 and on September 8, 2003. We provided a draft copy of our estimated segment closing adjustment based on pension plan assets remaining with Lucent Technologies, Inc. as of October 1, 1997. The following comments were provided by Ms. Angel Marshall, Lucent Financial Manager and Audit Liaison in a letter dated September 9, 2003 (See Appendix 3, Page 24).

> "In an exit audit discussion of July 31, 2003, relating to the referenced subject, the DCAA provided to Lucent Technologies a preliminary computation of a CAS 413.50 ©12 adjustment and requested Lucent's response or comments thereto. While Lucent does not concede that there is a basis for such an adjustment in respect of this transaction or that the proposed methodology utilized by the DCAA is the correct approach and reserves its right to challenge those issues, Lucent is providing its comments to the proposed computations in the attachments hereto.
>
> Specifically, Lucent has reviewed data relating to the final true-up of the asset transfers to GD and that data is presented for both the LTPP and the LTMPP in the attachments hereto. The comparison with the data provided in the DCAA computations submitted in the exit conference is also included. In addition, Lucent presents its calculations on Government participation and Government share. The calculation of Government share is based on a review of 1997 incurrences which is, we understand, the method utilized by DCAA. The calculation follows the Teledyne methodology. The attachments also summarize the methodology used by Lucent. The underlying data may be reviewed by contacting Angel Marshall at the Guilford Center.
>
> While this was the primary item for which contractor input was requested, Lucent also wishes to bring the following to the attention of the Government. In your phone conversation of September 8, 2003 with Debra Pfaff and Tom Suher, representing the contractor, the Government for the first time provided proposed computations relating to excess assets for inactive ATS employees. Lucent does not agree that this is an appropriate subject for a 413 adjustment. The subject transaction with GD did not involve the transfer of inactive personnel. That is, there were no liabilities or assets transferred in respect of this population. Lucent continues to be fully responsible to discharge any pension liabilities in respect of these personnel and continues to have Government contracts for which the Government will benefit from such a situation. This situation is unlike the AT&T-Lucent divestiture where the liabilities for inactive personnel were transferred to Lucent and the Government reviewed the adequacy of the transfer of assets in respect of such transferred liabilities. In this case, very simply, there is no transfer of liabilities, the contractor continues to have Government contracts (indeed a

growing base) as it has consistently since the referenced sale took place. As such, there is no segment closure with respect to which an adjustment is warranted. ~~Indeed, the contractor~~ is aware of no case or legal precedent for effecting a CAS 413 adjustment for a population that was not the subject of a transfer where the contractor continues to operate the segment purportedly related to these inactive personnel.

On the broader subject mentioned above as to the appropriateness of any CAS 413 adjustment in respect of the subject transaction, Lucent provides the following position. First, there was no segment closure in this case. Lucent did not in the referenced transaction with GD transfer the entire ATS segment. It retained certain contracts and assets of ATS which have continued to operate (and grow) to this day. Second, the basis for the Government's adjustment of pension cost is flawed. During the period from 1984 through 1997, Lucent and AT&T charged approximately $17M in pension costs in its security accruals rates to Government contracts and since 1990, only $3M in total. This minimal participation by the Government in the contribution to pension costs does not provide a basis for the Government to now contend that an adjustment in the tens of millions of dollars is warranted."

e. <u>Auditor Response:</u>

Our response to the contractor's comments, dated September 9, 2003, is as follows:

1. The contractor has presented calculations based on the methodology used in the Teledyne decision by the Federal Circuit, dated January 23, 2003. Government Response: General Motors, a plaintiff in the case, has filed a petition with the U.S. Supreme Court to appeal the Federal Circuit's decision. The government did not file a cross petition. However, the government can file an objection to GM's petition by the filing due date of October 2, 2003. Therefore, it would be premature to offer an auditor comment on the contractor's interpretation of the Teledyne decision while the decision is still pending.

2. The contractor states that September 8, 2003 was the first time the government provided computations relating to excess assets for inactive ATS employees. As stated above, Lucent and its actuary failed to provide actuarial data for the inactive portion of ATS. We would like to point out that the required actuarial data necessary to compute the excess assets for the inactive portion of the ATS segment was requested from Lucent on December 20, 2000. In addition, there have been numerous discussions between the government, Lucent and its actuary throughout this audit to obtain the required data. At our initial exit conference on July 31, 2003, we again informed the contractor that this requested data still had not been provided. Therefore, the government had no other alternative but to estimate the pension plan assets and liabilities attributable to the inactive portion of ATS. The Defense Contract Management Agency, CIPR

Center, was requested and provided an estimate reflecting the pension plan assets and liabilities attributable to the inactive portion of ATS (See Appendix 2, Exhibit 2 for this estimate).

3. Lucent claims that no CAS 413 adjustment is warranted for inactive ATS employees since the subject transaction with GD did not involve the transfer of inactive personnel. In addition, Lucent contends that they continue to be fully responsible to discharge any pension liabilities with respect to these personnel and that Lucent continues to have government contracts for which the government will benefit from such a situation. Government Response: It has been Lucent's cost accounting practice not to account for inactive employees separately, therefore all inactive ATS employees should be included in any segment closing adjustment. CAS 413.50(c)(9) states that "Contractors who separately calculate the pension cost of one or more segments may calculate such cost either for all pension plan participants assignable to the segment(s) or for only active participants of the segment(s)." Under this provision, contractors may create a separate segment for inactive participants when pension costs are separately calculated for one or more segments (emphasis added). However, Lucent did not establish a segment to separately calculate pension costs for its inactive participants. Therefore, since Lucent elected to retain the liability for the inactive ATS employees, pension assets related to their actuarial liability should be retained. Further, any excess pension assets attributable to ATS participants that retired and/or terminated would remain with the ATS segment (the segment which generated the excess assets) and should be included in the segment closing adjustment calculation.

4. The contractor contends that no segment closure took place because Lucent retained certain contracts and assets of ATS. Government Response: We acknowledge the fact there were certain contracts that were not part of the Purchase/Sale Agreement between Lucent and GD. The predominance of ATS' government work was sold to GD, while all active Government contract work was transferred to GD and Lucent. Lucent retained the old SPAWAR and NAVSEA contracts, which for the most part, have been completed, but have not been closed. Paragraph (12) of the preamble to Standard 413 describes, as a general rule, that the Standard being promulgated is based on the concept that material actuarial gains and losses applicable to a segment will be taken into account in future cost accounting periods in determining the costs for the segment. However, the Board recognized that a problem arises when a segment is closed because there are no (lack of) future periods in which "to adjust previously determined pension costs applicable to that segment." Therefore, because of this lack, "a means must be developed to provide a basis for adjusting such costs." Further, the Board noted "**that the provisions of this section are appropriate whenever a segment performing a material amount of Government business is closed, irrespective of whether the closing is caused by the completion of a contract or an organizational change, or whether the closing results in a complete or partial termination of the plan**" (emphasis added). The Board recognized that segment closing adjustments are appropriate in situations when material amounts are transferred. This is precisely the case in Lucent's sale of its ATS business to GD. Therefore, as required under CAS 413.50(c)(12), Lucent is required to adjust previously determined pension costs for the ATS segment being closed on October 1, 1997.

5. The contractor contends, in its September 9, 2003 letter (See Appendix 3), that minimal participation by the Government in the contribution to pension costs during the period 1984 through 1997 does not provide a basis for the Government to contend that an adjustment in the tens of millions of dollars is warranted. Government Response: The contractor did not provided any data to support its' contention. There was not adequate time to review their contention through other auditing techniques and assure timely issuance of this report. The deadline for issuance of this report to the DACO was driven by the necessity to assert a Government claim for the amount of the CAS 413 adjustment on or before September 30, 2003, per FAR 33.206(b).