# Exhibit 15

# Part 2 of 3

# CONTRACTOR ORGANIZATION AND SYSTEMS

## 1. Organization.

Lucent Technologies, Inc. is a new corporation which was formed from the split up of AT&T Corporation announced in September 1995. Lucent Technologies Inc. was incorporated in Delaware in November 1995. Prior to 1 February 1996, AT&T Corporation ("AT&T") conducted Lucent's business through various divisions and subsidiaries. AT&T began executing its decision to separate Lucent into a stand-alone company by transferring to Lucent the applicable assets and liabilities on 1 February 1996. A total separation of the two companies was completed on 30 September 1996 by AT&T's distribution of its shares in Lucent to the AT&T shareholders. Lucent's first fiscal year, FY 1996, was a 9 month transition year which ended 9/30/96.

Lucent is one of the world's leading designers, developers and manufacturers of telecommunications systems, software and products. It is a global market leader in the sale of public telecommunications systems, and is a supplier of systems or software to most of the world's largest network operators. Lucent is also a global market leader in the sale of business communications systems and in the sale of microelectronic components for communications applications to manufacturers of communications systems and computers. Further, Lucent is the largest supplier in the United States of telecommunications products for consumers. In addition, it has provided engineering, installation, maintenance or operations support services to over 250 network operators in 75 countries. Lucent's research and development activities are conducted through Bell Laboratories ("Bell Labs"), which consists of approximately three-quarters of the total resources of AT&T's former Bell Laboratories division, one of the world's foremost industrial research and development organizations.

## 2. Systems

The accounting system of Lucent Technologies Inc. is the same accounting system established and defined in AT&T Policy Letter PO95-01-002, issued 3 January 1995. The system is called the Financial Management Language (FML) and is now used by all Lucent Technologies Inc. business units, divisions, and groups. The standards for FML implementation consist of two basic families of information: accounting and managerial.

Audit Report No. 6201-2001K19200001

## DCAA PERSONNEL

| | Telephone No. |
|---|---|
| Primary contacts regarding this audit: | |
| Thomas Caruso, Auditor | (914) 945-3412 |
| Margaret Casola, Supervisory Auditor | (973)724-2972 |
| Other contacts regarding this audit report: | |
| Peter W. Kornutick, Branch Manager | (973) 724-4932 |
| Thomas J. DiSanto, Regional Audit Manager | (215) 597-5415 |

| | FAX No. |
|---|---|
| Northern New Jersey Branch Office | (973) 724-2187 |

| | E-mail Address |
|---|---|
| Northern New Jersey Branch Office | dcaa-fao6201@dcaa.mil |

General information on audit matters is available at http://www.dcaa.mil/.

**AUDIT REPORT AUTHORIZED BY:**

Peter W. Kornutick
Branch Manager
Northern New Jersey Branch Office

Audit Report No. 6201-2001K19200001

## AUDIT REPORT DISTRIBUTION AND RESTRICTIONS

### DISTRIBUTION

| | E-mail Address |
|---|---|
| Divisional Administrative Contracting Officer<br>Defense Contract Management Agency<br>DCMA Virginia - Greensboro Area Office<br>ATTN: Mr. J. Wesley Gilliam, DACO<br>2301 West Meadowview Drive, Suite 103<br>Greensboro, NC 27407-3704 | Wes.Gilliam@dcma.mil |
| Contractor Insurance / Pension Center<br>Defense Contract Management Agency<br>DCMCC-E Overhead Center<br>ATTN: Mr. George Matray<br>207 New York Avenue<br>Staten Island, NY 10305-5013 | George.matray@dcma.mil |
| Lucent Technologies, Inc.<br>600 Mountain Avenue<br>Murray Hill, NJ 07974<br>(Copy furnished thru CFAO)<br>ATTN: Ms. Debbie Pfaff | |
| Mr. Thomas DiSanto, RAMC-6 | tdisanto@dcaa.mil |
| Mr. Thomas O'Donnell, RST-6 | todonnell@dcaa.mil |

### RESTRICTIONS

1. Information contained in this audit report may be proprietary. It is not practical to identify during the conduct of the audit those elements of the data which are proprietary. Make proprietary determinations in the event of an external request for access. Consider the restrictions of 18 U.S.C. 1905 before releasing this information to the public.

2. Under the provisions of Title 32, Code of Federal Regulations, Part 290.7(b), DCAA will refer any Freedom of Information Act requests for audit reports received to the cognizant contracting agency for determination as to releasability and a direct response to the requestor.

3. Do not use the information contained in this audit report for purposes other than action on the subject of this audit without first discussing its applicability with the auditor.

APPENDIX 1

## BACKGROUND INFORMATION

1. On September 30, 1996, Lucent Technologies, Inc. was created through an AT&T Corporation spin-off. Prior to the spin-off, AT&T Corporation maintained two qualified Defined Benefit pension plans, the AT&T Management Pension Plan (ATTMPP) and the AT&T Pension Plan (ATTPP). AT&T computed a composite pension cost for all participants within the ATTMPP and ATTPP plans. AT&T allocated the respective ATTMPP and ATTPP pension costs to its segments on a base consisting of payroll dollars. After the spin-off, there were four qualified Defined Benefit pension plans, the original two AT&T plans and the newly established Lucent plans; the Lucent Management Pension Plan (LTMPP) and the Lucent Pension Plan (LTPP). The two Lucent Technologies, Inc. plans were identical in structure to the original AT&T plans. The appropriate plan participants were spun-off into their respective Lucent plans. All categories of participants were transferred (active and inactive) from the AT&T plans to the Lucent plans.

2. A Novation Agreement was entered into on May 5, 1997 between the AT&T Corporation ("Transferor"), a corporation duly organized and existing under the laws of the State of New York with its principal office in Basking Ridge, New Jersey; Lucent Technologies Inc. ("Transferee"), a corporation duly organized and existing under laws of the State of Delaware with its principal office in Murray Hill, New Jersey: and the United States of America ("Government").

3. On August 20, 1997, Lucent Technologies, Inc. reached an agreement to sell its Advanced Technology Systems to General Dynamics (GD). The sale was effective October 1, 1997. For the most part, all active Government contract work was transferred to GD. Lucent retained the old SPAWAR and NAVSEA contracts. For the most part, these contracts have been productively completed, but have not been closed. During 1999, Lucent approached NAVSEA and SPAWAR to close out a significant portion of these contracts (approximately $2.0 billion for 43 SPAWAR and 21 NAVSEA contracts) novated to Lucent from AT&T. Any SPAWAR or NAVSEA contracts that were closed, were subject to the Memorandum of Agreement (MOA) dated September 24, 1999 which we subsequently incorporated into each contract by modification.

4. On January 30, 1998, General Dynamics Advanced Technology Systems, Inc. submitted a proposed Novation Agreement to recognize the transfer of contracts made pursuant to the sale by Lucent Technologies, Inc. of its Advanced Technology Systems business to General Dynamics Corporation that took place on October 1, 1997. To date, these contracts have not been novated to GD and Lucent Technologies, Inc. remains the responsible party. General Dynamics refused

to accept liability for any possible CAS 413 adjustment, as a consequence the Government, Lucent and General Dynamics were unable to execute a novation agreement.

5. The Agreement for the Purchase and Sale of Assets between Lucent Technologies Inc., as Seller, and General Dynamics Corporation, as Buyer, dated August 26, 1997 (the Purchase/Sale Agreement) set forth the methodology to transfer assets from the Lucent pension plans to the General Dynamics trusts. The allocation of pension plan assets to the corresponding pension plans of General Dynamics Corporation plans was specified in Section 5.5(i) and (j) of the Purchase/Sale Agreement, as follows:

> Section 5.5(i) – "In connection with the performance of its obligations under Section 5.5(g), the Buyer shall, on or prior to a date (the "First Transfer Date") to be mutually agreed by the Buyer and the Seller but in no event ,ore than 30 days after the Closing Date, establish a trust (the "Management Trust") for the purpose of holding the pension plan assets of the Post-Closing Benefits management pension plan and shall establish a further trust (the "Represented Trust") for the purpose of holding the pension plan assets of the Post-Closing Benefits pension plan for represented employees. On the First Transfer Date, Seller (i) will transfer or cause to be transferred from the Lucent Technologies Inc. Management Pension Plan (the "Lucent Management Plan") to the Management Trust cash or, to the extent agreed by the parties, marketable securities in an amount equal to 90% of the Pension Transfer Amount for the Transferred Employees who are, immediately prior to Closing, management employees of the Seller, which obligation and associated liability shall be assumed by the Management Trust and the Post-Closing Benefits management pension plan of the Buyer, and (ii) will transfer or cause to be transferred from the Lucent Technologies Inc. Pension Plan (the "Lucent Occupational Plan") to the Represented Trust cash or, to the extent agreed by the parties, marketable securities in an amount equal to 90% of the Pension Transfer Amount for the Transferred Employees who are, immediately prior to Closing, represented employees of the Seller, which obligation and associated liability shall be assumed by the Represented Trust and the Post-Closing Benefits pension plan of the Buyer for represented employees, in each case plus interest on the amounts transferred from the Closing Date through the First Transfer Date at a rate equal to 8% per annum. As of the date six months after the Closing Date (the "Second Transfer Date"), Seller shall transfer from the Lucent Management Plan and the Lucent Occupational Plan to the Management Trust and the represented Trust, respectively, cash or marketable securities in an amount equal to remaining balance of the Pension Transfer Amount, plus interest on the amounts transferred from the Closing Date through the Second Transfer Date at a rate equal to 8% per annum. The amount to be transferred as of the Second Transfer Date shall be reduced by the aggregate amount of any pension plan benefit payments made by Seller on Buyer's behalf prior to the Second Transfer Date. Subject to the completion of the forgoing asset transfers, as of the Closing Date, all of the obligations and associated liabilities of the Lucent Management Plan and the Lucent Occupational Plan relating to the Transferred Employees shall be assumed in full by the Management Trust, the Post-Closing Benefits

pension plans. For purposes of this Section 5.5(i), any Dedicated Business Employee who becomes an employee of Buyer within six months after the Closing Date shall be deemed to be a Transferred Employee."

Section 5.5(j) – "For purposes of this Section5.5, "Pension Transfer Amount" shall mean the minimum required transfer amount determined in accordance with the terms of the Seller's pension plans (including the changes described in Schedule 3.11(d)) and the requirements of Section414(l) of the Code, utilizing the "safe harbor" rates and assumptions set forth in the regulations promulgated under Section 4044 of ERISA as of the Closing Date, except that the termination and retirement rate assumptions utilized for purposes of this Section 5.5(j) shall be the assumptions used by the Seller as reported on the Attachments to Schedule B to Form 5500 for the plan year ending December 31, 1996."

APPENDIX 2

# GOVERNMENT TECHNICAL REPORT

## SPECIAL CONTRACTOR INSURANCE / PENSION REVIEW
## CAS 413 Adjustment

**Lucent Technologies ATS Segment**

BY: CONTRACTOR INSURANCE / PENSION CENTER
DEFENSE CONTRACT MANAGEMENT AGENCY
207 NEW YORK AVENUE
STATEN ISLAND, NEW YORK 10305-5013

FOR: DCMA Atlanta
J. Wesley Gilliam, Administrative Contracting Officer

*REPORT NO: 771103S111111070*

DATE: 15 September 2003

IMPORTANT: THIS REPORT MAY NOT BE RELEASED TO THE CONTRACTOR EXCEPT BY THE COGNIZANT ADMINISTRATIVE CONTRACTING OFFICER.

THE GOVERNMENT IS NOT PRECLUDED FROM QUESTIONING ISSUES OR COSTS WITHIN THE SYSTEM REVIEWED, NOTWITHSTANDING THE STATUS OF THE CONTRACTOR'S SYSTEM OR THE RESULTS OF THIS REVIEW.

FOR OFFICIAL USE ONLY

The data and results reviewed and verified with respect to the pension plan assets remaining for the ATS segment at Lucent attributable to the active participants transferred are in the following worksheet provided by DCAA for both plans:

DCAA COMPUTATION OF CAS 413.50(c)12 ADJUSTMENT
LUCENT TECHNOLOGIES SALE OF ATS TO GENERAL DYNAMICS

Page 1 of 2

A. LUCENT TECHNOLOGIES PENSION PLAN – (LTPP)

| | | | REFERENCE |
|---|---|---|---|
| 1 | FBO Liability for all Active Employees Transferred to GD – 10/1/97 | $ 8,500,000 | Per Tom Bainbridge Response AON File: Dec2000req |
| 2 | Total PBO Liability of all (Active & Inactive) Lucent Participants– 10/1/97 | $ 10,555,800,000 | Exhibit I – Lucent Technologies Inc–Benefit Obligations 9/30/97 |
| 3 | Pro-Rata share of Liability (1÷2) | .08052445% | |
| 4 | Market Value of Assets – 10/1/97 | $ 18,266,900,000 | Exhibit I – Lucent Technologies Inc–Benefit Obligations 9/30/97 |
| 5 | Asset Allocation of Sold Segment (Lucent ATS to GD) = (3 x 4) | $ 14,709,321 | |
| 6 | Assets Transferred to GD | $ 10,501,000 | ASA – Pension Plan Asset Transfers From Lucent To Corresponding Plans of GD kab\lucent\actrpts\Tbatsrpt.doc 1/30/98 |
| 7 | Assets Remaining with Lucent (5 – 6) | $ 4,208,321 | |
| 8 | Estimated Government Participation | 89.4 % | Per K.Bristow (10.6% Non Gov) NOTE: Prior to the Telydyne decision. K. Bristow has been requested to breakout the Government %. |
| 9 | Government Share (7 x 8) | $ 3,762,239 | |



FOR OFFICIAL USE ONLY

Audit Report No. 6201-2001K19200001

| | | | | |
|---|---|---|---|---|
| | **DCAA COMPUTATION OF CAS 413.50(c)12 ADJUSTMENT<br>LUCENT TECHNOLOGIES SALE OF ATS TO GENERAL DYNAMICS** | | | |
| | | | | Page 2 of 2 |
| A. | LUCENT TECHNOLOGIES MANAGEMENT PENSION PLAN | | | |
| 1 | PBO Liability for all Active Employees Transferred to GD – 10/1/97 | $ 58,900,000 | | Per Tom Bainbridge Response AON File: Dec2000req |
| 2 | Total PBO Liability of all (Active & Inactive) Lucent Participants – 10/1/97 | $ 12,310,400,000 | | Exhibit I – Lucent Technologies Inc– Benefit Obligations 9/30/97 |
| 3 | Pro-Rata share of Liability (1÷2) | .47845724% | | |
| 4 | Market Value of Assets – 10/1/97 | $ 17,576,100,000 | | Exhibit I – Lucent Technologies Inc– Benefit Obligations 9/30/97 |
| 5 | Asset Allocation of Sold Segment (Lucent ATS to GD) = (3 x 4) | $ 84,094,123 | | |
| 6 | Assets Transferred to GD | $ 68,591,000 | | ASA –Pension Plan Asset Transfers From Lucent To Corresponding Plans of GDkab\lucent\actrpts\Tbatsrpt.doc 1/30/98 |
| 7 | Assets Remaining with Lucent (5 – 6) | $ 15,503,123 | | |
| 8 | Estimated Government Participation | 89.4 % | | Per K.Bristow (10.6% Non Gov) NOTE: Prior to the Telydyne decision. K. Bristow has been requested to breakout the Government %. |
| 9 | Government Share (7 x 8) | $ 13,859,792 | | |

The CIPR Center was requested to provide an estimate of the Present Value of Accrued Benefits for those inactive ATS participants who had not transferred to General Dynamics as of 01 October 1997. We assumed that the assets attributable to these participants are approximately equal to the assets remaining for the active participants for the segment. We used the 1997 Form 5500 Schedule B information for both the Lucent Technologies Occupational Pension Plan ("LTPP") and Management Pension Plan to estimate the inactive liabilities. It is our understanding that these participants were active and are deemed Terminated Vested in the Lucent pension plans as of 01 October 1997. Our analysis is provided in Exhibit 2.

Audit Report No. 6201-2001K19200001

*RECOMMENDATION*

The CIPR Center estimates that a CAS 413 Segment Closing Adjustment Amount be determined as of 1 October 1997 reflecting the appropriate Government participation ratio based on a remaining surplus of $9.2 million for the Lucent Technologies Management Pension Plan and $2.7 million for the Lucent Technologies Occupational Pension Plan ("LTPP") attributable to the inactive participants.

The CAS 413 Segment Closing Adjustment amount as of the same date attributable to the active participants transferred should be based on the calculated assets remaining results from the DCAA worksheets referred to previously in this report.

Independence Statement

Request for CIPR Technical Assistance, **CIPR Report _771103S11111070_____**

The analyst was free from any personal and external impairments that would preclude independent evaluation of the subject.

PREPARED BY:

(signed)

George A. Matray

Director and Chief Actuary

*The Contractor Insurance/Pension Review Team is ready to provide additional data and assistance for any insurance or pension related issues. The background data and documentation associated with this report are on file in this office and are available for review at any time.*

*The ACO is requested to fill out the DCMA customer satisfaction survey located at*

http://ice.disa.mil/index.cfm?fa=card&site_id=42&service_category_id=1&service_provider_id=2222

Distribution:
DCMA-OCB (Alexandria, VA) / P. Ring
DCMAC-E (Carson, CA)/ R. Nichols
*DCAA / Tom Caruso*

Audit Report No. 6201-2001K19200001

EXHIBIT 1

**Actuarial Accrued Liability Determination**
**As of 10/01/1997**
**Lucent Technologies, Inc. Pension Plans**

| | | PLAN | | |
|---|---|---|---|---|
| Source | | Management | Occupational | |
| Actuarial Report | AAL at 1/1/98 | $11,740.6 | 10,030.3 | |
| | Normal Cost at 1/98 | $204.7 | 86.4 | |
| | Benefit Payments | $853.2 | 814.5 | |
| CIPR Center | AAL at 10/97 | $11,649.0 | 9,994.7 | At 9% |
| AON | AAL at 10/97 | $12,310.4 | $10,555.8 | At 7.25% |
| AAL Ratio: (11)/(13) | | 94.6276% | 94.6841% | |

Prepared By:
George Matray
CIPR Center
6/4/2002



FOR OFFICIAL USE ONLY