**Nos. 04-1511C, 04-1512C**
**(Consolidated)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**LUCENT TECHNOLOGIES INC.,**

**Plaintiff,**
**v.**
**THE UNITED STATES**

**Defendant.**

**AT&T CORP.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S MOTION FOR AN ORDER DENYING PLAINTIFF LUCENT TECHNOLOGIES INC.'S MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE, OR, IN THE ALTERNATIVE, GRANTING A CONTINUANCE TO PERMIT ESSENTIAL DISCOVERY (NO. 04-1511)

---


**PETER D. KEISLER**
**Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Deputy Director**

**C. COLEMAN BIRD**
**Senior Trial Counsel**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit**
**8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20005**
**Tele: 202.307.0453**
**Fax: 202.514.7965**

**Attorneys for Defendant**
**United States of America**

**OF COUNSEL:**

**KATHLEEN MALONE**
**Trial Attorney**
**Defense Contract Management Agency**
**495 Summer Street**
**Boston, MA 02210**


**Dated: May 15, 2006**

# TABLE OF CONTENTS

PAGE

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**DEFENDANT'S MOTION FOR AN ORDER DENYING PLAINTIFF LUCENT TECHNOLOGIES INC.'S MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE OR, IN THE ALTERNATIVE, GRANTING A CONTINUANCE TO PERMIT ESSENTIAL DISCOVERY (NO. 04-1511)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**I. APPLICABLE LEGAL STANDARDS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**II. DEFENDANT'S MOTION SHOULD BE GRANTED BECAUSE DEFENDANT'S DISCOVERY REQUESTS ARE SPECIFICALLY DIRECTED TOWARDS DISCOVERING FACTS ESSENTIAL TO ITS OPPOSITION TO LUCENT'S MOTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) . . . . . 5, 6

*Jade Trading, LLC v. United States*,
60 Fed. Cl. 558 (2004) . . . . . 6, 7

*Opryland USA Inc. v. The Great American Music Show, Inc.*,
970 F.2d 847 (*Fed. Cir*. 1992) . . . . . 5, 6

*Theisen Vending Co. v. United States*,
58 Fed. Cl. 194 (2003) . . . . . 6, 7

**REGULATIONS**

CAS 413.30(a)(20), 48 C.F.R. § 9904.413-30(a)(20) (1996) . . . . . 4, 7, 8

CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1996) . . . . . 2

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **LUCENT TECHNOLOGIES INC., Plaintiff, v. THE UNITED STATES, Defendant.** | ) | **No. 04-1511C (Judge Braden)** |
| **AT & T CORP., Plaintiff, v. THE UNITED STATES, Defendant.** | ) | **No. 04-1512C (Judge Braden) (Consolidated)** |

**DEFENDANT'S MOTION FOR AN ORDER DENYING PLAINTIFF LUCENT TECHNOLOGIES INC.'S MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE OR, IN THE ALTERNATIVE, GRANTING A CONTINUANCE TO PERMIT ESSENTIAL DISCOVERY (NO. 04-1511)**

Pursuant to RCFC 56(f), defendant, the United States, respectfully requests that the Court enter an order denying plaintiff Lucent Technologies Inc.'s ("Lucent's") Motion for Summary Judgment ("Plaintiff's Motion" or "Pl. Mot.") without prejudice, or, in the alternative, an order (a) directing Lucent to respond to defendant's outstanding discovery requests (Defendant's First Set of Interrogatories and Requests for Production of Documents, served September 29, 2005) ("Defendant's Discovery Requests") (copy attached as Attachment "A") within 30 days, and

produce responsive documents within 45 days, of the Court's order, and (b) granting a continuance of four months thereafter within which defendant may complete essential discovery concerning factual issues relating to Plaintiff's Motion and file its response to Plaintiff's Motion.

As set forth below and in the attached Declaration of C. Coleman Bird ("Bird Declaration") (copy attached as Attachment "B"), dated May 15, 2006, Lucent filed its motion before the Court had an opportunity to enter a scheduling order after the telephonic status conference held on May 11, 2005, and before defendant had the opportunity to take any discovery whatsoever. We need discovery in order to have a reasonable opportunity to controvert the factual allegations upon which Lucent has based its dispositive motion and to present all the relevant facts relating to the motion, not merely the selected facts upon which Lucent relies.

**PROCEDURAL BACKGROUND**

Lucent filed this action on September 29, 2004, to challenge a contracting officer's final decision finding that Lucent's sale of its Advanced Technology Systems Division ("ATS Division") to General Dynamics Corporation ("GD") constituted a segment closing under Cost Accounting Standard ("CAS") 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12), and that Lucent was, therefore, required to make a segment-closing adjustment pursuant to that same provision. The contracting officer's final decision demanded payment from Lucent of $44,442,475, plus interest. Defendant filed its answer and counterclaim on January 28, 2005 (Docket No. 8), and Lucent filed its reply to the counterclaim on March 10, 2005 (Docket No. 11).

On May 2, 2005, the parties filed their Joint Preliminary Status Report (Docket No. 13). In this Status Report, Lucent proposed to file a motion for summary judgment no later than June 15, 2005, on the issue whether the ATS sale constituted a segment closing. *See* Joint Preliminary Status Report, dated May 2, 2005, at 2. Defendant proposed a reasonable discovery plan, under which defendant would have a fair opportunity to take the discovery it needed regarding the facts of the ATS sale, and to complete that discovery by September 13, 2005. Defendant further proposed that Lucent defer the filing of its planned summary judgment motion until that date (September 13, 2005), and that defendant would file its cross-motion or opposition in response in November. *Id*. at 6-7. Lucent contended that defendant's discovery plan was "premature" until defendant had received Lucent's planned motion "at which time the Government may request discovery under Rule 56(f) as it believes appropriate." *Id*. at 6.

On May 11, 2005, the Court conducted a telephonic status conference, during which the Court discussed the parties' alternative scheduling proposals and took them under advisement. On August 2, 2005, before the Court had issued any scheduling order or otherwise ruled upon the parties' competing scheduling proposals, Lucent filed its motion for summary judgment (Docket Nos. 18, 19). On September 29, 2005, defendant served Defendant's Discovery Requests (Attachment "A"). On October 6, 2005, the parties filed a joint motion to enlarge the time for defendant to respond to Plaintiff's Motion so that the parties could discuss the possibility of narrowing defendant's discovery requests or of narrowing the factual predicate for Plaintiff's Motion, and the possibility of presenting Plaintiff's Motion to the Court for decision upon an agreed-upon statement of facts. (Docket No. 22.) The Court granted that motion and subsequent motions for additional time, but, ultimately, the parties were unable to reach

agreement, and so advised the Court in a Joint Status Report filed March 8, 2006 (Docket No. 37). By Order dated April 10, 2006 (Docket No. 39), the Court required the filing of defendant's RCFC 56(f) motion by May 15, 2006.

**ARGUMENT**

Lucent has asked this Court to decide the threshold issue in this case – whether Lucent's sale of its ATS Division to GD constitutes a segment closing under CAS 413 – based upon a limited and fragmentary set of factual allegations regarding this complex transaction, allegations that have never been subjected to the scrutiny of the discovery process. The ATS sale was a complex transaction indeed, one that involved the transfer to GD of a great many assets and types of assets (including contracts (both CAS-covered and non-CAS-covered), employees, tangible capital assets, real property, and intellectual property). The facts relating to this complex transaction (*i.e.*, what contracts, employees, assets, and properties were transferred, and what were retained) form the essential predicate for Lucent's motion, and are almost completely in Lucent's hands, and not the Government's.

The fundamental premise of Lucent's motion is that, (i) because Lucent did not transfer to GD *every* contract, employee, asset, and item of real and intellectual property held by the ATS segment as of the date of sale, and (ii) because Lucent continued to perform the handful of CAS-covered Government contracts that it did retain, the ATS sale did not constitute a segment closing within the definition of CAS 413.30(a)(20), 48 C.F.R. § 9904.413-30(a)(20) (1996) ("CAS 413.30(a)(20)"). *See* Pl. Mot. at 9-10. The 13 pages of proposed findings of fact that Lucent has proffered in support of its motion (Plaintiff's Proposed Findings of Uncontroverted Fact ("PPFUFs"), dated August 2, 2005 (Docket No. 19)), invite the Court to assess the legal

significance under CAS 413.30(a)(20) of the contracts, employees, assets, and property interests that Lucent retained with only the most fragmentary information about what Lucent actually transferred. Similarly, Lucent asks the Court to determine the legal significance for CAS 413.30(a)(20) purposes of its performance of the few contracts it retained (apparently nine out of 140 active contracts, *see* PPFUFs Nos. 6, 7), using in part various assets, employees, *etc*., of the ATS segment that it also retained, as well as the significance of its allocation of pension costs to such contracts, based upon the narrow, limited facts regarding such contract performance and pension cost accounting that it has chosen to place before the Court in its PPFUFs. Plainly, we should be given a reasonable opportunity to take discovery to determine all of the relevant facts regarding this transaction and Lucent's post-transaction contract performance and pension cost accounting, and cannot fairly be restricted to the limited facts that Lucent has proffered to the Court.

## I. APPLICABLE LEGAL STANDARDS

Defendant's motion is based upon RCFC 56(f), an essential safeguard in the summary judgment provisions of RCFC 56. This Rule provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be taken or discovery to be had or may make such other order as is just.

RCFC 56(f). The United States Court of Appeals for the Federal Circuit has recognized the important purpose of this Rule: to prevent non-moving parties "from being 'railroaded' by premature summary judgment motions." *Opryland USA Inc. v. The Great American Music Show, Inc.*, 970 F.2d 847, 852 (Fed. Cir. 1992), *citing Celotex Corp. v. Catrett*, 477 U.S. 317,

326 (1986). In *Opryland*, the court of appeals stated the governing principle as follows: "[W]hen the discovery [sought] is reasonably directed to 'facts essential to justify the party's opposition', in the words of Rule 56(f), *such discovery must be permitted* or summary judgment refused." *Opryland,* 970 F.2d at 852 (emphasis added). This Court has recognized that RCFC 56(f) "'motions are generally favored and should be liberally granted.'" *Jade Trading*, *LLC v. United States*, 60 Fed. Cl. 558, 565 (2004), *quoting Theisen Vending Co. v. United States*, 58 Fed. Cl. 194, 197 (2003).

We show below that the discovery that we have requested more than satisfies the *Opryland* test, because it is specifically directed to "'facts essential to justify'" our opposition to Lucent's motion, and, therefore, this discovery "must be permitted or summary judgment refused." *Opryland*, 970 F.2d at 852.[1]

In *Jade Trading*, this Court denied the plaintiff's summary judgment motions as premature, on facts that are very similar to the facts of this case. That case involved the question whether a business entity was a bona fide partnership and not a sham partnership formed for the purpose of evading taxes. In that case, as here, the plaintiff sought partial summary judgment

---

[1] We will also demonstrate that our motion meets the test set forth in *Theisen*:

> . . . [T]he non-movant must by affidavit and supporting papers: (1) specify the particular factual discovery being sought, (2) explain how the results of this discovery are reasonably expected to engender a genuine issue of material fact, (3) provide an adequate factual predicate for the belief that there are discoverable facts sufficient to raise a genuine and material issue, (4) recite the efforts previously made to obtain those facts, and (5) show good grounds for the failure to have discovered the essential facts sooner.

*Theisen*, 58 Fed. Cl. at 198-99.

before any discovery had been taken in the case. 60 Fed. Cl. at 559. There, as here, the legal questions that plaintiff raised in its summary judgment motions were fact-intensive, and the motions were based upon plaintiff's version of the facts – facts that were largely in the hands of the movant and that the non-movant had never had the opportunity to test in discovery. *Id*. at 564-65. The Court held that the issues raised represented "a quintessential example of a fact-intensive inquiry where summary judgment would be inappropriate at such an early juncture," and that granting the motions "without giving Defendant the opportunity for discovery would 'railroad' Defendant by preventing it from developing its case and [by] prematurely resolving on motion" a matter that likely warranted a trial. *Id.* at 565.[2] This Court should reach the same result here.

## II. DEFENDANT'S MOTION SHOULD BE GRANTED BECAUSE DEFENDANT'S DISCOVERY REQUESTS ARE SPECIFICALLY DIRECTED TOWARDS DISCOVERING FACTS ESSENTIAL TO ITS OPPOSITION TO LUCENT'S MOTION

The term "segment closing" is defined in CAS 413.30(a)(20) as follows:

> (20) *Segment closing* means that a segment has (i) been sold or ownership has otherwise been transferred, (ii) discontinued operations, or (iii) discontinued actively seeking Government business under contracts subject to this Standard.

---

[2] In *Jade Trading*, the Court directed the non-movant to serve written discovery requests to facilitate the Court's review of the plaintiff's summary judgment motions and to enable the Court to understand better the nature of the discovery that the non-movant needed. *Jade Trading*, 60 Fed. Cl. at 565. In this case, defendant has already served the discovery requests, and they are attached to this motion as Attachment "B." Then, attempting to avoid "piecemeal litigation" by truncating discovery and "extraneous disputes as to the scope of discovery 'essential' for Defendant to respond to Plaintiff's motions," the Court exercised its discretion under RCFC 56(f) and authorized "full-blown" fact discovery. *Id*. at 559. This course may well make sense in this case.

CAS 413.30(a)(20), 48 C.F.R. § 9904.413-30(a)(20) (1996). Like the question in *Jade Trading*, the question here whether the ATS sale was a segment closing under this definition is a highly fact-intensive inquiry. No one could seriously contend that a contractor that is selling a business segment could defeat the Government's right to a CAS 413.50(c)(12) segment closing adjustment by selling all of the segment's assets, *etc*. except for a single physical asset (such as a desk or a computer), nor do we understand that Lucent is making such a contention. Necessarily, whether a particular transaction meets CAS 413.30(a)(20)'s definition of a "segment closing" depends upon assessing the significance of what was transferred *versus* what was retained, in light of the purpose of the segment-closing adjustment provision. In this case, this issue arises in the context of a complex corporate transaction and subsequent contract performance, matters about which the Government has very few details. In order to decide the issue that Lucent has raised, the Court will need to assess the significance of the contracts, employees, assets, and properties that Lucent retained *versus* the contracts, *etc*. that it transferred as part of the ATS sale. The Court cannot properly make that assessment in a vacuum, even in the partial vacuum of Lucent's selected version of the facts. The Court is entitled to know all the relevant facts bearing upon this issue and to see the complete picture. That is why we need this discovery.

In its summary judgment papers, Lucent provides minimal information regarding certain aspects of its sale of the ATS segment and its subsequent performance of certain Government contracts. With respect to contracts, Lucent identifies nine active contracts (and one proposal) that it retained, out of the segment's total of 360 active Government contracts (140 of which were CAS-covered), and states that it retained all of the approximately 250 "completed"

contracts. *See* PPFUFs Nos. 6-8. Although Lucent contends that the total incurred costs of the nine contracts and one proposal that it retained were approximately $8.7 million in the year after the sale (PPFUF No. 8), Lucent never provides any information concerning the total incurred costs of the *other* 131 active CAS-covered contracts (140 minus the nine retained contracts) that it transferred, why the nine contracts were retained, or what the relationship, if any, was between the retained contracts and the business that Lucent conducted through its other business units. Similarly, Lucent describes the number of "management" and "non-managerial" employees who were transferred to GD and the number of such employees who were retained elsewhere in Lucent's employ (a group that purportedly includes "several members of the ATS leadership team," a term that Lucent never defines or explains) (PPFUFs Nos. 9-10, 25), but provides no additional information regarding employee transfers and retentions.

Lucent also asserts that "the adjusted book value of all the fixed assets relating to Lucent's government business . . . was approximately $18 million," (PPFUF No. 12), but never describes the total value of the assets that were retained after the sale. Instead, Lucent states only that "the retained assets included various fixed assets, including over $1,370,000 of assets relating to [certain specified programs], along with fixed assets from [other areas]." PPFUF No. 28. Lucent further asserts, in general terms, that not all of the segment's intellectual property assets were transferred (PPFUF No. 19), but that unspecified "portions of ATS' facilities," which, according to PPFUF No. 11, included facilities in North Carolina, New Jersey, and Maryland, were retained. PPFUF No. 28. Finally, Lucent describes what it contends were its standard Government contract cost accounting practices for pension costs, and asserts that it followed these practices in allocating pension costs to contracts, including the nine contracts it

retained, and contends that, after the ATS sale, it followed these same practices in allocating pension costs to various contracts, including the nine retained contracts. PPFUFs Nos. 14-15, 32.

This incomplete set of facts regarding the ATS sale and subsequent developments cries out for the clarification and explanation that Defendant's Discovery Requests would require Lucent to provide. These discovery requests seek discovery of the facts surrounding the ATS sale in order to determine, with specificity and not in easy generalities, what contracts, employees, assets, and property interests (both real property and intellectual property) were transferred to GD and what contracts, *etc*. were retained by Lucent; the rationale and purpose for Lucent's retaining these contracts, *etc*.; and the nature of the relationship of the retained assets to the transferred assets and to other Lucent business and business units. This discovery seeks factual information on the ATS segment's contracts, physical assets, intellectual property assets, and employees both before and after the sale; documents reflecting the organization and business lines of ATS and Lucent's other government business units, again both before and after the sale; documents prepared by or on behalf of Lucent concerning the sale of ATS, including the application of CAS 413 to the sale; documents concerning the retention of ATS assets, contracts and employees; and the Purchase and Sale Agreement and related documents, including offering memoranda and negotiation documents. *See* Interrogatories Nos. 1-6, and Document Requests Nos. 1-15, 18, 22-27.

Defendant's Discovery Requests also seek discovery of facts related to Lucent's and GD's treatment of pension costs for government contract purposes before and after the ATS sale. This includes information on Lucent's disclosed cost accounting practices relating to the ATS

segment and to any other segment that performed any of the retained contracts (Document Request No. 4), the charging of pension cost on any retained contract or subcontract, or on any transferred contract or subcontract (Interrogatories Nos. 7-8), and the actuarial valuation reports for the Lucent pension plans covering the period from the date of the ATS sale to the present (Document Request No. 17); and facts concerning the parties' agreement(s) with respect to the division of, and responsibility for, pension assets and liabilities related to ATS employees who were transferred (Document Request No. 19).

Finally, Defendant's Discovery Requests seek organization charts and CAS Disclosure Statements and other information relating to Lucent's organization of its business units performing Government contracts before and after the ATS sale, and to the status of the ATS business unit as a segment for CAS purposes prior to the sale. This information, we believe, will show that Lucent itself recognized in its internal organizational documents that the ATS segment no longer exists in any sense within Lucent, and that this segment had been closed.

In short, as set forth in the Bird Declaration (Attachment "B"), ¶¶ 3-6, we need to conduct formal discovery in order to obtain – and present to the Court – the complete facts regarding the ATS sale, Lucent's subsequent performance of certain contracts it retained, and Lucent's own internal treatment of the status of the ATS segment after the sale. These facts are essential in order to oppose Lucent's motion. Defendant's Discovery Requests are specifically aimed at obtaining these essential facts.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court enter an order denying Lucent's motion for summary judgment without prejudice, or, in the alternative, an order (a) directing Lucent to respond to defendant's outstanding discovery requests within 30 days, and to produce responsive documents within 45 days, of the Court's order, and (b) granting a continuance of four months thereafter within which defendant may complete essential discovery on factual issues relating to Plaintiff's Motion and file its response to Plaintiff's Motion.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Deputy Director

s/ C. Coleman Bird
C. COLEMAN BIRD
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: 202.307.0453
Facsimile: 202.514.7965

Attorney for Defendant United States of America

OF COUNSEL

KATHLEEN MALONE
Trial Attorney
Defense Contract Management Agency
495 Summer Street
Boston, MA 02210

Dated: May 15, 2006

**Index to Attachments**

| | |
|---|---|
| A | Defendant's First Set of Interrogatories and Requests for Production of Documents, served September 29, 2005 |
| B | Declaration of C. Coleman Bird, dated May 15, 2006 |

**CERTIFICATE OF FILING**

I hereby certify that on the 15th day of May, 2006, a copy of the foregoing Defendant's Motion for an Order Denying Plaintiff Lucent Technologies Inc.'s Motion for Summary Judgment without Prejudice, or, in the Alternative, Granting a Continuance to Permit Essential Discovery (No. 04-1511) was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ C. Coleman Bird