**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **LUCENT TECHNOLOGIES INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 04-1511C** |
| | ) | **(Judge Braden)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S FIRST SET OF INTERROGATORIES AND**
**<u>REQUESTS FOR PRODUCTION OF DOCUMENTS</u>**

Pursuant to RCFC 26, 33, and 34, defendant, the United States, hereby requests that plaintiff Lucent Technologies Inc. answer separately, in writing, and under oath, the following continuing interrogatories, and produce the documents requested in the following continuing requests for production, in each case within thirty (30) days of the date of service of these discovery requests.

**<u>INSTRUCTIONS AND DEFINITIONS</u>**

Plaintiff is requested, in answering these interrogatories and document requests, to furnish all information and documents available to plaintiff, including all documents and information in the possession, custody, or control of plaintiff, including, without limitation, its Board of Directors, employees, agents, accountants, actuaries, attorneys and investigators for its attorneys, consultants, and experts, and not merely information within the personal knowledge of the person answering these interrogatories.

If plaintiff cannot answer any of the following interrogatories in full after exercising due diligence to secure the information to do so, please so state, and answer to the maximum extent

possible, specifying the basis for plaintiff's inability to answer the remainder and stating whatever information or knowledge plaintiff has concerning the unanswered portions.

These interrogatories and requests for production of documents (collectively, "discovery requests") are continuing in nature pursuant to RCFC 26(e). Supplementation of plaintiff's responses is required under the circumstances set forth in RCFC 26(e). In addition, if further or additional information, evidence, or documents come into plaintiff's possession, custody, or control, or are brought to the attention of plaintiff or its attorneys at any time up to and including the trial of this action, supplementation of plaintiff's responses is requested .

In these discovery requests, the following definitions and instructions will apply:

1. "Plaintiff" or "Lucent" shall refer to plaintiff Lucent Technologies Inc., the corporation upon which these discovery requests are served, its predecessors-in-interest under its current name and any former names.

2. "Plaintiff" also includes, unless otherwise stated, all of plaintiff's current and former directors, officers, employees, attorneys, agents, and representatives, including, but not limited to, accountants, accounting firms, actuaries, actuarial firms, consultants, and consulting firms.

3. "Defendant" means the United States Government, or any department, agency, establishment, or other organizational unit that is part of the United States Government.

4. "General Dynamics" means General Dynamics Corporation, including its parent, subsidiaries, and affiliates, and its current and former directors, officers, employees, attorneys, agents, and representatives, including, but not limited to, accountants, accounting firms, actuaries, actuarial firms, consultants, and consulting firms.

5. The "Purchase and Sale Agreement" means the "Agreement for the Purchase and Sale of Assets by and between Lucent Technologies Inc. as Seller and General Dynamics Corporation as Buyer, dated as of August 20, 1997," as amended and modified.

6. The "ATS Segment" means Lucent's Advanced Technology Systems segment as it existed from and after the creation of Lucent.

7. The "Asset Purchase Transaction" refers to General Dynamics' purchase of assets of the ATS Segment under the terms of the Purchase and Sale Agreement.

8. The "Closing Date" means the date of the closing of the Asset Purchase Transaction under the Purchase and Sale Agreement.

9. "Active Contract" refers to any contract between the ATS Segment and any department, agency, establishment, or organizational unit of the United States Government under which performance had not been completed as of the Closing Date.

10. "Active Subcontract" refers to any subcontract between the ATS Segment and any prime contractor or higher-tier subcontractor, where the ultimate prime contract was with any department, agency, establishment, or organizational unit of the United States Government, under which the ATS Segment's performance had not been completed as of the Closing Date.

11. "Completed Contract" refers to any contract between the ATS Segment and any department, agency, establishment, or organizational unit of the United States Government under which performance had been completed as of the Closing Date, but the contract remained open and had not been closed as of that date.

12. "Completed Subcontract" refers to any subcontract between the ATS Segment and any prime contractor or higher-tier subcontractor, where the ultimate prime contract was with any

department, agency, establishment, or unit of the United States Government, under which the ATS Segment's performance had been completed as of the Closing Date but the contract remained open and had not been closed as of that date.

13. "Transferred Contract" refers to any contract of the ATS Segment that was either transferred or assigned to General Dynamics in connection with the Purchase and Sale Agreement, or that, pursuant to Section 2.6 of the Purchase and Sale Agreement, Lucent was holding in trust for General Dynamics, as and from the Closing Date, and that General Dynamics performed in Lucent's name, with all benefits and obligations under such contract for the account of General Dynamics.

14. "Transferred Subcontract" refers to any subcontract of the ATS Segment that was either transferred or assigned to General Dynamics in connection with the Purchase and Sale Agreement, or that, pursuant to Section 2.6 of the Purchase and Sale Agreement, Lucent was holding in trust for General Dynamics, as and from the Closing Date, and that General Dynamics performed in Lucent's name, with all benefits and obligations under such contract for the account of General Dynamics.

15. "Retained Contract" refers to any contract of the ATS Segment as of the Closing Date that was retained by Lucent and was not a "Transferred Contract" as defined in ¶ 13 above.

16. "Retained Subcontract" refers to any subcontract of the ATS Segment as of the Closing Date that was retained by Lucent and was not a "Transferred Subcontract" as defined in ¶ 14 above.

17. "CAS 413" refers to the provisions of CAS 413 as amended in 1995, codified at 48 C.F.R. § 9904.413 (1995).

18. The term "document" shall be construed in the broadest possible sense pursuant to RCFC 34.

a. The term "document" shall include, without limitation, any written, recorded, or graphic matter, however produced or reproduced, and includes, without limitation, any "document," "tangible thing," or "object," as those terms are used in RCFC 34, and any "writing," "recording," "photograph," "original," or "duplicate," as those terms are defined in Rule 1001 of the Federal Rules of Evidence.

b. The term "document" includes, without limitation, any written, drawn, typed, printed, recorded, photostated, computer-generated, microfiched, microfilmed, graphic representations, drawings or printed materials of any kind whatsoever, however produced or reproduced, and whether stored on computer disks or tapes, or residing in computer memory, pager, cards, disc, tape, film, electronic facsimile, computer storage, or any other medium or media, whether an original, master, or duplicate, including, but not limited to accounts (including accounting statements and bank statements), actuarial reports, actuarial valuation reports, affidavits, agreements, analyses, appointment books, such as, but not limited to, "day planners" and "Franklin planners," calendars of any type, audits, bank checks, bid tabulations, bills, blueprints, bookkeeping entries, books, articles, or extracts from any of the foregoing, calculations, canceled checks, cashiers' checks, change orders, charts, checks, check stubs, circulars, claim documents, communications (including but not limited to all written forms of inter- and/or intra-organizational communications within plaintiff's present or former corporate structure), comparisons, computer printouts or materials stored in any computer-readable format, computer databases, contracts, correspondence, court filings, day books, declarations,

depositions, desk calendars, design documents, diagrams, diaries, directives, drafts, drawings, E-Mails (as defined below), evaluations, expense reports, expressions or statements of policy, facsimile transmissions, field orders, files, financial records, forecasts, graphs, graphic or oral records or representations of any kind, instruments, invoices, interview notes, job charge records, laboratory and testing reports, ledgers, letters, lists of any kind, including, but not limited to, lists of persons attending meetings or conferences, log books, mailgrams, man-hour and cost projections, memoranda, minutes or records of meetings or conferences, notebooks, note pads, notes of any kind, including, but not limited to, notations of any sort relating to conversations or meetings, papers, personal reading files, personnel records, photographs, plans, printed matter, progress schedules, projections, project/bid analyses, project concept descriptions, proposals, proposals for changes in the work, receipts, records, reports, requests for information, sketches, sound recordings, statements of any kind, including, but not limited to, statistical statements, studies, summaries, summaries of other documents, surveys, tape recordings, "take-off" sheets, telefax, telegrams, telephone call records, telephone logs, time records, time sheets, time tables, transcripts, travel vouchers, vouchers, witness statements and indices, working papers, work orders, work schedules, work sheets, written estimates, and all other papers, writings, drawings, recordings, or physical things containing information, including all original and amended versions of documents, preliminary and subsequent drafts or marginal notes appearing on any documents, however denominated or described by the party to whom the particular interrogatory or document request is directed.

c. The term "document" shall further collectively include the original, duplicate original, and any or all copies or reproductions of the original document, to the extent

that any or all copies are different in any way from the original document, whether by interlineation, receipt stamps, notation, indication of copies sent or received or otherwise, which are within plaintiff's possession, custody, or control.

d. These requests include and encompass all forms and manifestations of electronically or optically coded, stored, and retrievable information, including, but not limited to, "electronic mail (E-Mail as defined below)," "voice mail," digital images and graphics, digital or analog audio tapes and files, and digital or analog video tapes and files. The term "document" also includes "Electronic Data" as defined below.

19. "Electronic Data" shall mean and include, without limitation, any data of any kind or description, entered or inscribed by computer, mechanical, facsimile, electronic, magnetic, digital, optical, or other means. Electronic Data includes, without limitation, any and all items stored on E-Mail, computer memories, hard disks, floppy disks, compact disks ("CDs"), CD-ROM drives, digital video disks ("DVDs"), DVD-ROM drives, ZIP disks or ZIP drives, Bernoulli Box drives or their equivalent, magnetic tape of all kinds, microfiche, punched cards, punched tape, or data on or in any other medium or vehicle for, or means of, digital storage or transmittal, computer programs (whether private or commercial), programming notes or instructions, output resulting from the use of any software or computer program, including word processing documents, spreadsheets, database files, charts, graphs, outlines, E-Mail, any and all ASCII or EBCDIC files, and any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether these electronic data exist in an active file, deleted file, or file fragment. Electronic Data also includes the file, folder tabs, containers, and labels appended to or associated with any physical storage device or medium for such data.

20. "E-Mail" shall mean and include, without limitation, any computer-based system for sending, receiving, or storing electronic mail or electronic messages.

21. As used herein, "communication" means an oral, graphic, demonstrative, telephonic, electronic, written or like conveyance of information, including documents.

22. "Identify" shall have the following meanings:

a. When used in reference to an organization, the response shall state the full name and present or last known address and telephone number(s) of the corporation, partnership, firm, or other entity.

b. When used in reference to an individual, the response shall state his or her full name, present or last known address, present or last known business affiliation and job description, and any past or present affiliation with plaintiff or defendant. If such information is not current, the date of this information shall be specified. If the individual was an officer, director or employee of plaintiff, or where applicable in context, of the parent, subsidiary or other related or affiliated organization or entity of plaintiff, the response shall state his or her organizational affiliation and areas of responsibility.

c. When used in reference to a contract or subcontract, the response shall provide (i) the contract or subcontract number; (ii) a brief description of the contract or subcontract; (iii) the identification of the contracting parties; (iv) the type of contract or subcontract (such as, without limitation, firm-fixed-price, fixed-price incentive, cost-plus-fixed-fee, *etc.*); (iv) the date of execution of the contract or subcontract; (v) a statement regarding whether the contract or subcontract is CAS-covered; and (vi) the original value of the contract or subcontract, and the remaining value of the contract or subcontract as of the Closing Date.

d. When used in reference to a document, the response shall state the type of document (*e.g.*, memorandum, letter, note, contract, *etc.*), its date, author(s), addressee(s) (if any), copy recipient(s), a synopsis of its contents, and its present location or custodian. Instead of providing this information, plaintiff may attach a copy of the document to its answers. If any responsive document is no longer in the possession, custody, or the control of plaintiff, state what disposition was made of it and when such disposition occurred.

e. When used in reference to a source of information, the response shall identify each individual providing information. The response shall also state whether the information has been reduced to writing or other tangible form. If so, the writing or other record shall be identified in the manner described in subparagraph c. above.

f. When used with reference to a communication, the response shall state the date of the communication, whether the communication was written or oral, the identity of all parties to the communication, the substance of what was communicated by all parties to the communication, and, if written, the identity of all document(s) constituting or reflecting the communication.

23. "Describe in detail" or "state in detail" as used herein, means the following:

a. Describe fully by reference to underlying facts rather than ultimate facts or conclusions of law or facts.

b. State:

(1) the identity of each person involved in each such event, including, but not limited to, the person employed by the plaintiff and those persons purporting to act for plaintiff.

(2) the specific acts of each person participating in each such event;

(3) the date and time of each such event;

(4) the address and location of each such event; and

(5) the identity of each person present during each such event.

24. "LMPP" means the defined-benefit Lucent Management Pension Plan established in or about 1996.

25. "LPP" means the defined-benefit Lucent Pension Plan established in or about 1996.

26. "Referring or relating to" shall mean stating, setting forth, recording, describing, discussing, reflecting, interpreting, identifying, concerning, contradicting, or in any way pertaining to, in whole or in part, the subject matter addressed by the discovery request.

27. "Or" shall mean either "and" or "or," whichever shall be more inclusive in the context in which it is used.

28. The term "explain" means to state with specificity each and every fact, subsidiary fact, ultimate fact, particular circumstance, incident, act, omission, detail and event that relates to the reference, contention, or response.

29. Words used in these discovery requests when used in the singular shall be construed to include the plural, and vice versa. Words used with reference to a person of the male gender shall also be construed to refer to a person of the female gender, and vice versa.

30. If plaintiff asserts that any information sought by these discovery requests is privileged or otherwise protected from discovery, it shall set forth in its written response to each specific discovery request the specific privilege or protection being claimed and sufficient

foundational information to permit the defendant (and the Court, if necessary) to determine whether the privilege or protection is being properly asserted.

31. If plaintiff asserts that any document responsive to these discovery requests is privileged or otherwise protected from production to defendant, plaintiff shall provide the following information concerning each such document:

a. A description of the type of document;

b. The name and title of the author(s), sender(s), addressee(s), and all recipient(s), and all persons to whom the contents of the document have been disclosed or communicated in whole or in part;

c. The date the document was originated;

d. The name and title of each person to whom the contents of the document have been disclosed or communicated in whole or in part (by copy, exhibition, reading, summarization, or otherwise); and

e. A statement of the privilege or other protection and the basis upon which such privilege or protection is asserted.

Notwithstanding a claim that the document is privileged or protected from production to defendant, any document so withheld should be produced with the portion claimed to be privileged or protected redacted.

32. If plaintiff objects or otherwise declines to answer any portion of any discovery request, plaintiff is requested to provide all information called for by that portion of the discovery request to which plaintiff does not object or which plaintiff does not decline to answer. If plaintiff objects to a discovery request on the grounds of overbreadth (*i.e.*, that it calls both for

information or documents that are relevant to the claim or defense of any party and information or documents that are not), plaintiff is requested to provide the information or documents that plaintiff considers relevant. If plaintiff objects to a discovery request on the ground that providing a response would constitute an undue burden, plaintiff is requested to provide all requested information, documents, or admissions that can be supplied without undertaking an undue burden. For those portions of a discovery request to which plaintiff objects or otherwise declines to answer, plaintiff is requested to state in detail all reasons for its objection or declining to answer.

33. If any document described below cannot be located, describe in detail:

a. All efforts made to locate the document, and identity of all persons involved in any such efforts; and

b. The sources and custodians of information or documentation that were consulted and searched as part of the efforts to locate the document.

**DEFENDANT'S INTERROGATORIES TO PLAINTIFF**

**INTERROGATORY NO. 1:**

Identify separately each and every Active Contract, Active Subcontract, Completed Contract, Completed Subcontract, Transferred Contract, Transferred Subcontract, Retained Contract, and Retained Subcontract.

**INTERROGATORY NO. 2:**

State separately, as to each Retained Contract and Retained Subcontract, which business unit(s) or segment(s) within Lucent have been responsible, at any time from and after the Closing Date to the date of your responses to these discovery requests, either for performing such contract or subcontract, or, with respect to each such contract or subcontract that is a Completed Contract or Completed Subcontract, for dealing with the United States Government or prime contractor or higher-tier subcontractor with respect to such contract or subcontract.

**INTERROGATORY NO. 3:**

State separately the total contract value, as of the Closing Date, (i) of the ATS Segment's CAS-covered Transferred Contracts and Transferred Subcontracts, and (ii) of the CAS-covered Retained Contracts and Retained Subcontracts.

**INTERROGATORY NO. 4:**

Identify and describe, separately and in detail, each of the physical assets of the ATS Segment immediately prior to the Closing Date that was either (a) transferred to General Dynamics as part of the Purchase and Sale Agreement, or (b) retained by Lucent and not transferred to General Dynamics, and state separately the fair market value and the book value of each such asset as of the Closing Date.

**INTERROGATORY NO. 5:**

Identify and describe, separately and in detail, each of the intellectual property assets of the ATS Segment immediately prior to the Closing Date that was either (a) transferred to General Dynamics as part of the Purchase and Sale Agreement, or (b) retained by Lucent and not transferred to General Dynamics, and state separately the fair market value and the book value of each such asset as of the Closing Date.

**INTERROGATORY NO. 6:**

Identify separately each employee of the ATS Segment immediately prior to the Closing Date, giving his or her job title and total annual compensation, who was (a) transferred to General Dynamics, (b) otherwise separated from Lucent's employ, or (c) retained in Lucent's employ immediately after the Closing Date.

**INTERROGATORY NO. 7:**

State whether any pension costs have been billed to, or reimbursed by, either the United States Government or the prime contractor or higher-tier subcontractor, either directly or indirectly, under any of the Retained Contracts or Retained Subcontracts at any time since the Closing Date, and, if so, identify each such contract or subcontract involved, and state the amount of such billing or reimbursement under that contract or subcontract, and identify all documents comprising, evidencing, or referring or relating to, any such billing for, or reimbursement of, such pension costs.

**INTERROGATORY NO. 8:**

State whether any pension costs have been billed to, or reimbursed by, the United States Government or the prime contractor or higher-tier subcontractor, either directly or indirectly,

under any of the Transferred Contracts or Transferred Subcontracts at any time since the Closing Date, and, if so, identify each such contract or subcontract involved, and state the amount of such billing or reimbursement under that contract or subcontract, and identify all documents comprising, evidencing, or referring or relating to, any such billing for, or reimbursement of, such pension costs.

**INTERROGATORY NO. 9:**

Identify each person whom plaintiff expects to call as an expert witness at trial to testify on any issue in this case, and as to each such person (hereinafter, the "expert"):

a. State the subject matter upon which the expert is expected to testify;

b. State the substance of the facts and opinions to which the expert is expected to testify; and

c. Provide a summary of the grounds for each such opinion.

**INTERROGATORY NO. 10:**

a. State whether any one or more documents responsive or potentially responsive to the document production requests set out below have been destroyed or lost, or are unavailable, for any reason, for production to defendant in this action;

b. If the answer to subparagraph a. is anything other than an unqualified negative, identify each and every responsive or potentially responsive document that was destroyed or lost, or is unavailable, for any reason, for production to defendant in this action;

c. Describe in detail all the circumstances that led to each such document's destruction, loss, or unavailability, and all efforts made to locate each such document,

d. Identify, for each such document, each and every person whom plaintiff believes

to have knowledge or information regarding either the circumstances of such document's destruction, loss, or unavailability, or any efforts made to locate such document; and

e. Identify, for each such document, each and every document or oral communication that evidences, or otherwise refers or relates to, the document's destruction, loss, or unavailability, or the circumstances of such destruction, loss, or unavailability.

**INTERROGATORY NO. 11:**

Identify each and every person or document that was involved, consulted, or reviewed or referred to, in any way in connection with the preparation of any one or more of plaintiff's responses to defendant's discovery requests, and state the specific discovery request(s) with respect to which the person or document was involved, consulted, or reviewed or referred to.

**DEFENDANT'S REQUESTS FOR PRODUCTION OF DOCUMENTS**

1. All documents that any of the above Interrogatories require plaintiff to identify.

2. Documents that describe, in general or in detail, the assets that Lucent transferred to General Dynamics as part of the Asset Purchase Transaction.

3. All documents referring or relating to the potential application of CAS 413 to any part of the Asset Purchase Transaction.

4. All Cost Accounting Standards ("CAS") Disclosure Statements, and supplements or amendments thereto, prepared or submitted by or on behalf of Lucent at any time that covered, or referred or related, either to (a) the ATS Segment; (b) any other segment that included the ATS Segment at any time, or that has had any responsibility for performance or handling of any Retained Contract or Retained Subcontract after the Closing Date; or (c) any home office (including, without limitation, any intermediate home office) to which the ATS Segment reported at any time.

5. All organization charts for plaintiff covering any part of the period from the creation of Lucent to December 31, 1999, including, without limitation, all organizational charts that mention, or refer or relate, either to the ATS Segment or to any other segment or business unit required to be identified in response to Interrogatory No. 2 of these discovery requests.

6. A copy of any draft or final version of any offering memorandum or similar document, including, without limitation, the Confidential Offering Memorandum for the Advanced Technology Systems Business of Lucent Technologies Inc., that was prepared by the Deutsche Morgan Greenfell Technology Group, dated April 1997, including any amendments, modifications, or supplements thereto, relating to the possible sale of the ATS Segment that was

provided at any time to General Dynamics or to any person or entity acting on its behalf.

7. A complete copy of the Purchase and Sale Agreement, including all Exhibits, Schedules, and Attachments, and also including any amendments, modifications, or waivers that may have been agreed to at any time, either before or after the Closing Date.

8. All minutes or other documents referring or relating to any consideration or discussion by Lucent's Board of Directors, or any member or committee thereof, of the proposed, possible, or actual sale of the ATS Segment to General Dynamics.

9. All presentations, briefing books, or other documents provided to Lucent's Board of Directors, to any member thereof, or to Lucent's senior management, relating to the proposed, possible, or actual sale of the ATS Segment to General Dynamics.

10. All documents comprising, evidencing, or referring or relating to, any communication or discussion either (a) within Lucent or (b) between (i) Lucent and (ii) either General Dynamics or any other person or entity outside of Lucent (including, without limitation, the Deutsche Morgan Greenfell Technology Group), regarding whether any assets, contracts, or employees of the ATS Segment would be retained and not transferred to the buyer of the assets of the ATS Segment, and, if so, which assets would be retained and not transferred.

11. All documents comprising, evidencing, or referring or relating to, any communication or discussion between (a) Lucent and (b) General Dynamics regarding any requested, proposed, possible, or actual adjustment in the price or in the consideration to be provided by General Dynamics in connection with its purchase of the ATS Segment because of Lucent's proposed, possible, or actual retention of any one or more of the Retained Contracts, Retained Subcontracts, any other contract or subcontract, or any other asset of any nature,

including physical assets, intellectual property assets, and employees.

12. All press releases and other statements, documents, or information provided to the press or media referring or relating to the proposed, possible, or actual sale of the ATS Segment to General Dynamics.

13. All Lucent Annual Reports or SEC filings (including, without limitation, SEC Form 10-Ks) that mention, or refer or relate to, the proposed, possible, or actual sale of the ATS Segment to General Dynamics.

14. Documents sufficient to show, for each year in the period from the Closing Date to the date of your responses to these discovery requests, the total amount of billings to the Government, and the total costs incurred, on all Lucent contracts with the Government and on all Lucent subcontracts with any prime contractor or higher-tier subcontractor, where the ultimate prime contract was with the Government.

15. Documents sufficient to show, for each year in the period from the Closing Date to the date of your responses to these discovery requests, the total amount of billings to the Government, and the total costs incurred, on each of the Retained Contracts and Retained Subcontracts.

16. Documents sufficient to show, for the year immediately prior to the Closing Date, the total amount of billings to the Government, and the total costs incurred, on each of the Transferred Contracts and Transferred Subcontracts.

17. All actuarial valuation reports prepared for any purpose for the LMPP or the LPP covering all or any part of the period from January 1, 1996 to the date of your responses to these discovery requests.

18. Any analysis, study, calculation, projection, or estimation of any one or more of the components of pension cost under CAS 412 for the LMPP or the LPP for any part of the period from January 1, 1996 to the date of your responses to these discovery requests.

19. All documents that evidence, or refer or relate to, the proposed, possible, or actual transfer of employees from Lucent to General Dynamics in connection with the Asset Purchase Transaction.

20. All documents that evidence, or refer or relate to, the proposed, possible, or actual transfer of pension assets or pension liabilities in connection with the Asset Purchase Transaction from the LMPP or the LPP to any pension plan created, maintained, or sponsored by General Dynamics.

21. All documents that evidence, or refer or relate to, the proposed, possible, or actual transfer of any physical assets from Lucent to General Dynamics in connection with the Asset Purchase Transaction.

22. All documents that evidence, or refer or relate to, the proposed, possible, or actual transfer of any intellectual property assets from Lucent to General Dynamics in connection with the Asset Purchase Transaction.

23. All documents that evidence, or refer or relate to, the proposed, possible, or actual transfer of any contracts or subcontracts from Lucent to General Dynamics in connection with the Asset Purchase Transaction.

24. All documents that evidence, or refer or relate to, the performance of any Transferred Contract or Transferred Subcontract after the Closing Date.

25. All documents comprising, evidencing, or referring or relating to, any

communication between plaintiff and any Government department, agency, establishment, or organizational unit, or any officer or employee thereof, relating to the Asset Purchase Transaction or to the proposed, possible, or actual retention by Lucent of any contracts, physical assets, intellectual property assets, or employees as part of the Asset Purchase Transaction.

26. All documents comprising, evidencing, or referring or relating to, any communication between plaintiff and any person or entity other than plaintiff, including, without limitation, any investment banker or other advisor, referring or relating (i) to the proposed, possible, or actual sale of the ATS Segment, (ii) to the Asset Purchase Transaction, (iii) to the proposed, possible, or actual transfer or retention of pension assets or pension liabilities in connection with the Asset Purchase Transaction, (iv) to the proposed, possible, or actual transfer or retention of any contracts, subcontracts, physical assets, intellectual property assets, or employees as part of the Asset Purchase Transaction, or (v) to the possible application of CAS 413 to the proposed, possible, or actual sale of the ATS Segment or to the Asset Purchase Transaction.

27. All documents comprising, evidencing, or referring or relating to, either any written or oral communication or information transmitted to, or received by, plaintiff's Board of Directors or senior management (including in either case, without limitation, any committee, group, unit, or member thereof) relating to any of the following subjects, or to any consideration or discussion by plaintiff's Board of Directors or senior management (including, in either case, without limitation, any committee, group, unit, or member thereof) relating to any of the following subjects:

a. the proposed, possible, or actual sale of the ATS Segment;

b. the Asset Purchase Transaction;

c. the proposed, possible, or actual pension aspects of the Asset Purchase Transaction; or

d. the potential application of CAS 413 to the proposed, possible, or actual sale of the ATS Segment or to the Asset Purchase Transaction.

28. All documents evidencing, comprising, or referring or relating to, any work, analysis, opinions, or conclusions that any person identified in response to Interrogatory No. 9 (hereinafter referred to as the "expert"), or anyone acting on his or her behalf, has done, performed, formed, or reached with respect to any issue in this case.

29. All reports and other documents (whether draft, preliminary, incomplete, or final) prepared by or for the expert relating to any issue in this case or to his or her work relating to any of those issues.

30. All documents reviewed, considered, or relied upon in any way by the expert in connection with his or her work relating to any issue in this case, including, without limitation, any such documents reviewed, considered, or relied upon in forming any opinions or reaching any conclusions relating to any such issue.

31. All documents comprising, evidencing, or referring or relating to, any data or other information reviewed, considered, or relied upon in any way by the expert in the process of forming any opinions or reaching any conclusions relating to any issue in this case.

32. All documents comprising, evidencing, or referring or relating to, any and all agreements that the expert may have with plaintiff or plaintiff's counsel regarding his or her work relating to any issue in this case.

33. All documents comprising, evidencing, or referring or relating to, any and all invoices, statements, bills, or other records (including, without limitation, all attachments to such documents) that the expert may have submitted to plaintiff or plaintiff's counsel for services rendered or to be rendered relating to any issue in this case.

34. The expert's *curriculum vitae*, resume, or other statement of his or her professional qualifications, background, or experience, including representative engagements.

35. All publications written by the expert within the last ten years.

36. Documents sufficient to show all cases in which the expert has testified as an expert at trial or by deposition, or has submitted an affidavit, declaration, or other writing regarding the subject matter of his or her expertise, within the last five years.

37. All affidavits, declarations, or other writings regarding the subject matter of any issue in this case that the expert has submitted in connection with any case within the last five years.

* * * *

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

Jeanne E. Davidson
JEANNE E. DAVIDSON
Deputy Director

OF COUNSEL:

KATHLEEN MALONE
Trial Attorney
Defense Contract Management Agency
495 Summer Street
Boston, MA 02210

Dated: September 28, 2005

C. COLEMAN BIRD
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: 202.307.0453
Facsimile: 202.514.7965

Attorney for Defendant United States of America

**AMENDED CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury (i) that, on the 28th day of September, 2005, I caused a copy of the foregoing "Defendant's First Set of Interrogatories and Requests for the Production of Documents," to be sent by facsimile to the number indicated below, and (ii) that, on the 29th day of September, 2005, I caused a copy of the same document to be placed in the United States mail (first-class postage prepaid) addressed as follows:

Thomas A. Lemmer, Esq.
Counsel for Plaintiff Lucent Technologies Inc.
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, Colorado 80202
Facsimile: 303.634.4400