IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| LUCENT TECHNOLOGIES INC.<br>Plaintiff,<br>vs.<br>UNITED STATES,<br>Defendant. | |
| AT&T CORP.<br>Plaintiff,<br>vs.<br>UNITED STATES,<br>Defendant. | Case Nos. 04-1511C and 04-1512C<br>(Judge Braden) |

**DECLARATION OF ANGEL S. MARSHALL**

I, Angel S. Marshall, declare as follows:

1. I am currently the Special Programs Financial Manager in the Lucent Technologies Inc. ("Lucent") Government Solutions unit. From the fall of 1999 through February 14, 2006, I was the Special Programs Financial Manager and Audit Liaison for Lucent. The Special Programs unit is a group within Lucent responsible for Cost Accounting Standards ("CAS") covered contracts with the U.S. Government, including the active contracts performed by Lucent's Advanced Technology Systems unit that were not transferred to General Dynamics. In my prior position, I was responsible for the submission of overhead rates for CAS covered contracts for Lucent, the preparation and

administration of our CAS Disclosure Statement and implementation of the practices therein, the liaison with the government on audit matters relating to our CAS covered contracts and the negotiation of forward pricing and final overhead rates with the government.

2. As a result of my experiences, I have personal knowledge of Lucent's CAS covered government contracts, accounting systems, cost accounting disclosure practices and government audits of the pension cost submissions, including the audits and reviews performed by the government in connection with indirect cost submissions and forecasted rate submissions, the negotiation of final overhead rates, specific contracts under performance and costs allocated thereto, and the CAS Disclosure Statements. As a result of the position I occupied in the fall of 1999, I became acquainted with files and records relating to such matters at Lucent prior to such time.

3. I have reviewed and am familiar with Defendant United States' (the "government") personnel involved in the negotiation and review process described above, including the Administrative Contracting Officer responsible for Lucent's CAS covered contracts and his staff and the Defense Contract Audit Agency (DCAA) representatives responsible for audits and reviews of such contracts.

4. For each of the years starting in fiscal year 2000 through the present year, Lucent collected and submitted to the government indirect cost submissions calculated in accordance with the relevant governing regulations (FAR and CAS) and specifically CAS 412 and 413, which were then audited by the government as part of the process involved

in establishing final indirect cost rates. These submissions identified relevant indirect costs encompassing security accruals, including relevant pension costs. The indirect costs included in such submissions were supported by listings of assets being depreciated. These submissions also identified all contracts under performance in a given fiscal year and the direct costs allocated to those contracts. The indirect rates reflected the direct labor charges by personnel to CAS covered contracts which charges were subject to examination by the government through floor checks, incurred cost and direct contract audits and master rate listings. The master rate listings provide the average salary by functional level with supporting detail to allow the government to review the salaries of individuals charging contracts within the segment. Together with the direct contract audits, the government could verify the specific charges of individuals to Lucent contracts, including those ATS personnel who worked on CAS covered contracts and continued with Lucent to perform on the same contracts retained by Lucent after the transaction with General Dynamics. Specific audits performed by the government include Lucent's accounting system, security accrual rates, forward pricing rates, direct contracts, purchasing system and, as described in greater detail below, its CAS Disclosure Statements.

5. With respect to the records of my predecessors in the audit liaison function for Lucent, I have had the opportunity to review documents related to final overhead rate agreements for years 1996 through 1999, including the identification of relevant pension costs included in our security accrual rates for such years. My review indicates that for

such years the government was furnished either summaries or forecasts of CAS covered contracts or business levels for such years with security accrual rates, including relevant pension and other benefit costs, and the government had the opportunity to examine and audit such material.

6. Lucent's security accruals were also the subject of Lucent's CAS Disclosure Statements which have been filed by Lucent with the Government in 1996, 1997, and 2000 culminating in its present Cost Accounting Disclosure Statement deemed adequate by the government on May 24, 2002. These CAS Disclosure Statements have been audited by the government and have been the subject of numerous reviews and requests for revision by the government. Specifically, Lucent's CAS Disclosure Statements include descriptions of Lucent's cost accounting practices relating to pensions and depreciation.

7. In connection with the examination of the indirect cost submissions, the audit of the CAS Disclosure statements and the negotiation of final overhead rates, the government has performed security accrual rate audit and reviews, has been furnished specific information regarding the costs generated by the pension plans and their impact on government contracts and a listing of contracts subject to CAS coverage.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of June, 2006.

Angel S. Marshall