## PREAMBLE A

**Original Publication, 9-24-75**

The following is the preamble to the original publication of Part 412, 40 FR 43873, Sept. 24, 1975.

The Cost Accounting Standard on Composition and Measurement of Pension Cost is one of a series being promulgated by the Cost Accounting Standards Board pursuant to section 715 of the Defense Production Act of 1950, as amended, Pub. L. 91-379, 50 U.S.C. app. 2168, which provides for the development of Cost Accounting Standards to be used in connection with negotiated national defense contracts. This Standard establishes the components of pension cost; the bases for measuring such cost, and the criteria for assigning pension costs to cost accounting periods.

As part of the Board's early research relating to the subject of pension costs, it developed an Issues Paper in August 1973, and a preliminary draft Standard in September 1974. Both the Issues Paper and preliminary Standard were sent to a large cross-section of companies, Government agencies, industry and professional associations, actuaries, and other interested individuals. The Board received responses to these research papers which were useful in identifying the key issues involved in pension cost accounting and in developing a proposed Standard which was published in the FEDERAL REGISTER of May 5, 1975, with an invitation to interested parties to submit written views and comments to the Board. The Board also supplemented the invitation in the FEDERAL REGISTER by sending copies of the proposed Standard to several hundred organizations and individuals who had provided the Board with comments on the preliminary proposal or who had otherwise expressed interest in the subject of the Standard.

The Board received 80 sets of written comments from companies, Government agencies, professional associations, industry associations, public accounting firms, universities, actuaries and others in response to the FEDERAL REGISTER proposal. All of these comments have been carefully considered by the Board. The Board's views on each of the major issues discussed by commentators are outlined below, together with explanations of the changes made in the Cost Accounting Standard being promulgated.

The Board wishes to take this opportunity to express its appreciation for the helpful suggestions and constructive criticisms it has received, and for the time devoted to assisting the Board in this endeavor by the many organizations and individuals involved.

### (1) RELATIONSHIP TO THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 AND TO GENERALLY ACCEPTED ACCOUNTING PRINCIPLES

The Board received a variety of comments relative to the relationship between the proposed Standard, the Employee Retirement Income Security Act of 1974 (ERISA), and generally accepted accounting principles set forth in "Accounting for the Cost of Pension Plans," Opinion No. 8 by the Accounting Principles Board (APB-8). Some stated that, with the enactment of ERISA, Congress has expressed its will relative to pensions and a Cost Accounting Standard on pension costs which is different than ERISA is unnecessary. Others stated that APB-8 is a viable and proven document which provides sufficient guidance for both financial accounting and cost accounting purposes. Others stated that the combination of ERISA and APB-8 provides all the guidance needed for cost accounting purposes. Still others stated that a Standard should be deferred until the Federal regulations required by ERISA have been promulgated, and/or the Financial Accounting Standards Board (FASB) completes its reevaluation of APB-8.

The purpose of the Board in promulgating this Standard is to establish the accounting bases for measuring the proper amount of pension cost to be assigned to cost accounting periods for subsequent allocation to negotiated Government contracts.

ERISA establishes, among other things, minimum funding standards for pension plans and provisions affecting deductibility of pension costs for tax purposes. Although there is



311-003 O—92——14

some commonality between the funding provisions of ERISA and the provisions of the Standard, ERISA does not provide for the measurement of pension costs for assignment among cost accounting periods or for the subsequent allocation of such costs to contracts. Accordingly, the Standard contains requirements, not contained in ERISA, to accomplish these purposes. Nevertheless, on the basis of its research, the Board is confident that the Standard being promulgated is compatible with the requirements of ERISA, i.e., compliance with the provisions of the Standard does not violate the provisions of ERISA, although certain provisions of the Standard are more restrictive than is permitted by ERISA.

APB-8 provides criteria for accounting for the cost of pension plans for financial accounting purposes. The Board believes that certain of these criteria are not appropriate for Government contract costing purposes. For example, a fundamental concept of APB-8 is that the annual pension cost to be charged to expense for financial accounting purposes is not necessarily determined by the funding of a pension plan. The Board believes that a requirement of law for annual minimum funding of pension costs on an irrevocable basis, is strong evidence that an obligation for at least such period.

The Board is aware of the FASB's projects to establish financial accounting and reporting Standards for employee benefit plans and to reevaluate APB-8, as well as the need for the cognizant Government agencies to develop regulations relative to ERISA. It is our understanding that the FASB reevaluation of APB-8 is not likely to result in a Standard that would be applicable before the end of calendar year 1976. The Board believes, however, that the issuance of a Cost Accounting Standard is needed promptly for contract costing purposes.

For example, there does not now exist any authoritative guidance which sets forth the components of pension cost that are properly includable and excludable for contract costing purposes. In addition, there are no existing criteria to resolve how the components of pension cost, once determined, shall be measured and assigned to cost accounting periods. The need for such measurement and assignment criteria for contracts is particularly critical because of the long-range projections used in computing pension cost and because the many techniques available for measuring and assigning such cost have significant impacts thereon. The significant amounts involved in annual pension cost calculations, the changes in the mix of contractors' Government and commercial business, and the settlement of individual contracts long before actual pension costs can be determined create a special need to provide criteria relative to the assignment of pension costs among cost accounting periods and the allocation of such costs to the cost objectives of the periods.

In developing the accompanying Cost Accounting Standard, the Board has attempted to stay within the general constraints of APB-8 and the funding provisions of ERISA. The Board recognizes that in the FASB's reconsideration of APB-8, the FASB could make significant changes in the manner in which pension costs are to be treated for financial accounting purposes and that the FASB's project on financial accounting and reporting for employee benefit plans may influence the conclusions reached in the reevaluation of APB-8. However, any such changes would be directed to external financial reporting and would not necessarily impact contract costing. The Board is also aware that Federal regulations which may be issued could conflict with a provision of this Standard. The Board maintains constant liaison with the FASB with regard to the two Boards' respective responsibilities for developing Standards. It also maintains liaison with the legislative and regulatory bodies responsible for developing and administering ERISA. The Board will review whatever pronouncements these bodies may issue and will make whatever revisions to the Standard it deems appropriate for contract costing purposes.

(2) NEED FOR TWO STANDARDS RELATIVE TO PENSION COST

Several commentators suggested that this Standard should deal not only with the composition and measurement of pension cost, but also with actuarial gains and losses[1] and the allocation of pension costs. The Board believes that the development of a separate Standard covering the latter two areas is advisable. First, the development of a single Standard would result in an extremely large and complex Standard that could create many problems in implementation and administration. For example, the Issues Paper developed by the Board set forth a total of 50 distinct accounting issues requiring resolution; the Standard being promulgated covers only 24 of these issues. In addition, the Board believes that the subjects covered by the two Standards are separable; a Standard can be issued relative to the composition and measurement of pension cost without creating a concurrent need for a Standard relative to the adjustment and allocation of such costs. Moreover, in computing actuarial gains and losses, it is necessary to determine how fund assets should be valued. APB-8 does not cover this aspect of pension cost accounting. In its project on accounting for pension funds, the FASB is endeavoring to specify the manner in which assets should be valued. The Board intends, as part of its continuing liaison with the FASB on this matter, to exchange research so that any possible differences in concept or approach could be minimized or eliminated entirely.

(3) TREATMENT OF ACTUARIAL GAINS AND LOSSES

The FEDERAL REGISTER proposal noted that an adjustment for actuarial gains or losses is a component of pension cost. Several commentators expressed concern over the Board's intent. Some commentators interpreted the proposed Standard as requiring that actuarial gains and losses be spread over a number of years. Other commentators believed that the proposed Standard required the immediate recognition of actuarial gains and losses.

The Board emphasizes that the Standard does not delineate how actuarial gains and losses shall be accounted for at this time. The Standard being promulgated neither requires nor prohibits immediate recognition of gains and losses or the spreading of such gains and losses to future years. Therefore, actuarial gains and losses should be accounted for in accordance with pertinent laws and regulations, and should be consistently applied. Section 412.50(a)(5) has been amended to clarify this concept.

(4) ACTUARIAL COST METHODS[2]

Many commentators expressed their concern over the section of the FEDERAL REGISTER proposal which limited acceptable actuarial cost methods to the accrued benefit cost method[3] or to a projected benefit cost method[4] which separately identifies unfunded actuarial liabilities[5] and actuarial gains and

[1] "The effect on pension cost resulting from differences between actuarial assumptions and actual experience."

[2] "A technique which uses actuarial assumptions to measure the present value of future pension benefits and pension fund administrative expenses, and which assigns the cost of such benefits and expenses to cost accounting periods."

[3] "An actuarial cost method under which units of benefit are assigned to each cost accounting period and are valued as they accrue—that is, based on the services performed by each employee in the period involved. The measure of normal cost under this method for each cost accounting period is the present value of the units of benefit deemed to be credited to employees for service in that period. The measure of the actuarial liability at a plan's inception date is the present value of the units of benefit credited to employees for service prior to that date. (This method is also known as the Unit Credit cost method.)"

[4] "Any of the several actuarial cost methods which distribute the estimated total cost of all of the employees' prospective benefits over a period of years, usually their working careers."

[5] "Pension cost attributable, under the actuarial cost method in use, to years prior to the date of a particular actuarial valuation. As of such date, the actuarial liability represents the excess of the present value of the

*Continued*

losses. This section, in effect, ruled out the use of an aggregate[6] cost method for measuring pension costs for negotiated Government contracts. Most of these commentators noted that ERISA and APB-8 permit these methods to be used.

The Board's primary reason for prohibiting the use of an aggregate cost method in the proposed Standard was because such a method does not disclose actuarial gains and losses. Any method that does not disclose actuarial gains and losses impairs the ability to determine whether actuarial assumptions[7] are reasonable. Actuarial assumptions are significant underlying factors for determining the amount of pension costs to be assigned among cost accounting periods. It is only when such assumptions are visible that a determination can be made that they are reasonable. The most appropriate means for determining such reasonableness is to compare assumed events with actual events.

Also, because most aggregate cost methods do not develop unfunded actuarial liabilities, the Government cannot ascertain the funding status of a plan, i.e., whether it is excessively funded at any point in time. Consequently, the Government could be making larger reimbursements than is required to defray its fair share of pension costs incurred by contractors. Many of the comments received acknowledge that most aggregate cost methods do not disclose overfunded situations.

Nevertheless, the Board is impressed by certain of the views of commentators who advocate the use of an aggregate methods. The Board recognizes that aggregate methods are widely used and that they generally spread pension costs evenly and within the periods established in the Standard for amortizing unfunded actuarial liabilities. The Board also notes that commentators stated that a required change in actuarial cost methods may result in substantial actuarial fees and, in some cases, could result in contractors violating current labor commitments.

The Board's solution to this problem was provided generally in several of the comments received. First, several commentators who recognized that an aggregate cost method does not disclose the funding status of a plan, suggested that contractors using such a cost method develop an alternative computation to determine such status. They pointed out that such a computation is required under the full funding limitation of ERISA and is often required by the IRS when it believes a plan may be overfunded.

Other commentators suggested that contractors who use an aggregate cost method provide supplemental information identifying actuarial gains and losses that have occurred and the extent to which such gains and losses have been amortized through subsequent pension contributions or offset by gains and losses in subsequent accounting periods. These commentators informed us that the incremental costs of providing such additional information would be relatively minor.

Accordingly, the Board has added a section, (§ 412.50(b)(2)) which permits a contractor to use any projected benefit cost method if the contractor (1) makes an alternative computation (under a projected benefit cost method which separately discloses unfunded actuarial liabilities and actuarial gains and losses) to disclose the funding status of the plan and reduce pension cost as indicated by such computation, (2) provides supplemental information relative to actuarial gains and losses and gains or losses resulting from changed actuarial assumptions, and (3) uses that method in developing costs for financial accounting purposes.

---

future benefits and administrative expenses over the present value of future contributions for the normal cost for all plan participants and beneficiaries. The excess of the actuarial liability over the value of the assets of a pension plan is the Unfunded Actuarial Liability."

[6] As used herein, an aggregate cost method is any actuarial cost method which spreads the entire cost of future pension benefits over the average future service lives of the current work force and which does not develop actuarial gains or losses.

[7] "A prediction of future conditions affecting pension cost; for example, mortality rate, employee turnover, compensation levels, pension fund earnings, changes in values of pension fund assets."

The third requirement was added because the Board has tried unsuccessfully to ascertain criteria for determining the circumstances under which an aggregate cost method is a preferable method for assigning costs to cost accounting periods for Government contracting purposes.

Finally, to assure that the aggregate cost method used spreads pension costs within the time frames set forth in this Standard for other projected benefit cost methods, § 412.50(b)(2) requires that such aggregate cost methods spread the cost of future pension benefits over the average remaining working lives of the work force.

(5) ACTUARIAL ASSUMPTIONS

A large number of commentators were concerned with the manner in which the FEDERAL REGISTER proposal dealt with actuarial assumptions. They were particularly concerned with that provision of the proposed Standard which stated that when an actuarial assumption differs significantly from historical experience, the contractor shall provide evidence supporting its conclusion that such experience is no longer appropriate. Most commentators who objected to this provision in the Standard interpreted it as requiring separate gain and loss analyses for each assumption each time an actuarial valuation is performed. They cited the large cost of performing such analyses and noted that ERISA merely requires that actuarial assumptions be reasonable "in the aggregate."

Although the Board believes that the basis and rationale for each assumption should be made visible by contractors, it believes that the test of reasonableness of such assumptions should be applied to the end result. It is not the intent of the Board to require a separate gain or loss analysis for each assumption each time an actuarial valuation is made. Rather, the intent is that contractors not use an undocumented composite factor to represent all assumptions used in measuring pension costs, as this practice would inhibit any evaluation of the reasonableness of individual assumptions as applied to future periods. Such evaluations may be necessary when assumptions, taken in the aggregate, are found to be unreasonable, as discussed below.

Once individual actuarial assumptions have been set forth by contractors, the Board believes that the validity of these assumptions can be evaluated by the overall results obtained. Therefore, the Standard provides that the validity of the assumptions used may be evaluated in the aggregate. However, if an actuarial valuation discloses that the assumptions were not reasonable in the aggregate, the Standard requires that the contractor shall identify the major causes for the resultant actuarial gains and losses and set forth the bases and rationale used for either retaining or revising each such assumption.

In order to recognize the long-term nature of pension plans, the Standard provides in § 412.50(b)(5) that actuarial assumptions should reflect long-term trends, rather than short-term fluctuations. Also, the Standard does not specify how often determinations of actuarial gains and losses should be made. ERISA provisions require that such determinations be made not less frequently than once every three years except that more frequent determinations may be prescribed by regulation in particular cases, i.e., for plans which have sustained substantial gains or losses for several periods in succession. The Board believes that the ERISA requirements with respect to the frequency of determinations for gains and losses is equally appropriate for compliance with the provisions of the Standard at this time.

In addition to the foregoing, several commentators stated that the Standard should provide that the judgment of enrolled actuaries, as set forth in ERISA, should be determinate with respect to assumptions as well as other actuarial determinations. The Board recognizes the importance of the functions performed by enrolled actuaries with respect to actuarial determinations. However, contract terms are not imposed on actuaries; rather, it is the contractors who are parties to contracts with the Government and must bear the responsibility for compliance with the terms thereof.

(6) CALCULATIONS OF NORMAL COST [8]

The FEDERAL REGISTER proposal provided that the calculations of normal cost should be the sum of the calculations for the individual employees in the plan, except that homogeneous groupings and averages could be used if the results substantially agree with the results based on individual employee calculations. A number of commentators objected to this provision. They said that it would appear to require that two calculations be made in order to show that the use of groupings and averages gives results that agree with the results based on individual employee calculations. Some commentators stated that this requirement is unrealistic because actuaries frequently use aggregate calculations and that such aggregations can be tested against individual company or industry-wide experience. Other commentators stated that this provision would result in a single calculation for determining the assumed entry age of planned participants.

The comments received indicate that there are divergent opinions as to how normal costs shall be calculated under projected benefit cost methods. Nevertheless, the Board concludes that the methods commonly used would not materially affect the results of normal cost calculations. Accordingly, the requirement to compute normal costs on an individual basis for projected benefit cost methods has been deleted from the Standard.

The proposed Standard provided also that the calculation of normal cost shall be based on a percentage of payroll. Many commentators stated that this requirement does not recognize the fact that many pension benefits are not related to salaries. In order to accommodate these views, the Board has revised the Standard (§ 412.50(b)(3)) to provide that the calculation of normal cost shall be based on a percentage of payroll for plans where the pension benefit is a function of salaries and wages and be based on employee service for plans where the pension benefit is not related to salaries and wages.

(7) PAY-AS-YOU-GO PENSION METHODS [9]

Several commentators apparently assumed that the FEDERAL REGISTER proposal prohibited the recognition of pension costs of plans that provide benefits on a pay-as-you-go basis. One commentator stated that the Standard prohibited the recognition of the costs of pay-as-you-go plans which are not qualified for Federal income tax purposes.

The Board's view, as expressed in the FEDERAL REGISTER proposal, is not to prohibit recognizing the cost of pension benefits provided on a pay-as-you-go basis. Rather, the Board's intent is to specify how the cost of such benefits shall be measured and assigned among cost accounting periods. Moreover, the accounting treatment to be afforded to the costs of pay-as-you-go plans is not dependent on the Federal income tax status of the plan.

Accordingly, the Board has revised the provisions of the Standard relative to pay-as-you-go methods (§ 412.50(b)(4)) and has added an illustration (§ 412.60(b)(2)) to clarify its intent.

(8) UNALLOWABLE PENSION COSTS

The FEDERAL REGISTER proposal provided that the pension costs applicable to prior years that were disallowed in accordance with then-existing Government contractual provisions should be separately identified and eliminated from any unfunded actuarial liability being amortized pursuant to the provisions of the Standard. Several commentators stated that this provision is not equitable because ERISA requires that such amounts be funded.

The Board recognizes that all elements comprising an unfunded actuarial liability, including unallowable costs included therein, are required to be amortized pursuant to the funding provisions of ERISA. However, ERISA does not deal with contract costing and therefore does not deal with unallowable contract costs. The Board be-

[8] "The annual cost attributable, under the actuarial cost method in use, to years subsequent to a particular valuation date."

[9] "A method of recognizing pension cost only when benefits are paid to retired employees or their beneficiaries."

lieves that for contract costing purposes, pension costs which were assignable to prior periods and which were specifically determined to be unallowable under then-existing contractual provisions should not be assignable to periods subsequent to the effective date of this Standard. It should be noted that the treatment of amounts funded in excess of the pension cost for a cost accounting period is separately covered in § 412.50(c)(1).

(9) AMORTIZATION OF UNFUNDED ACTUARIAL LIABILITIES

The FEDERAL REGISTER proposal included a provision requiring contractors to establish and consistently follow a policy for selecting specific amortization periods for any unfunded actuarial liabilities. The proposed Standard stated that such policy should give consideration to the size and nature of unfunded actuarial liabilities. Several commentators stated that they did not believe that the size and nature of such liabilities should govern the choice of amortization periods. The Board's intent was to permit contractors to establish different amortization periods for different types and sizes of unfunded actuarial liabilities. The Board still believes that contractors should be permitted to establish such different amortization periods. Accordingly, the Standard has been revised (§ 412.50(a)(3)) to clarify that such determinations are permissive rather than mandatory.

(10) INTEREST RESULTING FROM DELAYED FUNDING OF PENSION PLANS

The FEDERAL REGISTER proposal provided that if any portion of pension cost computed for a cost accounting period is not funded by the time established by the funding provisions of the plan, an interest equivalent on the amount not funded shall not be a component of pension cost of any other cost accounting period. Several commentators stated that this provision is inequitable because, in order for a pension plan to be viable, an amount equivalent to interest should be added to pension costs to compensate the fund for interest that would have been earned if the cost had been funded in a timely manner. Some commentators added that APB-8 requires that interest equivalents be added to pension accruals under such circumstances. Still others understood the proposed Standard to say that such interest equivalent is not a cost; they therefore disagreed with the proposed Standard.

The Board agrees that an interest equivalent should be recognized in order to determine whether the plan is properly funded. However, the Board believes that interest cost resulting from the delayed funding of a pension plan is a consequence of an investment decision and is, therefore, an investment cost rather than a component of pension cost. The interest was caused by a decision of management to use its funds for other purposes; in effect, management borrowed from the pension trust fund.

Several commentators stated that they compute pension cost at the beginning of a cost accounting period and add interest at the valuation rate to the normal cost to the date of funding. They questioned whether the Standard would prohibit this practice. The Standard being promulgated does not prohibit this practice: *Provided*, That funding is made by the end of the cost accounting period. Accordingly, the Board has amended § 412.50(a)(7) to state that if any portion of the cost computed for a cost accounting period is not funded in that period an amount equivalent to interest computed on that portion beyond the end of that period shall not be a component of pension cost of the current or any future cost accounting period.

(11) ASSIGNMENT OF PENSION COST

Certain commentators expressed their disagreement with the sections of the FEDERAL REGISTER proposal dealing with the assignment of pension costs among cost accounting periods. The concept set forth in the proposal related in the assignment of costs to the validity of the liability for such costs. Commentators referred to the concept set forthin APB-8 that the accrual of pension expenses and the funding of pensions are not necessarily related. They stated that cost should be assigned to cost accounting

periods irrespective of whether or when funded.

The Board believes that assigning pension costs to cost accounting periods on a cash basis is inappropriate from an accounting viewpoint and could lead to the improper assignment of pension costs among periods. The Board believes also that the concept which states that funding is unrelated to pension accruals is not appropriate for contract costing because, under such a concept, pension costs could be assigned to cost accounting periods and never be funded; yet such costs would be reimbursed by the Government.

The underlying concept of the Standard is that when a valid liability exists, the corresponding costs may be accrued irrespective of when the liability is liquidated. If the liability (to the pension fund or, for pay-as-you-go plans, to retirees) is not valid, it cannot be accrued; in order for it to be allocated to cost objectives of the current period, it must be liquidated (funded) in that period or within a reasonable period of time thereafter. In order to clarify its intent with regard to the allocation of pension costs to cost objectives of individual cost accounting periods, the Board has revised the wording of § 412.40(c) of the Standard.

In the FEDERAL REGISTER proposal, the Board noted that the requirement to fund a pension cost pursuant to ERISA made the liability valid and therefore made the cost assignable to the current period. Several commentators stated that ERISA permits such costs to be waived and funded over a 15-year period. They reasoned that under such circumstances it is no longer appropriate to assign such pension cost in the year for which such costs were computed. The Board believes that if the financial position of a contractor is such that it requests and obtains such a waiver there is doubt as to validity of the liability and therefore of the cost incurred. Accordingly, it has amended the Standard to provide, in § 412.50(c)(3), that if a contractor receives such a waiver the pension costs shall be assigned to the cost accounting periods in which the funding of such cost takes place.

(12) INSURED PLANS

Several commentators stated that the section of the FEDERAL REGISTER proposal dealing with insured plans was confusing. They stated that the definition of a "separate insurance account" set forth in the proposed Standard conflicted with this section. Commentators stated that this section would seem to eliminate from the major requirements of this Standard various forms of insured plans such as deposit administration and immediate participation guarantee contracts.

The Board's intent with regard to insured plans is to treat defined-benefit plans[10] funded exclusively by the purchase of individual or group permanent insurance contracts as defined-contribution plans.[11] The Board's view relative to such plans is consistent with ERISA whose minimum funding requirements are not applicable tc these plans. All other insured pensior plans are subject to the provisions oi this Standard. The Board has revisec § 412.50(a)(8) accordingly and has eliminated the definition of separate insurance account.

(13) DEFINITIONS

The Board has received a significan number of comments relative to the definitions used in the Standard. Some commentators stated that the Boarc should use the definitions contained ir ERISA. Others stated that the Boarc should use the APB-8 definitions. Stil others recommended that the Boarc should establish a single glossary o: actuarial terms.

The Board recognizes that a majo: problem in the field of pension ac counting has been the use of variou terms which have the same meaning For example, the term "prior servic costs" used in APB-8, "past servic costs" used in ASPR, "accrued liabil ity" used in ERISA, and "supplemen

[10] "A pension plan in which the benefits t be paid or the basis for determining suc benefits are established in advance and th contributions are intended to provide th stated benefits."

[11] "A pension plan in which the contribu tions to be made are established in advanc and the benefits are determined thereby."

tal liability" used by many actuaries have virtually the same meaning. In researching the definitions currently in use, the Board noted that one factor seemed to prevail: The glossaries in use were tailor-made for the particular documents which applied to the terms. For example, the definitions in APB-8 were written in the context of the way in which the words were intended for use in that Opinion. Similarly, the definitions used in ERISA were fashioned to be in consonance with the specific provision of the Act. The Board's primary objective in developing the definitions in this Standard is similar; the definitions should help provide a clear understanding of the concept used therein, while at the same time maintaining consistency with the thrust of the definitions used in APB-8 and ERISA.

The Board received some additional comments with regard to specific definitions set forth in the FEDERAL REGISTER proposal. One commentator expressed confusion at the terms "accrued pension liability" and "unfunded accrued pension liability" because the word "accrued" has a specific meaning in an accounting sense which is different than that intended in the Standard. The Board believes that this comment has merit and, accordingly, the Standard has been revised to use the terms "actuarial liability" and "unfunded actuarial liability."

Other commentators requested elaboration of the definition of a pension plan. Specifically, they questioned whether the definition is applicable to execute compensation plans, excess benefit plans, and other plans that may not be "qualified" for Federal income tax purposes. The Standard provides the accounting treatment for the cost of all pension plans which fall within the definition of a pension plan. Such accounting treatment is not contingent on the manner in which IRS may categorize plans for income tax purposes.

Several additional commentators questioned that portion of the definition of a pension plan which states that benefits shall be paid for life or be payable for life at the option of the employee. They questioned whether a life income settlement for an employee would fall within the meaning of this definition. The Board believes that such a settlement is, in effect, equivalent to a payment for life and thus falls within the intent of the definition.

(14) COSTS AND BENEFITS

The anticipated benefits of this Standard are improved cost measurement and increased consistency and uniformity in accounting for pension costs and assigning such costs to cost accounting periods, leading to increased assurance that the measured and assigned costs will be allocated to the proper cost objectives, including Government contracts.

When the preliminary draft Standard on pension cost was submitted to a wide cross-section of companies and individuals, the recipients were specifically asked to comment on the costs of implementing the Standard. The overwhelming majority of the respondents stated that the incremental costs of implementation should be small. In commenting on the proposed Standard published in the FEDERAL REGISTER, several respondents stated that the prohibition against use of an aggregate projected benefit cost method and the requirement to make annual gain or loss analyses of each actuarial assumption would involve additional administration costs of any significance. Since the Board has essentially eliminated these problem areas in the Standard, it believes that increased administrative costs occasioned by this Standard will be minimal. In summary, the Board believes that the benefits to be derived from this Standard clearly outweigh the costs of implementation.

The Board expects that this Standard will become effective on January 1, 1976.

There is also being published today an Amendment to Part 400, Definitions, to incorporate in that part terms defined in § 412.30(a) of this Cost Accounting Standard.

Part 412—Cost Accounting Standard for Composition and Measurement of Pension Cost is added to read as follows: