**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| LUCENT TECHNOLOGIES INC.,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES,<br><br>Defendant. | Case No. 04-1511C<br>(Judge Braden) |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION**
**TO PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT**

Thomas A. Lemmer
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202
(303) 634-4350
FAX: (303) 634-4400

ATTORNEY FOR PLAINTIFF
LUCENT TECHNOLOGIES INC.

OF COUNSEL:

Corey R. Sanchez
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202

Michael Garson
Lucent Technologies Inc.
8000 Towers Crescent Drive
Suite 400
Vienna, VA 22182

January 19, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

I. LUCENT'S MSJ ESTABLISHES THAT LUCENT DID NOT CLOSE A SEGMENT ..... 4

A. The Language in the Definition of Segment Closing and the Policy Behind Revised CAS 413 Establish that When Assets are Sold, a Segment Closing Occurs Only When All of a Segment's CAS-Covered Contracts and Assets are Sold ..... 5

B. Lucent Did Not Close a Segment ..... 7

II. THE GOVERNMENT FAILED TO ESTABLISH THAT A SEGMENT CLOSING OCCURRED ..... 8

A. The Government Failed to Rebut Lucent's Plain Meaning of the Definition of Segment Closing ..... 8

B. The Government's Argument Relating to the CAS Board's Intent Concerning Segment Closings has No Support in Regulatory History or Proper Contract Interpretation Rules ..... 9

1. The Government's Regulatory History Discussion Fails to Support Its Position and, Instead, Supports Lucent's Position ..... 10

2. The Government's Argument Ignores that a Segment Closing Must Occur Before a True-up of Pension Costs is Required ..... 13

3. The Government's Argument Fails to Acknowledge that CAS 413 is Intended to Operate Even When Only One CAS-Covered Contract Exists ..... 14

4. The Government's Argument has No Support Even Under Contract Interpretation Rules ..... 16

III. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Page**

## Cases

*Blue Cross & Blue Shield Ass'n v. United States*, 13 Cl. Ct. 710 (1987)....................................... 3

*Cathedral Candle Co. v. United States Int'l Trade Comm'n*, 400 F.3d 1352 (Fed. Cir. 2005)............................................................................................................................. 15

*F & D Prop. Co. v. Alkire*, 385 F.2d 97 (10th Cir. 1967)........................................................... 3

*Gibson v. United States*, 194 U.S. 182 (1904)................................................................................ 5

*Immigration & Naturalization Serv. v. Cardoza-Fonseca*, 480 U.S. 421 (1987)......................... 10

*Kearfott Guidance & Navigation Corp. v. Rumsfeld*, 320 F.3d 1369 (Fed. Cir. 2003).......... 15, 17

*Osage Tribe of Indians of Okla. v. United States*, 72 Fed. Cl. 629 (2006).................................... 7

*Perry v. Martin Marietta Corp.*, 47 F.3d 1134 (Fed. Cir. 1995)................................................... 5

*Peterson Builders, Inc. v. United States,* 26 Cl. Ct. 1227 (1992)................................................ 17

*Rumsfeld v. United Techs. Corp.*, 315 F.3d 1361 (Fed Cir. 2003)................................................ 8

*Russello v. United States*, 464 U.S. 16 (1983).................................................................................. 6

*Teledyne, Inc. v. United States*, 50 Fed. Cl. 155 (2001)....................................................... passim

*Tesoro Haw. Corp. v. United States*, 405 F.3d 1339 (Fed. Cir. 2005)...................................... 5, 9

*United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989)........................................................ 9

*Universal Studios LLLP v. Peters*, 308 F. Supp. 2d 1 (D.D.C. 2004)......................................... 17

## Rules

Fed. R. Civ. P. 56............................................................................................................................. 3

## Treatises

39 Fed. Reg. 44,389 (Dec. 24, 1974)............................................................................................. 17

57 Fed. Reg. 30,897 (July 13, 1992)........................................................................................... 16, 18

60 Fed. Reg. 16,534 (March 30, 1995)...................................................................................... 11, 12

**Page**

*Black's Law Dictionary* (6th ed. 1990) ........ 5, 6

**Regulations**

4 C.F.R. § 413.50(c)(12) ........ 6, 10, 12

4 C.F.R. Part 413, Preamble, § 12 (1992) ........ 12

48 C.F.R. § 9903.201 ........ 15

48 C.F.R. § 9903.201-1 ........ 17

48 C.F.R. § 9903.201-2 ........ 14, 17

48 C.F.R. § 9903.305 ........ 18

48 C.F.R. § 9904.413-30 ........ passim

48 C.F.R. § 9904.413-40 ........ 14

48 C.F.R. § 9904.413-50 ........ passim

48 C.F.R. § 9904.413-50(c)(12) ........ passim

48 C.F.R. § 9904.413-60 ........ 15

48 C.F.R. Part 401 ........ 18

48 C.F.R. Part 402 ........ 15, 18

48 C.F.R. Part 405 ........ 18

48 C.F.R. Part 412 ........ 14, 18

48 C.F.R. Part 413 ........ passim

48 C.F.R. Part 416 ........ 18

48 C.F.R. Part 418 ........ 18

48 C.F.R. Part 420 ........ 18

The issue before this Court on Lucent Technologies Inc.'s ("Lucent") Amended Motion for Summary Judgment ("Lucent's MSJ") is whether a "segment closing" occurred under 48 C.F.R. § 9904.413-30(a)(20). If no segment closing occurred, then the government has no entitlement to recovery from Lucent for an adjustment of previously determined pension costs pursuant to 48 C.F.R. § 9904.413-50(c)(12) (1996) ("Revised CAS 413"), and Lucent is entitled to summary judgment.

As Lucent's MSJ established, the plain meaning of the definition of "segment closing" and the Cost Accounting Standards ("CAS") Board's intent underlying the segment closing rules require the sale of all CAS-covered contracts and assets in order for a segment closing to occur. *See* Lucent's MSJ, pp. 9-21. The parties have stipulated that Lucent sold substantially all contracts under performance by, and substantial assets relating to, its Advanced Technology Systems ("ATS") business unit to General Dynamics Corporation ("GD") in 1997. The parties also have stipulated that Lucent retained one or more CAS-covered contracts and certain assets (*i.e.*, tangible and intangible assets and employees). Accordingly, no segment closing occurred, and Lucent is entitled to summary judgment that the government has no right of recovery under Revised CAS 413 because of Lucent's sale to GD.

The Defendant's Opposition to Plaintiff's Amended Motion for Summary Judgment (the "Government's Opposition") fails to establish that Lucent's position is incorrect. The government argues that 48 C.F.R. § 9904.413-30(a)(20) defines "segment closing," when assets are sold, to mean the sale of a "substantial" part of a business unit's assets. The government's legal position is wrong because it is based upon blatant factual distortions and improper legal arguments.

Among its various distortions of the stipulated facts, the government asserts that these stipulations establish, factually, that Lucent only retained "a single CAS-covered contract and related assets;" Lucent sold "a business unit" and as part of the sale, "transfer[ed] . . . substantially all the assets (contracts, tangible and intangible assets, and employees);" and ATS "ceased to exist as an operating unit . . . ." *See* Gov't Opp'n, pp. 6, 8, 15-17 (emphasis added). The government also asserts:

> More generally, if a company sells all of the contracts, assets, and employees of a division (retaining only a single contract, computer, and employee), no one would doubt that that division had been sold and closed. As a matter of business and economic reality, that is precisely what happened in this case.

*See* Gov't Opp'n, p. 8 (emphasis added); *see also* Gov't Opp'n, pp. 7 and 19 for further examples of fact distortions. Indeed, the government argues that the issue before the Court "is whether a contractor can defeat the Government's right to a CAS 413 segment-closing adjustment by selling a segment, and transferring substantially all of the segment's CAS-covered contracts and assets to the buyer, but not every single CAS-covered contract and related asset." Gov't Opp'n, p. 2 (emphasis added).

The parties' fact stipulations contain no such facts, as the government surely understands given that it agreed to the stipulations. The stipulations state that Lucent transferred "substantially all of ATS Business Unit's contracts under performance" and sold "other substantial assets," but "retained one or more CAS-covered contracts" that the ATS was performing and certain tangible and intangible assets and employees (*see* Lucent's MSJ, pp. 5-6). Thus, assertions regarding a "single contract," "sale of a business unit," "cessation of operations," "closure" and "selling a segment" have no support. Indeed, given that the issue before the Court on Lucent's MSJ is whether a segment closing occurred, it is obvious that the stipulated facts would not state that Lucent closed a segment (or did not close a segment).

Rather, the stipulations describe what occurred, and it is the application of the definition of "segment closing" to these facts that will determine whether, legally, Lucent is entitled to summary judgment or proceedings must continue to develop facts appropriate for assessing whether under the government's "substantial" test, Lucent closed a segment. The government's distortion of facts that it stipulated to is clearly improper and provides no basis for the legal arguments in the Government's Opposition. *F & D Prop. Co. v. Alkire*, 385 F.2d 97, 100 (10th Cir. 1967) ("facts stipulated to by the parties may not be disregarded and are to be considered as facts in the case without resort to further evidence" such as inferences related to those facts); Fed. R. Civ. P. 56(c) (judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and <u>admissions</u> on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law (emphasis added)).[1]

The government's legal position is improper because it nowhere addresses the meaning of the words in the CAS 413 definition of segment closing. Rather, against the backdrop of its fact distortions, the government argues that because the CAS Board intended that previously determined pension costs be adjusted upon a segment closing, the CAS Board had to have intended that the sale of "substantial" contracts and assets is a segment closing because, otherwise, the government would be deprived of its right to adjust pension assets. This circular reasoning, of course, establishes nothing regarding the meaning of a segment closing.

This government reasoning also assumes, incorrectly, that if no segment closing were to occur at any given point, no government right to participate in adjustments to previously

---

[1] To the extent that the government believes its distortions are appropriate inferences (*see* Gov't Opp'n, p. 3), the citations in the text establish that inferences from stipulations are not proper. *See also Blue Cross & Blue Shield Ass'n v. United States*, 13 Cl. Ct. 710 (1987) (recognition of binding nature of fact stipulations).

determined pension costs would exist. This is incorrect because participation in adjustments to previously determined pension costs occurs in the ordinary course under CAS until a segment closing occurs and then an immediate adjustment of previously determined pension costs occurs. *See* Lucent's MSJ, pp. 16-21. Thus, the issue of whether a segment closing occurred is never one of deprivation, but only of timing regarding when an immediate adjustment is necessary. Arguing the CAS Board's intent based upon a deprivation concept, therefore, again establishes nothing regarding the meaning of segment closing. The government's failure to address the plain meaning of the definition of segment closure, its reliance on improper interpretations of the regulatory history and its reliance on distortions of the stipulated facts to "color" its legal argument, establish that this Court should reject the government's "substantial" test argument and enter summary judgment for Lucent, as further explained below.[2]

## I. LUCENT'S MSJ ESTABLISHES THAT LUCENT DID NOT CLOSE A SEGMENT

As explained in Lucent's MSJ, the plain meaning of the CAS 413 definition of "segment closing" is that no segment closing occurs when less than all of a segment's CAS-covered contracts and assets are sold, and the policy of Revised CAS 413 supports that conclusion. Because the stipulated facts establish a sale of less than 100% of the ATS CAS-covered contracts and assets, no segment closing occurred.

[2] As stated in note 3 in Lucent's MSJ, should the Court deny Lucent's motion and find that a "substantial" standard exists, Lucent reserves the right to argue that Lucent did not close a segment under that standard and that ATS was not a segment.

### A. The Language in the Definition of Segment Closing and the Policy Behind Revised CAS 413 Establish that When Assets are Sold, a Segment Closing Occurs Only When All of a Segment's CAS-Covered Contracts and Assets are Sold

Lucent's MSJ applied the appropriate legal analysis for determining the meaning of the definition of "segment closing" in CAS 413 by beginning with the definition's plain meaning, which is the key to the interpretation of a regulation. *See* Lucent's MSJ, pp. 8-9. Lucent then established consistency between that plain meaning and the CAS Board's intent of creating a requirement for an adjustment of previously determined pension costs upon a segment closing. *See* Lucent's MSJ, pp. 16-21. Thus, the plain meaning of segment closing explained in Lucent's MSJ should control. *See Tesoro Haw. Corp. v. United States*, 405 F.3d 1339, 1347 (Fed. Cir. 2005), *citing Gibson v. United States*, 194 U.S. 182, 185 (1904) (it is the duty of the court to enforce the regulation according to its obvious terms when there is no ambiguity); *Perry v. Martin Marietta Corp.*, 47 F.3d 1134, 1137 (Fed. Cir. 1995) (same).

Lucent's MSJ established that the words used and not used in the CAS definition of segment closing mean that a sale of assets results in a segment closing only when all of the segment's CAS-covered contracts and assets have been sold. *See* Lucent's MSJ, pp. 8-12. Specifically, CAS 413 states that a segment closing occurs in the context of a sale when "a segment has . . . (i) been sold or ownership has been otherwise transferred . . . ." As Lucent's MSJ explained, "sold" means that all title has passed to a separate entity. *See* Lucent's MSJ, p. 11. If CAS-covered contracts and assets remain, then not all title has passed and there is not a complete transfer of ownership. *See id*. (*citing Black's Law Dictionary* 1337 (6th ed. 1990)).

Moreover, the definition of segment closing addresses circumstances other than a sale, stating that a segment closing occurs when a segment has "(ii) discontinued operations, or (iii) discontinued doing or actively seeking Government business under contracts subject to"

CAS 413. *See* 48 C.F.R. § 9904.413-30(a)(20)(i)-(iii). As Lucent's MSJ explained, discontinuance means an end, and end means products and services are no longer provided. *See* Lucent's MSJ, p. 10 (*citing Black's Law Dictionary* 464-65 (6th ed. 1990)). Thus, the words used in the definition of segment closing plainly mean that a segment closing occurs only when nothing remains, which means that no CAS-covered contracts remain under performance and no assets remain that permit performance of CAS-covered contracts.

Consistent with the meaning of the words used in the definition of "segment closing" is the meaning based upon the words not used in this definition. As Lucent explained, the definition of segment closing contains no words of qualification or limitation, such as "substantial" or "material." *See* Lucent's MSJ, pp. 2-15. By itself, that fact shows that words of qualification should not be implied in the definition. *See* Lucent's MSJ, pp. 14-16.

In addition, Lucent also established that the CAS Board chose deliberately not to use words of qualification when it decided to reject the inclusion of the term "substantially all" in the predecessor definition of segment closing found at 4 C.F.R. § 413.50(c)(12). *See* Lucent's MSJ, p. 14. This intentional omission is very important to the meaning of the definition of segment closing. *See, e.g., Russello v. United States*, 464 U.S. 16, 23 (1983) (legislative intent shown by omission of language); *Teledyne, Inc. v. United States*, 50 Fed. Cl. 155, 178 (2001) (4 C.F.R. § 413.50(c)(12) should not be read to imply recovery under firm, fixed-price contracts when the CAS Board declined to include such contracts within the scope of that provision). Accordingly, the plain meaning of the definition of segment closing is that when assets are sold, a segment closing occurs only when 100% of CAS-covered contracts and assets are sold.

Lucent's MSJ also established that the CAS Board's intent relating to the Revised CAS 413 requirement for an immediate adjustment of previously determined pension costs upon a

segment closing is consistent with the plain meaning of the definition of segment closing. *See* Lucent's MSJ, pp. 16-21. This consistency is important to interpreting a regulation. *See Osage Tribe of Indians of Okla. v. United States*, 72 Fed. Cl. 629, 649 (2006).

In this regard, the CAS Board believed that it is necessary to adjust previously determined pension costs whenever the standard requirement of making such adjustments over the future will not occur. *See Teledyne*, 50 Fed. Cl. at 164; Lucent's MSJ, pp. 16-21. The CAS Board concluded that future adjustments will not occur when there is no future accounting period in which a CAS-covered contract may be performed, thereby preventing continued allocation of any necessary future adjustments of previously determined pension costs to CAS-covered contracts. *See* Lucent's MSJ, p. 19. Thus, a segment closing adjustment is only required when there are no CAS-covered contracts remaining, or likely in the future using retained assets, under which previously determined pension costs could be adjusted.

### B. <u>Lucent Did Not Close a Segment</u>

As established in Lucent's MSJ and restated above, there is a segment closing only when all of a segment's CAS-covered contracts and assets are sold. The parties stipulated to the fact that Lucent transferred substantially all ATS CAS-covered contracts under performance to GD, but retained one or more CAS-covered contracts that ATS was performing as of the date of sale. *See* Lucent's MSJ, pp. 5-6. The stipulated facts also state that Lucent sold substantial assets to GD but retained certain of the tangible and intangible assets and employees of the ATS business unit. These facts establish Lucent's entitlement to summary judgment that Lucent did not close a segment. The Government's Opposition fails to establish any other conclusion, as explained in the next section.

## II. THE GOVERNMENT FAILED TO ESTABLISH THAT A SEGMENT CLOSING OCCURRED

The government argues that Lucent's interpretation of the definition of segment closing in 48 C.F.R. § 9904.413-50(c)(20), is incorrect. The government argues that whether a segment closing occurs when assets are sold requires "a fact-based inquiry" to determine whether "substantially all" of the assets of a contractor's segment are sold. *See* Gov't Opp'n, pp. 6, 8. Absent such an analysis, the government argues, the CAS Board's intent to adjust previously determined pension costs would be frustrated because the CAS Board intended a true-up of pension costs when a segment closing occurs.

Other than stating what the government wishes the CAS Board had intended and circular reasoning based upon that wish, the government's argument has no basis. As explained below, the government ignores the plain meaning of the wording of the definition of segment closing and argues a CAS Board intent that is not supported by any regulatory history or even the fact distortions presented in the Government's Opposition.

### A. The Government Failed to Rebut Lucent's Plain Meaning of the Definition of Segment Closing

The government did not rebut Lucent's plain meaning argument. *See* Gov't Opp'n, pp. 6-9. Instead, the government essentially treats Lucent's interpretation of the words used in the definition of segment closing as irrelevant. *Id.* Under the case law cited previously, that the plain language is controlling and Federal Circuit direction to use the dictionary meaning of common words to determine meaning, the government's failure to rebut Lucent's plain meaning argument is fatal. *See Rumsfeld v. United Techs. Corp.*, 315 F.3d 1361, 1370 (Fed Cir. 2003) (the term "cost," as used in CAS, was interpreted using "standard dictionary definitions").

In place of assessing the plain meaning of the definition of "segment closing," the government argues that the Court should imply into this definition a "substantial" test. The

government's implied intent argument is irrelevant unless the definition of segment closing were ambiguous. *Tesoro Haw.*, 405 F.3d at 1346-47 (no further interpretation is required when the court concludes that the terms of the regulation are unambiguous); *see also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (where the language is plain, the sole function of the court is to enforce it according to its terms). The government does not argue that the definition of segment closing is ambiguous and, in any event, the definition of segment closing at 48 C.F.R. § 9904.413-30(a)(20) is not ambiguous, as explained above. Thus, Lucent's plain meaning argument should be controlling.

### B. The Government's Argument Relating to the CAS Board's Intent Concerning Segment Closings has No Support in Regulatory History or Proper Contract Interpretation Rules

Despite the plain meaning of the wording of the definition of segment closing, the government argues that a "substantial" test should be implied because any other interpretation of the definition of segment closing would "allow [a] contractor to escape" the adjustment of pension costs that is required when a segment closes. *See* Gov't Opp'n, p. 6. To support its implied intent argument, the government mixes its fact distortions with flawed legal analysis. As a result, the government brushes off the CAS Board's specific rejection of including a "substantial" test in the definition of segment closing and relies upon quotes from the regulatory history of Revised CAS 413, which, when examined carefully, actually support Lucent's argument. In addition, the government suggests improperly that the Court should ignore the requirement to first determine whether a segment closing occurred before concluding that an adjustment of previously determined pension costs under Revised CAS 413 is required. The government also argues, contrary to the express language in the CAS, that the CAS Board could not have intended that retention of just one contract would prevent a segment closing. Finally, the government ignores that its implied intent argument would create an unworkable contract

administration standard regarding when a segment closing occurs and, therefore, is improper under contract interpretation rules.[3]

### 1. The Government's Regulatory History Discussion Fails to Support Its Position and, Instead, Supports Lucent's Position

The government argues that its implied "substantial" test is supported by relevant regulatory history relating to Revised CAS 413. The government's argument, however, fails to recognize the significance of the removal of the phrase "substantially all" from the segment closing provision in original CAS 413 and misinterprets the regulatory history it quotes. Each of these shows that the government's interpretation is contrary to the CAS Board's intent underlying the definition of segment closing.

The government supports its interpretation of the CAS Board's intent with an incorrect explanation of the deletion of the text "substantially all" from the CAS Board's original text of the segment closing definition. Gov't Opp'n, pp. 17-19. Regardless of the government's spin, the facts are that the CAS Board considered and then rejected including the word "substantial" in the definition of segment closing. *See* Lucent's MSJ, pp. 14-15; Gov't Opp'n, pp. 18-19. This means that no "substantial" test should be implied into the definition of segment closing. *See Immigration & Naturalization Serv. v. Cardoza-Fonseca*, 480 U.S. 421, 442-43 (1987); *see also Teledyne*, 50 Fed. Cl. at 165.[4]

---

3 In further support of its implied intent position, the government offers hypothetical examples, which relate to the sale of cars, having no relevance to government contracting and a contractor's ability to adjust pension costs. *See* Gov't Opp'n, p. 8. The government also asserts that "business and economic reality" would not permit the interpretation established by Lucent; yet the government offers no support for what economic reality means in terms of a segment closing and the requirement to adjust pension costs under CAS. *See id*.

4 The government asserts that the Court should not adopt a 100% sale test because it would have been simple for the CAS Board to have stated such a test. Gov't Opp'n, p. 7. This

The Government's Opposition also relies upon certain quotes from the regulatory history to support its implied intent argument. The government's interpretation of these quotes from the regulatory history is inconsistent with Revised CAS 413 and, unfortunately for the government, these quotes actually are consistent with Lucent's argument regarding the definition of segment closing.

The Government's Opposition includes the following quote:

> *Response*: The definition [of segment closing] has been revised to delineate three conditions requiring a current period adjustment. The first condition occurs when there is a change in ownership of the segment, not just a simple reorganization within the contractor's internal structure. The second event is the one addressed in the [Notice of Proposed Rulemaking]; that is when the contractual relationship ends because the segment operationally ceases to exist. The third case addresses the end of the contractual relationship with the Government, whether the segment continues in operation or not.

*See* Gov't Opp'n, p. 9, *citing* 60 Fed. Reg. 16,534, at 16,539 (March 30, 1995).

The government asserts that under this quoted language, "'segment closing' cannot be understood without reference to what the Board intended to accomplish in requiring an adjustment of previously determined pension costs when a contractor closes a segment." Gov't Opp'n, p. 9. The quoted language, however, is essentially what appears in the definition of segment closing. *See* 48 C.F.R. § 9904.413-50(a)(20). Just as in the definition of segment closing, the quoted language does not contain any words of qualification, such as a "substantial" or "partial." Rather, just like the definition of segment closing, the quoted language uses words that mean a complete closing (*e.g.*, "ends" and "ceases"). Thus, the CAS Board's intent is clear, and it is the intent that Lucent has supported.

---

argument is nonsensical in view of the CAS Board having considered words of limitation to a 100% test and rejecting such words.

The government goes on to assert that the CAS Board believed that a segment closing adjustment is required when "pension costs can no longer be computed and adjusted on an on-going basis since there are either no future accounting periods in which credits or charges can be allocated to contracts or no future periods in which benefits will be earned." Gov't Opp'n, p. 11, *citing* Comments, 60 Fed. Reg. at 16,539 (Def. App. at 7). The government supports that assertion by quoting the text of the original CAS 413, which states, in part:

> As a general rule, the Standard being promulgated today is based on the concept that material actuarial gains and losses applicable to a segment will be taken into account in future cost accounting periods in determining the costs for a segment. However, a problem arises in cases where a segment is closed. Because there are no future periods in which to adjust previously-determined pension costs applicable to that segment, a means must be developed to provide a basis for adjusting such costs.

Gov't Opp'n, p. 15, *citing* 4 C.F.R. Part 413, Preamble, § 12 (1992). The government then asserts that this language defines when a segment closing occurs but without any explanation.

The quoted language certainly shows the ultimate CAS Board intent to adjust previously determined pension costs when a segment closing occurs, but it does not define a segment closing. At most, the quoted language equates a segment closing with the circumstance where there are no future accounting periods in which adjustments to previously determined pension costs can be allocated to contracts. That circumstance exists, however, only when there are no CAS-covered contracts being performed (or sought based upon retained assets) in the future period. *See Teledyne*, 50 Fed. Cl. at 164; Lucent's MSJ, pp. 19-20. Thus, when CAS-covered contracts remain (or may exist in the future), previously-determined pension costs can be adjusted. Thus, the government's regulatory history argument supports Lucent's position but not the government's position.

### 2. The Government's Argument Ignores that a Segment Closing Must Occur Before a True-up of Pension Costs is Required

The government also tries to support its position that a "substantial" test should be read into the definition of segment closing by offering a lengthy explanation of what occurs after a segment closing has occurred. *See* Gov't Opp'n, pp. 10-14. The government apparently believes that by explaining how an adjustment of previously determined pension costs works, this Court will be persuaded that a segment closure occurs even when CAS-covered contracts and assets are retained. In essence, the government "puts the cart before the horse."

Under Revised CAS 413, an adjustment of previously determined pension costs does not occur until after a segment closing has occurred. Specifically, Revised CAS 413 states that "[i]f a segment is closed . . . , the contractor shall" adjust previously determined pension costs. 48 C.F.R. § 9904.413-50(c)(12). Even the illustrations to which Lucent and the government refer demonstrate that an adjustment of previously determined pension costs is required only after a segment is found to have closed. *See* Lucent's MSJ, pp. 11-12; *see also* Gov't Opp'n, p. 19. Thus, the government's argument that Revised CAS 413, and not the definition of segment closing in 48 C.F.R. § 9904.413-30(a)(20), is controlling is wrong absent specific language in Revised CAS 413 defining segment closing differently than how that term is defined in 48 C.F.R. § 9904.413-30(a)(20). Revised CAS 413 nowhere defines segment closing, simply stating that a segment closing adjustment is required "if a segment is closed . . . ."[5] Thus, the definition of segment closing in 48 C.F.R. § 9904.413-30(a)(2) is controlling and Revised CAS 413 has little reliance for purposes of construing that definition.

---

[5] The government attempts to overcome this problem by arguing that Revised CAS 413 establishes an implied CAS Board intent for a "substantial" test because absent such a test, the "Government would be deprived" of its right under Revised CAS 413. *See* Gov't Opp'n, p. 15. This makes no sense because Revised CAS 413 plainly creates an obligation or right only "if a segment is closed . . . ."

### 3. The Government's Argument Fails to Acknowledge that CAS 413 is Intended to Operate Even When Only One CAS-Covered Contract Exists

The government bases much of its argument on the assumption, because it provides no support, that a segment cannot have only one CAS-covered contract. *See* Gov't Opp'n, pp. 2, 5, 8, 16. It also is in the context of its "one contract" argument that the government most often tries to use its distortion of the stipulated facts to influence the Court's decision regarding the legal definition of segment closing. Specifically, the government argues that when a single CAS-covered contract remains, then "it could take decades or even centuries for the Government to recover" the amount of a segment closing adjustment. Gov't Opp'n, p. 16. The government also asserts that there would "never be the adjustment of 'previously-determined pension costs' that the CAS Board intended and required." Gov't Opp'n, pp. 16-17.

The government's argument regarding a "one contract segment" is incorrect for several reasons, other than its reliance on fact distortions. First, the government fails to recognize that the CAS 412 and 413 requirements applicable to accounting for pension costs of an ongoing segment (*see* 48 C.F.R. §§ 9904.412, .413-40 and .413-50(a)-(c)(11)) are intended to operate despite the fact that contractors will perform varying amounts of CAS-covered contracts over time. The CAS Board specifically recognized this fact of life for government contractors by stating that no segment closing occurs even when a segment has no CAS-covered contracts so long as it is "seeking Government business." *See* 48 C.F.R. § 9904.413-30(a)(20)(iii).[6] In other

---

[6] The CAS Board's understanding that a contractor's volume of CAS-covered contracts will vary over time is evident from its rules. Under 48 C.F.R. § 9903.201-2, a contractor's CAS obligations depend upon whether the contractor's volume of CAS-covered contracts exceeds certain stated monetary thresholds. In this regard, this provision addresses specifically a contractor's compliance requirements when the contractor's volume of CAS-covered contracts exceed a threshold in one year, but not the next. *See* 48 C.F.R. § 9903.201-2(b).

words, the mere existence of assets to perform CAS-covered contracts that would permit a contractor to seek the award of CAS-covered contracts means no closing occurs so long as the contractor actually is seeking the award of CAS-covered contracts. Thus, the continued performance of one CAS-covered contract is not even required for a segment to be in existence under CAS 412 and 413.

Second, all that is required for a contractor to be subject to all of the CAS rules, including CAS 413, is a single contract over a stated monetary threshold. *See* 48 C.F.R. § 9903.201-1 and -2(a).

And third, nothing in the CAS definition of a segment at 48 C.F.R. § 9904.413-30(a)(19) or case law says that a segment may not have just one contract. Indeed, CAS 413 illustrations recognize that a segment may exist with only one contract. *See, e.g.,* 48 C.F.R. § 9904.413-60(c)(8); *see also Teledyne*, 50 Fed. Cl. at 17 (stating that so long as the segment in the illustration retained one contract, it had not closed).

The CAS Board had to have understood that under its rules, a segment could exist with simply one contract, and indeed, the mere expectation of one contract when it drafted the definition of segment closing and Revised CAS 413. The CAS Board, therefore, would have addressed the circumstance of a segment having only one contract if it were to have intended a different rule as to what constitutes an operating segment in the context of an alleged segment closing. *See, e.g., Cathedral Candle Co. v. United States Int'l Trade Comm'n*, 400 F.3d 1352, 1365 (Fed. Cir. 2005) (statutes having similar objectives should be interpreted consistently absent a clear expression to the contrary); *Kearfott Guidance & Navigation Corp. v. Rumsfeld*, 320 F.3d 1369, 1377 (Fed. Cir. 2003) ("there is a presumption in favor of finding harmony

between two regulations dealing with similar subjects").[7] The CAS Board did not address a "one contract" segment in either the definition of segment closing or Revised CAS 413. Thus, the government's focus on the unfairness of a segment having only one contract is seriously misplaced.

Finally, the government's argument also is incorrect because the existence of even a single CAS-covered contract still means that the government continues to benefit from the circumstance in which there is a surplus of pension assets. *See* Lucent's MSJ, p. 16-21. This is why the government's argument that Lucent's position deprives the government of the benefit of pension assets is incorrect. In this regard, the government's logic also is faulty because the government would benefit when a contractor retained even a single CAS-covered contract in circumstances in which there is a pension deficit, eliminating the "one-way street" to which the government refers. *See* Gov't Opp'n, pp. 15-17.

### 4. The Government's Argument has No Support Even Under Contract Interpretation Rules

The government's argument that the definition of segment closing includes impliedly a "substantial" test fails for a final reason. Even if all other evidence of the CAS Board's intent, found in the plain meaning of the words used and in its expressed intent, were inconclusive, the government is asking this Court to conclude that the CAS Board intended to create a contract administration requirement that would be essentially unworkable. Absent an expressly stated intent to create such a requirement, courts will not imply such a requirement. *See Kearfott*

7 The CAS also permits a contractor to run its businesses as it sees fit. *See* CAS Board Statement of Objectives, Policies and Concepts, 57 Fed. Reg. 30,897, 31,036 (July 13, 1992) ("[t]he [CAS] Board does not seek to establish a single uniform accounting system . . . for all the complex and diverse businesses engaged in Government contracting"). To require a contractor to maintain segments that perform a certain number of contracts would be inconsistent with this intent.

*Guidance & Navigation*, 320 F.3d at 1374 ("an anomalous and cumbersome two-tier system of cost accounting" rejected because of lack of support that the drafters intended such a system); *Peterson Builders, Inc. v. United States,* 26 Cl. Ct. 1227, 1230-32 (1992) (when the proper interpretation of a term in a statute was unclear, the court employed a bright line test which "works substantial justice for the claimant and the government" and avoids unworkable contract administration requirements); *Universal Studios LLLP v. Peters*, 308 F. Supp. 2d 1, 4 (D.D.C. 2004) (bright line tests end questions of fact). Bright line tests, of course, create situations where "unfairness" can be argued because a circumstance approaches the bright line but does not exceed it. The drafters of bright line tests certainly realize that fact but make the judgment that the certainty of a bright line test outweighs any such "unfairness" and expect adherence to the bright line test.[8]

---

8 The CAS Board routinely sets bright line tests for the existence of a requirement to apply a particular CAS. *See* 48 C.F.R. §§ 9903.201-1 and -2. The CAS Board uses specific, bright lines to establish when a CAS applies to avoid contracting officers having to make decisions regarding when application is appropriate based upon the benefits and costs involved. As the CAS Board has stated regarding its bright line criteria for applying the CAS,

> [T]he Board is aware that compliance with its rules, regulations and standards may involve additional administrative effort, particularly on the part of small companies, which may not be commensurate with the benefit to the Government or the contractor resulting from such compliance. The Board, after considering the efforts required by both the Government and its contractors to assure compliance on all covered contracts in excess of $100,000, is persuaded that maximum benefit to the Government with minimum cost can be achieved by limiting the mandatory application of its standards to contractors who receive awards [in excess of $100,000] which constitute a substantial majority of the national defense procurement dollars.

39 Fed. Reg. 44,389 (Dec. 24, 1974). In contrast, the CAS contain criteria for contracting officers to determine "whether amounts of costs are material or nonmaterial" when

Under the government's "substantial" test, the existence of a segment closing will always be open to debate. When there is a surplus, the government will argue that the sale of any segment contracts and assets was a "substantial" sale, and when there is a deficit, contractors will argue that the sale of any segment contracts and assets was a "substantial" sale. The end result would be significant uncertainty and disputes and litigations.

In contrast, Lucent's 100% sale test is a bright line test that creates efficient contract administration. Because the government has not shown that the CAS Board intended a chaotic contract administration scheme for segment closings, the Court should imply an intent for a bright line test, assuming that it were even necessary to imply an intent.

## III. CONCLUSION

Revised CAS 413 requires all CAS-covered contracts and assets be sold in order for a sale to result in a segment closing because this is the only circumstance that terminates the relationship between previously determined pension costs and CAS-covered contracts. The plain language of the definition of segment closing and its regulatory history, as well as related contract administration efficiencies, support this conclusion. In contrast, the government's

---

deciding how to implement applicable CAS. 48 C.F.R. § 9903.305. These criteria implement the CAS Board direction that "the application of [CAS] in determining the measurement, assignment and allocation of costs should not be so stringently interpreted that the desired benefits are negated by excessive administrative costs." CAS Board, Statement of Objectives, Policies & Concepts, 57 Fed. Reg. at 31,037. Thus, CAS 401, 402, 405, 416, 418 and 420, but not CAS 412 or 413, contain direction that materiality considerations are relevant and require contracting officers to exercise discretion based upon the facts to achieve the proper balance between the benefits and costs of compliance.

The mechanism for adjusting previously determined pension costs in Revised CAS 413 establishes a requirement to comply with a set of cost accounting practices when a segment closing occurs. Thus, defining segment closing, which is the trigger for the application of these practices, as creating a bright line test is consistent with CAS Board practice, as would be determining how to implement these practices once they are applicable based upon the materiality of the pension costs involved.

"substantial" test is contrary to the plain meaning of the definition of "segment closing" and its relevant regulatory history, creates an administratively unworkable standard and is grounded in distortions of the stipulated facts. Accordingly, Lucent respectfully requests that this Court grant Lucent's motion for summary judgment that under Count I of Lucent's Complaint, the government has no entitlement against Lucent under Revised CAS 413 (48 C.F.R. § 9904.413-50(c)(12)) because, as a matter of law, the stipulated facts establish that no segment closing under 48 C.F.R. § 9904.413-30(a)(20) occurred.

Respectfully submitted this 19th day of January, 2007.

s/Thomas A. Lemmer
Thomas A. Lemmer
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202
(303) 634-4350
FAX: (303) 634-4400

ATTORNEY FOR PLAINTIFF LUCENT TECHNOLOGIES INC.

OF COUNSEL:

Corey R. Sanchez
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202

Michael Garson
Lucent Technologies
8000 Towers Crescent Drive
Suite 400
Vienna, VA 22182

DN:32120527.5