**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **LUCENT TECHNOLOGIES INC.,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **THE UNITED STATES,** <br><br> **Defendant.** | ) | **No. 04-1511C** <br> **(Judge Braden)** |
| **AT & T CORP.,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **THE UNITED STATES,** <br><br> **Defendant.** | ) | **No. 04-1512C** <br> **(Judge Braden)** <br> **(Consolidated)** |

**DEFENDANT'S SURREPLY**
**IN FURTHER OPPOSITION TO**
**PLAINTIFF'S AMENDED MOTION**
**FOR SUMMARY JUDGMENT (NO. 04-1511C)**

Defendant, the United States, respectfully submits this surreply in reply to Plaintiff's Reply to Defendant's Opposition to Plaintiff's Amended Motion for Summary Judgment ("Pl. Repl."), filed January 19, 2007, and in further opposition to Plaintiff Lucent Technologies Inc.'s ("Lucent's") Amended Motion for Summary Judgment ("Pl. Mot."), dated November 9, 2006. As we demonstrate below, Lucent's reply mischaracterizes both the Government's treatment of the factual stipulation underlying Lucent's motion and the import of the Government's legal arguments based upon the limited factual predicate that Lucent presented.

## I. The Government Properly Illustrated The Scope Of The Factual Predicate That Underlies Plaintiff's Motion

Lucent makes clear in its Reply that it wants to have its cake and eat it, too. Lucent vigorously resisted the Government's efforts in discovery to elicit the specific relevant facts concerning Lucent's disposition of the ATS business unit, in favor of a general stipulation to the effect that it transferred "substantially all," but not every contract, asset, and employee of ATS to General Dynamics Corporation ("GD"). Now, however, having elected to base its motion upon this unspecific factual predicate, Lucent accuses the Government of "blatant factual distortions," Pl. Repl. at 1, when we point out the necessary implications of the "bright-line," "100 per cent," "all or nothing" test that Lucent urges upon the Court. While it is understandable that Lucent would prefer that the Court not be made aware of the illogical and unfair results of the test Lucent favors, Lucent should not be heard to complain when we point out that, under Lucent's proffered interpretation of CAS 413.50(c)(12), a contractor's transferring all but one of a segment's CAS-covered contracts (and assets related to that single CAS-covered contract) would defeat the Government's right to a CAS 413 segment-closing adjustment.

The factual predicate that Lucent chose for its motion is the parties' stipulation that Lucent transferred "substantially all" of the ATS segment's contracts, but "retained *one or more* CAS-covered contracts that the ATS Business Unit was performing, . . . and also retained certain of the tangible and intangible assets and employees of the ATS Business Unit." *See* Order dated September 26, 2006, Stipulation ¶ 3 (emphasis added). This formulation necessarily leaves open a number of critical questions: what exactly did Lucent retain of ATS, and what was the significance of what was retained from a business or CAS perspective? The Government believes these questions must be answered to rule upon whether a segment closing occurred

under the proper legal standard.

We pointed out in our opposition that, because of the factual predicate upon which Lucent has chosen to base its motion, it has invited the Court to determine, as a matter of law, that no CAS 413 segment closing has occurred when a contractor sells an entire segment but retains a single, small CAS-covered contract, with little work left to be performed, minimal assets, and few employees. *See* Defendant's Opposition to Plaintiff's Amended Motion for Summary Judgment (No. 04-1511C) ("Def. Opp."), dated December 19, 2006, at 8. This is by no means a "distortion," "blatant" or otherwise, of Lucent's position, but is, instead, an undisputedly fair and accurate application of the 100 per cent, "bright-line" test that Lucent has proclaimed. Lucent itself is responsible for the need to hypothesize about the nature, value, and significance of what it retained from ATS. Having chosen this path, Lucent cannot reasonably to complain when we point out where that test logically leads. The Government's analysis of the necessary implications of the legal test that Lucent has proffered, as applied to the factual stipulation it presented, is entirely proper.

Lucent's objections (Pl. Repl. at 2) to the Government's referring to the occurrence of a segment closing, the sale of a segment, and the closure of a segment, are also unfounded. The Government did not suggest that Lucent has conceded these points. The statements to which Lucent objects are no more than reasonable and fair argument and inferences from the stipulated facts. In our Opposition, we made the Government's position clear: not only is the factual stipulation underlying Lucent's motion an insufficient basis for finding, as a matter of law, that no segment closing has occurred; but also that same stipulation encompasses situations that clearly do constitute segment closings. There is nothing improper about the Government's

explanation of its position. It should go without saying that the Government never agreed that the limited facts contained in the stipulation were sufficient for the Court to determine that the ATS transaction did not constitute a segment closing. We have consistently maintained that the legal standard Lucent advances is wrong, precisely because it does not take into account all of the relevant facts. In the Government's view, the correct legal analysis requires consideration of all of the facts surrounding the transaction to determine whether the contractor sold substantially all of the ATS segment to GD. Under this standard, a contractor's transfer of virtually all aspects of a business unit, except a small contract, minimal assets and a few employees, constitutes a segment closing.

## II. The Plain Meaning Of The Definition Of Segment Closing Does Not Support Lucent's 100 Per Cent Test

Lucent contends in its reply that the Government made "improper" legal arguments by not concentrating sufficiently (or exclusively) upon the "plain meaning" of certain words contained in the definition of "segment closing" contained in CAS 413. See Pl. Repl. at 3. In Lucent's mind, the words used by the CAS Board to define "segment closing" incontrovertibly compel Lucent's 100 per cent test, and the Government did not controvert its interpretation. Lucent is wrong on both points.

As stated in our Opposition, the plain meaning of the definition of segment closing in CAS 413 does not support, much less compel, the 100 per cent test Lucent advances, for several reasons. Lucent's certitude that the definition requires a 100 per cent test rests, at least in part, upon a false premise: that, unless the definition contains words of "qualification" to indicate that the transfer of something less than literally every contract and asset of a segment is a closing (such as "partial" or "material"), it must be presumed that a segment closing requires the transfer

of every single contract, asset, and employee. This presumption is unwarranted and is simply bootstrapping. There is no reason, apart from Lucent's *ipse dixit*, to presume at the outset when interpreting the regulation that the CAS Board intended such an extreme definition, a definition that attaches paramount significance to the retention of even a small contract in the context of the sale of hundreds of contracts worth millions of dollars, unless the Board said otherwise. Lucent must shoulder a heavy burden to find such a meaning, and it cannot do so by assuming what it must prove.

As we pointed out in our Opposition, Def. Opp. at 7, what is *not contained* in the definition of segment closing is highly significant. Nothing in the definition itself suggests that, in order for a sale to be a segment closing, the sale must include each and every CAS-covered contract, tangible and intangible asset, and employee. It would have been very simple for the CAS Board to have defined a segment closing in terms of the transfer of all contracts if that was the Board's intent. That it chose not to do so, and chose, instead, to define a segment closing in terms of a change in the ownership of the business segment or the ceasing of operations or the discontinuance of Government business, indicates that no such requirement exists. *See* CAS 413.30(a)(9) (Def. App. at 18). This is supported by the definition of the term "segment," as discussed in our Opposition. Def. Opp. at 8.

Ignoring these factors, Lucent claims victory because the Government did not specifically discuss each of its points concerning the dictionary definitions of "closed" and "sold." See Pl. Repl. at 5. There is no such requirement or rule. Lucent first combines and paraphrases two separate definitions of the word "close" that are found in two different dictionaries (Webster's II New College Dictionary and Black's Law Dictionary), neither of

which Lucent quotes, as "to bring something to an end or to cease operations." Pl. Mot. at 10 (citations omitted). Lucent's very next sentence is telling: "*In other words*, no part of the object that closes continues." *Id*. (emphasis added). Clearly, even to Lucent, its paraphrase of the dictionary definitions alone is insufficient to bear the weight that Lucent attempts to place upon it, or there would be no need for Lucent to recast the definition to make it more to its liking, and to preface its gloss on the definition with the phrase "[i]n other words." Further, what those dictionary definitions do not say is critical. The paraphrased definition of "close" upon which Lucent relies ("to bring something to an end or to cease operations") never says that an object is not "closed" for all intents and purposes if 99.9% of the object is transferred to another owner and a tiny component of "the object" (in this case, a multi-million dollar business) remains in the hands of the seller.

Likewise, Lucent makes an unsupported leap from a dictionary definition of "sold" (which is defined in terms of "property is transferred from one person to another for consideration or value, implying the passing of the general and absolute title, as distinguished from a special interest falling short of complete ownership"). Pl. Mot. at 11. Lucent suggests that its exclusion of even a single ATS CAS-covered contract, asset, and employee from the sale of ATS assets to GD converted that sale into a transfer of only a "special interest" in the ATS segment. *Id*. It seems unlikely that GD would agree. This is specious and begs the question at issue. The Government's examples at page 8 of its opposition illustrate the logical consequence of reading these terms in the narrow way Lucent urges.

## III. It Is Lucent, Not The Government, That Improperly Interprets CAS 413's Regulatory History

In its reply (and its amended motion), Lucent emphasizes that, in drafting the original

CAS 413 segment closing provision, “the CAS Board considered and then rejected including the word ‘substantial’ in the definition of segment closing.” Pl. Repl. at 10. Lucent, however, is only telling part of the story. As we stated in our opposition, the deleted language to which Lucent refers (and other language) was found in a staff paper. The staff paper proposed to require a segment-closing adjustment "[i]f all, or substantially all, of a segment is closed, and a significant number of employees are thereby separated from the plan . . . ." Pl. Mot. at 14 (*citing Teledyne*, 50 Fed. Cl. at 164). In an interim version promulgated by the CAS Board, the Board deleted the words “all or substantially all,” and in the final version also dropped the reference to the separation of a significant number of employees. CAS 413.50(c)(12) (Def. App. at 45). By Lucent's reasoning, the Board's decision not to use the word “all,” or other words indicating literal completeness, should be read to indicate that the Board did not intend to require the transfer of every contract, asset, *etc*. before a segment-closing adjustment was required. Moreover, as we pointed out, the more likely explanation for the evolution of the language of original CAS 43 is that the original CAS Board believed that words reflecting materiality or substantiality were simply unnecessary.[1] Def. Opp. at 18-19.

---

[1] Lucent’s reliance (Pl. Mot. at 14) upon the Armed Services Board of Contract Appeals’ decision in *Gould, Inc.*, ASBCA No. 47659, 97-2 B.C.A. ¶ 29,254 (1997), as support for the proposition that Accounting Principles Board Opinion No. 8 (“APB-8") “required ‘substantially all’ of a business unit be disposed of in order for that business unit to be closed for financial reporting purposes” is puzzling, for several reasons. First, the ASBCA never so held. The “substantially all” language to which Lucent refers is the language of the CAS Board’s staff discussion paper, not of APB-8. *See Gould, Inc.*, at 145,536-37 (ASBCA’s sole reference to APB-8 is in quotation from CAS Board staff discussion paper). Second, even if this language were to be found in APB-8, it would support the Government’s interpretation, not Lucent’s.

## IV. Lucent Ignores The CAS Board's Purpose And Intent In Requiring A Segment-Closing Adjustment When A Segment Is Closed

Lucent fundamentally misapprehends the relevance and reasoning of the Government's discussion of the CAS Board's stated purpose and intent in requiring an adjustment of previously determined pension costs when a segment is closed. First, Lucent suggests that even to consider the CAS Board's rationale for requiring a segment-closing adjustment in interpreting the definition of segment closing "puts the cart before the horse." Pl. Repl. at 13. According to Lucent, the Court must determine whether the ATS segment was closed, based solely on the fact that Lucent did not transfer every single ATS contract, asset and employee to GD, without regard to the purpose the CAS Board intended to accomplish in requiring that a segment-closing adjustment be made when a segment is closed. Lucent thus invites this Court to decide this important question of law in both a factual and a logical vacuum. This approach makes no sense. It is well settled that regulations, like statutes, should be interpreted in light of, and consistently with, the purposes they are intended to serve. *See* Def. Opp. at 5.

Second, Lucent then asserts that the Government's position is premised upon the notion that a segment cannot have only one contract. See Pl. Repl. at 14. That is not our argument, however. The relevant question is not whether a segment can have one contract. There is no question that a hypothetical segment can have only a single contract, or that the ATS segment as it existed prior to the sale was not such a segment, but, instead, had hundreds of contracts worth many millions of dollars. The relevant question is whether, for all intents and purposes, Lucent sold that segment. This question should be answered by reference to the change in ownership of what comprised the ATS business unit as a matter of business and commercial reality at the time of the sale (in terms of assets, contracts, personnel, operations, *etc*.), and the change in status of

ATS as a segment of Lucent (*i.e.*, whether the ATS segment continued after the sale to be a "divisio[n], product departmen[t], plan[t], or other subdivisio[n] of [Lucent] reporting directly to a home office, usually identified with responsibility for profit and/or producing a product or service."). *See* CAS 413.30(a)(19) (Def. App. at 18)).

## V. The 100 Per Cent Test Should Not Be Adopted Merely Because It Is Easier To Administer

Lucent argues finally that, even if other evidence of CAS Board intent is inconclusive, the Court should infer that the CAS Board intended to adopt Lucent's "100 per cent test" because this "bright-line" rule would be easier to administer than the legal standard advanced by the Government. See Pl. Repl. at 16-17. This is not an appropriate basis for adopting Lucent's proposed interpretation, however.

First, we note initially that the "other evidence" of the Board's intent – the words it used, the words it did not use, and the CAS Board's regulatory purpose – are not at all inconclusive. They support, even compel, the Government's interpretation that a segment closing occurs due to a sale if substantially all of the components that comprise the segment were sold, based upon a factual inquiry into what was retained, the business and economic significance of what was retained, and the intent of the parties to the transaction.

Second, the interpretation advanced by the Government is not unworkable. It does require Government personnel to conduct a fact-based inquiry and apply reasoned judgment to determine whether a sale consisted of substantially all of a segment's components. As Lucent points out, contracting officers exercise discretion in numerous matters throughout the CAS. Lucent's suggestion that either party might claim that the standard is satisfied according to their financial advantage is hardly unique to this situation. In any event, it is difficult to see how such

a situation would be improved by adopting a “bright-line” test that places the option to defeat the Government’s right to a segment-closing adjustment solely in the hands of the contractor.

Finally, Lucent's own discussion of the CAS Board's use of bright-line rules undercuts the assumption it would have the Court make here. Clearly, the CAS Board is capable of expressly establishing a “bright-line” test when it wants to use one. That the Board did not do so here strongly suggests that it did not intend to displace either the concepts of “materiality” and “substantiality” that permeate the CAS, or the continued exercise of reasoned judgment by the Government’s contracting officers and the courts.

**Conclusion**

For the foregoing reasons, and the reasons set forth in Defendant’s Motion, defendant respectfully requests that the Court enter an order denying plaintiff’s amended motion for summary judgment in its entirety.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Acting Director

OF COUNSEL:

KATHLEEN MALONE
Trial Attorney
Defense Contract Management Agency
495 Summer Street
Boston, MA 02210

Dated: February 7, 2007

s/ C. Coleman Bird

C. COLEMAN BIRD
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: 202.307.0453
Facsimile: 202.514.7965

Attorneys for Defendant United States

**CERTIFICATE OF FILING**

I hereby certify that on the 7th day of February, 2007, a copy of the foregoing Defendant's Surreply in Further Opposition to Plaintiff's Amended Motion for Summary Judgment (No. 04-1511C) was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ C. Coleman Bird