# Exhibit A

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AT&T CORP.,<br><br>Plaintiff, and<br><br>LUCENT TECHNOLOGIES INC.,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES,<br><br>Defendant. | Case Nos. 04-1511C and 04-1512C<br>(Judge Braden) |

**LUCENT TECHNOLOGIES INC.'S REQUESTS FOR ADMISSIONS, REQUESTS FOR PRODUCTION AND INTERROGATORIES (NO. 04-1511C)**

Plaintiff, Lucent Technologies Inc. ("Lucent"), pursuant to the Rules 26, 33, 34 and 36 of the Rules of the Court of Federal Claims ("RCFC"), hereby serves upon the United States (the "government") the following Requests for Admissions, Requests for Production and Interrogatories (the "Requests") relating to the limited issue of whether a segment closure occurred as of October 1, 1997, as ordered during the status conference on May 7, 2007. The Interrogatories are to be answered by a person or persons with knowledge and under oath as provided for in RCFC 33. Your responses should be submitted within 30 days of receipt of these Requests as provided in the rules.

## I. DEFINITIONS AND INSTRUCTIONS

### A. Definitions

As used herein, the following terms have the following meanings:

1. "And" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other whenever such construction will serve to bring within the scope of these requests any items that otherwise would not be brought within their scope.

2. "APA" means the Agreement for the Purchase and Sale of Assets by and between Lucent and GD, dated August 20, 1997.

3. "ATS" means Lucent's Advanced Technology Systems business.

4. "Audit" means any draft or final audit, review, analysis, or other evaluation by any governmental agency, including, but not limited to, DCAA, DCMA, DFAS, an Inspector General or the General Accounting Office, and any third party on behalf of the government.

5. "CAS" means Cost Accounting Standards.

6. "CIPR" means Contractor Insurance and Pension Review.

7. "Closing Date" means October 1, 1997.

8. "CO" means contracting officer.

9. "DCAA" means the Defense Contract Audit Agency.

10. "DCMA" means Defense Contract Management Agency, and its predecessor, the Defense Contract Management Command.

11. "DFARS" means Department of Defense Federal Acquisition Regulation Supplement.

12. "DFAS" means the Defense Finance and Accounting Service Agency.

13. "DLA" means Defense Logistic Agency.

14. "Document" includes any written, recorded, or graphic matter, however produced or reproduced, and includes, but is not limited to, any "document," "tangible thing," or "object," as those terms are used in RCFC 34, and any "writing," "recording," "photograph," "original," or "duplicate," as those terms are defined in Rule 1001 of the Federal Rules of Evidence. Document includes, but is not limited to, working papers; preliminary, intermediate, or final drafts; correspondence; reports; summaries; drawings; charts; graphs; diagrams; schedules; schematics; memoranda; interoffice memoranda; notes; compilations; view-foils; computer runs; minutes or other records of meetings or conferences; invoices; electronic data, as defined below; e-mail; financial calculations; diaries; reports of telephone or other oral conversations; desk calendars; appointment books; and any other writing and recording of every kind which are in your actual or constructive possession, custody or control. A true copy will suffice so long as you waive any objection to authenticity and will have the original available for inspection upon request of plaintiff at the time of the preparation of the pretrial order and at the time of trial. The terms "document" or "documents," "record" or "records" also include copies of documents which are not identical duplicates of the originals and copies of documents of which the originals are not in the possession, custody, or control of the responding party.

15. "DOD" means the Department of Defense, including the Office of the Secretary of Defense and all military departments.

16. "Email" means any computer-based system of electronic mail.

17. "Electronic data" means data of any kind or description, inscribed by computer, mechanical, facsimile, electronic, magnetic, digital or other means. Electronic data includes, but is not limited to, any and all items stored on e-mail; computer memories; hard disks; floppy disks; CD-ROMs, removable media such as Zip, Jaz, Bernoulli Box drives and their equivalent; magnetic tape of all types; microfiche; punched cards, punched tape, or data on or in any other vehicle for digital storage or transmittal; computer programs (whether private or commercial); programming notes or instructions; output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, any and all ASCII and EBCDIC files, and any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether this electronic data exists in an active file, deleted file, or file fragment. Electronic data also includes the file, folder tabs, containers, and labels appended to or associated with any physical storage device for such data.

18. "FAR" means Federal Acquisition Regulation.

19. "GD" means General Dynamics Corporation.

20. "Government" means defendant the United States of America, its agencies, military branches, divisions, officers, employees, agents, and all persons or entities acting on its behalf. As used herein, "government" shall include, but not be limited to DOD and it agencies, DCMA, DFAS, DCAA and DLA.

21. "GS" means Lucent's business known as Government Solutions.

22. "Identify" or "identity" when used in reference to an individual person means to state the full name and present or last-known address, present or last-known position and business affiliation, and position and business affiliation at the time in question.

23. "Identify" or "identity" when used in reference to a document means to state the date and author, the recipient, type of document (*e.g.*, letter, memorandum, telegram, chart, etc.), or some other means of identifying it, the subject matter, and its present location or custodian. In lieu of such identification of a document, when a document on its face indicates the date and author, the recipient and the subject matter, the parties responding may furnish, simultaneously with the filing of answers to these interrogatories, such documents for inspection and copying by the party offering these interrogatories. If any such document is no longer in your possession or subject to your control, state what disposition was made of it.

24. "In connection with" or "relating to" means comprising, mentioning, analyzing, discussing, summarizing, describing, reflecting, referring to, relating to, containing, depicting, embodying, evidencing, constituting, concerning, reporting, or involving an act, occurrence, event, transaction, fact, thing, or course of dealing.

25. "IS" means Lucent's business known as Integrated Solutions.

26. "LMPP" means the defined-benefit Lucent Management Plan established in or about 1996.

27. "LPP" means that defined-benefit Lucent Pension Plan established in or about 1996.

28. "Lucent" means Lucent Technologies Inc.

29. "Offering Memorandum" means the Offering Memorandum of ATS created by Deutsche Morgan Grenfell and issued April 1997.

30. "Pension Plans" means both the LMPP and the LPP.

31. "Person" means any individual, firm, partnership, association, corporation or other legal, business, or government entity acting in any capacity whatsoever.

32. "Plaintiff" or "Lucent" means plaintiff, Lucent Technologies Inc., and includes without limitation: (a) any division, business, group, affiliate, or other entity owned or controlled by Lucent; (b) any officer, director, or employee thereof; and (c) the organization that spun-off of AT&T Corporation on or about September 30, 1996.

33. "Regulatory history" means all documents relating to the development, acceptance or rejection and promulgation of regulations, modifications to regulations, waivers or deviations under the FAR, DFARS and the CAS.

34. "Retained Contract" means any government prime contract or subcontract performed by ATS as of the Closing Date that was not transferred to GD pursuant to the APA.

35. "Sale" means the sale or assignment of assets and transfer of liabilities from Lucent to GD on the Closing Date pursuant to the APA.

36. "Transferred Contract" means any government prime contract or subcontract performed by ATS as of the Closing Date that was transferred or assigned to GD in connection with the APA.

37. "You" and "your" mean the government and all of its officers, directors, agencies, subdivisions, agents, representatives or intermediaries as well as any other persons acting or purporting to act on behalf of the government.

**B. Instructions**

1. These requests are continuing in nature to the extent permitted by RCFC 26(e).

2. Your response to these requests are to be based upon all information in your possession, custody, or control, including all information in the possession of your employees and other persons and entities acting on your behalf or under your direction and control.

3. In your responses to these requests, please restate the text of each request preceding your response thereto. For your convenience in answering this request, we have forwarded this request to you electronically.

4. As used herein, the single shall always include the plural and the present tense shall always include the past tense.

5. If, for any reason, you are unable to respond to any particular request, please set forth all information you have regarding your inability to respond, explain what

efforts you have made to further respond, and explain why you have not been able to obtain the responsive documents.

6. If you withhold any responsive documents based upon a claim of privilege or work product protection, for each such document please provide the following information: (a) identify that document, including, but not limited to, its date, author(s), addressee(s), and any other recipients; (b) identify the contents of the document being withheld with sufficient particularity to enable plaintiff to bring the matter before the Court for a ruling on the claim of privilege; and (c) identify the privilege or doctrine under with the document is being withheld.

7. If any document responsive to these requests has been lost or destroyed, for each such document, please state: (a) the reason(s) why or circumstance(s) under which the document was lost or destroyed; (b) the person who, or entity which, had possession or custody of the document; (c) all known facts regarding the substance of the document; and (d) the author, signatory, addressee(s), recipient(s), date, and subject of the document.

8. When the context herein makes it appropriate, each singular word shall include its plural form, and each plural word shall include its singular form, and each request written in the conjunctive shall include the disjunctive, and each request written in the disjunctive shall include the conjunctive.

9. Responses to Requests for Admission should state initially, and before any other explanation, that the request is "admitted," "denied," or "unable to be admitted or denied" or any combination of these phrases relevant to a request. To the extent any

explanation is needed, the explanation should follow the initial statement. An explanation following the initial statement is required for any request that is not admitted unconditionally in its entirety. That explanation must describe in detail the basis or bases for: (a) a denial, whether factual and/or legal; or (b) the inability to admit or deny, including details regarding efforts taken to be able to admit or deny. To the extent it is necessary to provide a different response for different time periods, within the overall time period of a request, the response should state clearly, by relevant time period, whether the request is "admitted," "denied" or "unable to be admitted or denied" and provide any required explanation.

## **REQUESTS FOR PRODUCTION**

Please respond to the following requests for production.

### **REQUEST FOR PRODUCTION NO. 1**

Produce all documents, including, but not limited to, any audit or correspondence, relating to the final decision issued by J. Wesley Gilliam on September 30, 2003 or relied upon in preparing the final decision and draft of the final decision.

### **REQUEST FOR PRODUCTION NO. 2**

Produce all documents, including, but not limited to, any audit or correspondence, relating to the Sale.

### **REQUEST FOR PRODUCTION NO. 3**

Produce all documents, including, but not limited to, any audit or correspondence, relating to the documents provided by Lucent as Exhibits in connection with Lucent's Motion for Summary Judgment, dated August 2, 2005.

**REQUEST FOR PRODUCTION NO. 4**

Produce all documents, including, but not limited to, any audit or correspondence, relating to disclosure statements submitted by ATS, IS and GS to the government between 1995 and 2003, including, but not limited to, the ATS Disclosure Statement, dated June 30, 1997, and the IS Disclosure Statement, dated August 18, 1997.

**REQUEST FOR PRODUCTION NO. 5**

Produce all documents relating to DCAA Audit Report No. 6201-2001K19200001, dated September 22, 2003.

**REQUEST FOR PRODUCTION NO. 6**

Produce all documents, including, but not limited to, any audit or correspondence, relating to any Forward Pricing Rate Proposals and negotiations or any projections of indirect cost rates, provisional billing rates and negotiations and final indirect rate cost proposals (also known as an incurred cost proposal or submission) and negotiations, submitted to the government by ATS, GS and IS and any Lucent home office between 1995 and 2003, including, but not limited to, the rate agreements executed September 17, 1998, September 29, 1999, February 23, 1999, November 8, 1999, and December 12, 2000.

**REQUEST FOR PRODUCTION NO. 7**

Produce all documents, including, but not limited to, any audit or correspondence, relating to the assets and liabilities of ATS, GS and IS, including the employees and tangible and intangible property, and the organizational structure of those entities before and after the Closing Date of the Sale.

**REQUEST FOR PRODUCTION NO. 8**

Produce all documents relating to Lucent's allocation of pension costs to government contracts between October 1, 1996, and September 30, 1997.

**REQUEST FOR PRODUCTION NO. 9**

Produce all documents relating to Lucent's allocation of pension costs to government contracts from October 1, 1997, to the present.

**REQUEST FOR PRODUCTION NO. 10**

Produce all documents, including, but not limited to, any audit or correspondence, relating to any CIPR of the Pension Plans or any audit of any type relating to the Pension Plans or any costs, assets and liabilities relating to the Pension Plans.

**REQUEST FOR PRODUCTION NO. 11**

Produce all documents relating to the guidance or policy of DCMA, DCAA, DLA or DOD regarding the definition of "segment closure" or "segment closing" under 4 C.F.R.§ 413, 48 C.F.R. § 9904.413 and 48 C.F.R.§ 31.205-6(j)(3).

**REQUEST FOR PRODUCTION NO. 12**

Produce the complete regulatory history (*i.e.*, from the initial drafts for the original regulation to the present) relating to the promulgation of the definition of what constitutes a "segment closing" or "segment closure" in 4 C.F.R.§ 413, 48 C.F.R. § 31.205-6(j)(3) and 48 C.F.R. § 9904.413, including 48 C.F.R. § 9904.413-30(a)(20) and 48 C.F.R. § 9904.413-50(c)(12)(v), and CAS Illustrations 8, 12, 13 and 14, and any other CAS Illustrations relating to the closing of a segment.

**REQUEST FOR PRODUCTION NO. 13**

Produce all documents relating to any response to any Request for Admission not admitted, without qualification, in its entirety, identifying which documents relate to which Request for Admission.

**REQUEST FOR PRODUCTION NO. 14**

Produce all documents considered or relied upon to develop a response to any Interrogatory.

**REQUESTS FOR ADMISSION**

Please respond to the following requests for admission.

**REQUEST FOR ADMISSION NO. 1**

Admit that Lucent continued to perform each of the following contracts and subcontracts after the Closing Date of the Sale:

a. DAAH0392C0054;

b. N0001992C0064;

c. DAAB0797CS616;

d. 4358;

e. F3060297C0274;

f. CLASS0040;

g. CLASS0310;

h. 4369;

i. N0001497C2064; and

j. 3338.

**REQUEST FOR ADMISSION NO. 2**

Admit that Lucent performed the following CAS-Covered contracts after the Closing Date of the Sale:

a. 9810348YXG;

b. MDA 90498CB266;

c. MDA 90498CB641; and

d. 98A810600000.

**REQUEST FOR ADMISSION NO. 3**

For each contract listed below, admit that Lucent charged direct labor costs to the following contracts and subcontracts after the Closing Date of the Sale:

a. DAAH0392C0054;

b. N0001992C0064;

c. DAAB0797CS616;

d. 4358;

e. F3060297C0274;

f. CLASS0040;

g. CLASS0310;

h. 4369;

i. N0001497C2064;

j. 3338;

k. 9810348YXG;

l. MDA 90498CB266;

m. MDA 90498CB641; and

n. 98A810600000.

**REQUEST FOR ADMISSION NO. 4**

Admit that Lucent allocated pension costs relating to the Pension Plans to the following government contracts and subcontracts after the Closing Date of the Sale.

a. DAAH0392C0054;

b. N0001992C0064;

c. DAAB0797CS616;

d. 4358;

e. F3060297C0274;

f. CLASS0040;

g. CLASS0310;

h. 4369;

i. N0001497C2064;

j. 3338;

k. 9810348YXG;

l. MDA 90498CB266;

m. MDA 90498CB641; and

n. 98A810600000.

## INTERROGATORIES

Please respond to the following interrogatories.

**INTERROGATORY NO. 1**

Identify each CO that had cognizance over ATS.

**INTERROGATORY NO. 2**

Identify each CO that had cognizance over GS.

**INTERROGATORY NO. 3**

Identify each CO that had cognizance over IS.

**INTERROGATORY NO. 4**

Identify each CO that had cognizance over the Pension Plans and/or the allowability of the costs of the Pension Plans.

**INTERROGATORY NO. 5**

Identify all: (a) pension costs paid by the government to GD relating to the Transferred Contracts; and (b) pension costs allocated by GD to the Transferred Contracts.

**INTERROGATORY NO. 6**

Identify each person who provided input regarding any government response to any Request for Admission that is not admitted unconditionally in its entirety, identifying the specific Request for Admission for which the person provided input and the individual's input.

**INTERROGATORY NO. 7**

Identify each person who provided input regarding any government response to any Interrogatory.

Respectfully submitted this 1st day of June, 2007.

Thomas A. Lemmer by Corey R. Sanchez
Thomas A. Lemmer
**McKenna Long & Aldridge LLP**
1875 Lawrence Street, Suite 200
Denver, Colorado 80202
(303) 634-4000
FAX: (303) 634-4400

ATTORNEYS FOR LUCENT TECHNOLOGIES, INC.

OF COUNSEL:

Corey R. Sanchez
McKenna Long & Aldridge LLP
1875 Lawrence Street, Suite 200
Denver, CO 80202

Michael D. Garson
Lucent Technologies, Inc.
8000 Towers Crescent Drive
Suite 400
Vienna, VA 22182

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of June, 2007, a true and correct copy of the foregoing REQUESTS FOR ADMISSIONS, REQUESTS FOR PRODUCTION AND INTERROGATORIES was sent electronically, and by U.S. Mail, proper postage prepaid, addressed to:

C. Coleman Bird, Esq.
Department of Justice
Commercial Litigation Branch, Civil Division
1100 L Street, N.W.
Room 11046
Washington, DC 20005
Coleman.Bird@usdoj.gov

Howard J. Stanislawski
Sidley Austin Brown & Wood LLP
1501 K Street, N.W.
Washington, DC 20005
hstanislawski@sidley.com

DN:32123880.4